UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
AXGINC CORPORATION f/k/a AXIS GROUP, INC., : 14-cv-4648 (ARR) (VMS)
:
Plaintiff, : OPINION & ORDER
:
-against- :
:
PLAZA AUTOMALL, LTD., :
:
Defendant. :
------------------------------------------------------------------- :
X

ROSS, United States District Judge:

Plaintiff, AXGINC Corporation ("plaintiff" or "judgment creditor"), appeals from United States Magistrate Judge Vera M. Scanlon's July 11, 2018 post-judgment discovery order ("the order"). *See* Order, ECF No. 82; Tr. of Proceedings, ECF No. 83 ("Tr."); J. Creditor's AXGINC Corporation's Obj. to July 11, 2018 Order, ECF No. 84 ("Pl.'s Obj."). In the order, Judge Scanlon granted in part and denied in part plaintiff's motion to compel discovery against defendant Plaza Automall, Ltd. ("defendant" or "judgment debtor") and several non-parties, and granted in part and denied in part defendant's cross-motion to quash or modify the discovery requests. Specifically, Judge Scanlon ordered that the restraining notices, information subpoenas, and document subpoenas served upon non-parties HSBC Bank USA ("HSBC") and Manufacturers & Traders Trust Company ("M&T Bank") were vacated to the extent that they pertained to any account other than those belonging to the judgment debtor. *See* Tr. 27:03–09. She further ordered that the defendant must comply with the subpoenas and restraining notice served upon it individually, and that the parties could return to her in the future in the event that they continued to dispute the sufficiency of defendant's responses to those discovery requests. *See* Tr. 34:13–21.

1

On appeal, plaintiff argues that it provided ample evidence to restrain the bank accounts belonging to the non-party car dealerships and to compel the production of documents related to those accounts. *See* Pl.'s Obj. 12–20. According to plaintiff, evidence that the non-party car dealerships regularly paid the defendant's bills and expenses is sufficient to demonstrate that the defendant had an "interest" in the non-party car dealerships' bank accounts, which justifies the imposition of a restraining notice and the release of documents related to those accounts. *Id.* at 12–13. Because I find that Judge Scanlon did not err in vacating the restraining notices and subpoenas as they relate to the non-party car dealerships' bank accounts, I affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

In August 2014, plaintiff brought this action against defendant for unpaid base rent, late fees, and interest stemming from defendant's breach of a sublease agreement between the parties.[1] *See* Compl., ECF No. 1. At the time of the agreement, defendant operated a car dealership in Brooklyn, *see* Feb. 15, 2017 Opinion and Order 2, ECF No. 61, and it entered the lease agreement in order to store its excess automobile inventory on the land, *id.* In February 2017, after finding that defendant had breached the sublease agreement and that it could not prevail on any of its affirmative defenses, I granted plaintiff's motion for summary judgment and referred the matter to Judge Scanlon to calculate damages. *Id.* at 1, 24. I adopted Judge Scanlon's report and recommendation for damages in November 2017,[2] *see* Order Adopting R. & R., ECF No. 70, which resulted in a clerk's judgment awarding plaintiff $2,735,929.59. Clerk's J., ECF No. 71.

---

[1] I assume familiarity with the facts and circumstances of this case and discuss only those facts pertinent to the plaintiff's appeal.

[2] In my order adopting the report and recommendation, I made a minor adjustment to Judge Scanlon's calculation of damages, which increased the amount of interest awarded to plaintiff. *See* Order Adopting R. & R. 1–2, ECF No. 70.

Defendant subsequently appealed the judgment, *see* Notice of Appeal, ECF No. 72, and the appeal is currently pending before the Second Circuit Court of Appeals, *see* Tr. 33:11–34:4.

After an unsuccessful attempt to mediate the appeal through the Second Circuit CAMP program, plaintiff began efforts to collect on the judgment. Pl.'s Obj. 7. To date, plaintiff has not been able to collect any funds toward the satisfaction of the judgment. *Id.* at 6–7. In an effort to identify the defendant's assets, plaintiff served a variety of discovery requests upon defendant and several non-parties in May 2018. *Id.* at 7. Two of those requests are at issue in this appeal: (1) a restraining notice, information subpoena, and document subpoena served upon HSBC (collectively, "the HSBC request"), and (2) a restraining notice, information subpoena, and document subpoena served upon M&T Bank (collectively, "the M&T Bank request").[3] *Id.* The HSBC request and M&T Bank request both sought to restrain bank accounts held by the defendant individually, as well as those held by several non-party car dealerships ("the dealerships"). *Id.* Plaintiff asserts that the accounts held by the dealerships were "regularly used as a source for payment of Plaza Automall's expenses" and thus they "do, in fact, represent 'assets of the judgment debtor.'" *Id.* at 12. The dealerships were not named as defendants in the original breach of contract action or in any subsequent actions brought by plaintiff. Many of the dealerships share portions of their name with defendant, including "Plaza Oldsmobile, Ltd." "Plaza Hyundai, Ltd.," and "Plaza Motors of Brooklyn, Inc." *See id.* at 1 n.3.

---

[3] Plaintiff did not actually serve M&T Bank with the information subpoena and restraining notice until after it filed the motion to compel that predated this appeal. *See* Pl.'s Obj. 2 n.4. However, plaintiff served M&T Bank with these two additional requests on June 13, 2018, about a month before Judge Scanlon's hearing on the motion to compel and defendant's cross-motion to quash or modify the discovery requests. *Id.* Thus, Judge Scanlon's order regarding the scope of these requests pertained to both the HSBC and the M&T Bank request, as the arguments underlying both requests were identical. *See* Tr. 2:10–3:07; Tr. 27:3–27:7 (holding that the "restraining notice subpoena[s] and the information subpoenas for any account or entity other than Plaza Automall are vacated, the ones that we're talking about here today.").

When defendant and the non-parties failed to comply with the discovery requests,[4] plaintiff filed a motion to compel compliance and to hold defendant, HSBC, and M&T Bank in civil contempt. *See* J. Creditor AXGINC Corporation's Mem. of Law in Supp. of its Mot. for Civil Contempt and to Compel Compliance, ECF No. 74-21 ("Pl.'s Mot."). As support for its argument that the discovery requests related to the car dealerships were proper under New York's Civil Practice Law and Rules (CPLR), plaintiff provided evidence of rent checks drawn on the dealerships' accounts from July 2007 through November 2013. *Id.* at 7. During the time that the sublease between the parties was in effect, all of the checks submitted by defendant to pay rent under the agreement were drawn on the bank accounts of the dealerships, and "not a single rent payment was *ever* made by Plaza from an account in its own name." *Id.* at 6. Plaintiff also alleges that the dealerships paid—and in some cases, continue to pay—defendant's legal bills, accounting fees, and rental costs. *See* Tr. 15:06–08, Tr. 18:03–07. Defendant responded to plaintiff's motion to compel with a cross-motion to quash or modify the subpoenas—arguing, in relevant part, that the HSBC request and the M&T Bank request inappropriately seek "private and confidential banking information and/or documents concerning entities separate and distinct from the judgment debtor," and that there is no evidence that "Plaza Ltd. has 'a pecuniary interest,' or any other interest, in the separate corporate entities that own each of the Plaza-branded car dealerships." Mem. of Law in Opp'n to Pl.'s Mot. for Civil Contempt of Court, and in Supp. of Def.'s Cross-Mot. to Quash or Modify the Subpoenas at Issue 2, ECF No. 76-4 ("Def.'s Cross-Mot.").

On July 11, 2018, Judge Scanlon held a hearing on the motions in which she granted in part and denied in part plaintiff's motion to compel, and granted in part and denied in part

---

[4] At the time that plaintiff filed the motion to compel, the only discovery requests that were overdue were the information subpoenas served on Plaza and HSBC, *see* Def.'s Cross-Mot. 2, but plaintiff accused defendant of "working to obstruct AXGINC's enforcement efforts, and possibly . . . taking steps to subvert AXGINC's enforcement efforts," Pl.'s Mot. 2.

4

defendant's motion to quash. Order 1. She held that defendant had two weeks in which to comply with all discovery tools served upon it individually. Tr. 26:25–27:03. Further, while HSBC and M&T Bank were instructed to comply with the requests that pertained to Plaza Automall itself, the requests were vacated to the extent that they sought information about—or sought to restrain the accounts of—any entity other than Plaza Automall itself. Tr. 27:03–09. In reaching her conclusion, Judge Scanlon rejected plaintiff's argument that evidence demonstrating that the dealerships had routinely paid defendant's bills formed a sufficient basis for the restraining notices and document subpoenas that related to their bank accounts. Specifically, she held that plaintiff's evidence was not "sufficient to satisfy the requirements even under the cases [plaintiff] cit[es]," and that plaintiff would have to demonstrate a more significant "connection between the accounts . . . regularly used to pay the expenses and the assets of the judgment debtor" in order to obtain discovery on those accounts. Tr. 27:09–18.

Plaintiff now appeals the order, arguing that Judge Scanlon erroneously interpreted the standards governing restraining notices and subpoenas on third-parties, and that plaintiff's evidence demonstrated that defendant "'has an interest' in those [third party] accounts because they were regularly used as a source for payment of Plaza Automall's expenses."[5] Pl.'s Obj. 12.

---

[5] In addition to challenging Judge Scanlon's decision regarding the restraining notices and subpoenas on the dealerships' bank accounts, plaintiff asks this court to "direct[] that Plaza Automall fully comply with the restraining notice, information subpoena[,] and subpoena that were served upon it." Pl.'s Obj. 22. However, Judge Scanlon's order explicitly stated that the parties should return to her with any continuing disputes about Plaza's compliance with the discovery requests served upon it. *See* Tr. 34:16–21. Furthermore, the parties *have* gone back to Judge Scanlon on this issue, submitting a status report on August 27, 2018 that lays out ongoing disputes regarding Plaza's compliance with the requests. *See* Status Report to Magistrate Judge Vera M. Scanlon, ECF No. 90. Thus, this request is not ripe for appeal, and I do not address plaintiff's arguments regarding the insufficiency of Plaza's compliance with its discovery requests.

## STANDARD OF REVIEW

A district court shall reverse a magistrate judge's order on a non-dispositive motion only where the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Courts generally consider post-judgment proceedings "inherently non-dispositive in nature," because they occur after "the rights of the parties have already been adjudicated." *Deep v. Boies*, No. 1:09-MC-0073, 2009 WL 10675920, at *2 (N.D.N.Y. Dec. 18, 2009), *adopted by* 2010 WL 11526762 (N.D.N.Y. Jan. 12, 2010). Furthermore, discovery disputes are considered non-dispositive. *See, e.g. Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). A factual finding is clearly erroneous if "on the entire evidence," the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "An order is contrary to law 'when it fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *DeFazio v. Wallis*, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006) (quoting *Catskill Dev., L.L.C. v. Park Place Ent. Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)). This "highly deferential standard 'only permits reversal where the magistrate judge abused h[er] discretion.'" *Grief v. Nassau Cty.*, 246 F. Supp. 3d 560, 564 (E.D.N.Y. 2017) (alteration in original) (quoting *Ahmed v. T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015)). Therefore, a "magistrate judge's findings should not be rejected merely because the court would have decided the matter differently." *Id.* (citation omitted).

## POST-JUDGMENT DISCOVERY STANDARD

After obtaining a money judgment, a judgment creditor "may obtain discovery from any person—including the judgment debtor—as provided in [the Federal Rules of Civil Procedure] or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). New York's

CPLR, in turn, provides that, "[a]t any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment." § 5223. The rules provide for several discovery tools that may be used in service of the execution of a money judgment, including "a subpoena requiring attendance for the taking of a deposition upon oral or written questions," § 5224(a)(1), a subpoena duces tecum, which requires "the production of books and papers for examination at a time and place named therein," § 5224(a)(2), and an "information subpoena, accompanied by a copy and original of written questions," § 5224(a)(3). Additionally, New York procedure allows a party to issue a restraining notice upon the judgment debtor or a third party. *See* § 5222(b). However, "[a] restraining notice served upon a person other than the judgment debtor . . . is effective only if, at the time of service, he or she owes a debt to the judgment debtor . . . or he or she is in the possession or custody of property in which he or she knows or has reason to believe the judgment debtor . . . *has an interest.*" *Id.* (emphasis added). A party served with a restraining notice "is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he or she has an interest." *Id.*

"Broad post-judgment discovery in aid of execution 'is the norm in federal and New York state courts.'" *Amtrust North America, Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp., LLC*, No. 16-mc-0340, 2016 WL 6208288, at *2 (S.D.N.Y. Oct. 18, 2016) (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012)). Judgment creditors "must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *GMA Accessories, Inc. v. Elec. Wonderland*, No. 07 Civ. 3219 PKC DF, 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012). Still, a plaintiff may not "embark on a fishing expedition," and "should tailor its requests appropriately, in order to foster compliance and to achieve its ultimate goal, to

wit, having its judgment satisfied." *D'Avenza S.p.A. In Bankruptcy v. Garrick & Co.*, No. 96 Civ. 0166(DLC)(KNF), 1998 WL 13844, at *3 (S.D.N.Y. Jan. 15, 1998).

Of particular relevance to plaintiff's appeal, New York courts have interpreted the scope of restraining notices issued pursuant to § 5222 narrowly, holding that restraining notices are only "effective against assets in which the judgment debtor has an 'interest.'" *Amtrust North America, Inc.*, 2016 WL 6208288, at *5. Therefore, "[t]o the extent a restraining notice purports to affect any property other than that of the judgment debtor, [it is] improper under CPLR § 5222." *Id.* A judgment debtor's interest in restrained property must be "a direct interest in the property itself which, while it may require a court determination, is leviable and not an indirect interest in the proceeds of the property." *Sumitomo Shoji New York, Inc. v. Chem. Bank New York Trust Co.*, 47 Misc. 2d 741, 744 (N.Y. Sup. Ct. 1965). Similarly, a document subpoena served on a third party may be found overbroad or unreasonable if it "sweepingly pursues material with little apparent or likely relevance to the subject matter." *U.S. v. Int'l Bus. Mach. Corp.*, 83 F.R.D. 97, 106–07 (S.D.N.Y. 1979).

## DISCUSSION

### I. This appeal is not moot.

Defendant argues that plaintiff's appeal of Judge Scanlon's order is "effectively moot." Mem. in Opp'n to J. Creditor's Obj. and Appeal of July 11, 2018 Decision & Order 10, ECF No. 86 ("Def.'s Opp'n"). Since initiating the appeal, plaintiff served restraining notices and information subpoenas directly on the dealerships themselves, mandating that they "not make any payments to anyone on behalf of the [j]udgment debtor, and [that they] account for what property, if any, those entities possess which belongs to the [j]udgment [d]ebtor." *Id.* at 2. Defendant argues that these new discovery requests make the HSBC and M&T Bank requests irrelevant. *Id.* at 11–

12. Though I agree with defendant that the discovery requests served upon the dealerships allow the "[j]udgment [c]reditor to conduct a 'more focused discovery'" without requiring the disclosure of "sensitive and private banking records and information having nothing to do" with Plaza, *id.* at 12, these discovery tools are not identical to those at issue in the appeal, and thus, the appeal is not moot. As plaintiff notes, the restraining notices and subpoenas it served upon the banks would have produced different results, including "freezing and preserving the sums on deposit" in the dealerships' bank accounts. J. Creditor AXGINC Corporation's Reply on its Obj. to July 11, 2018 Order 3, ECF No. 87 ("Pl.'s Reply"). Furthermore, they would have gone into effect at an earlier time, since the notices were served upon the banks before they were served on the dealerships. *Id.* at 4. As a result, I find that this appeal is ripe for resolution, and proceed to analyze plaintiff's arguments.

## II. Judge Scanlon's order to vacate the restraining notices and subpoenas as they pertain to the dealerships' bank accounts was not contrary to law.

Plaintiff makes several arguments on appeal, but they can all be resolved through one central question: what is the necessary showing that a judgment creditor must make under § 5222 to demonstrate that a judgment debtor has an "interest" in a bank account held in the name of a third party?[6] I find that Judge Scanlon did not err when she concluded that evidence that the third

---

[6] Plaintiff also objects to two closely related aspects of the order: (1) Judge Scanlon's "determination . . . that Plaza Automall and the non-party car dealerships were required to be given notice" of the discovery requests, and (2) Judge Scanlon's "determin[ation] that Plaza Automall's attorneys did not have standing to represent the non-party dealerships." Pl.'s Obj. 3, 4. Because neither of these issues form the basis for Judge Scanlon's ultimate conclusion—that plaintiff failed to provide sufficient evidence to demonstrate that defendant had an "interest" in the third-party bank accounts—I decline to reach them. *See* Tr. 28:03–07 (noting, in announcing her final decision, that "[t]he checks that you are citing as strong evidence here . . . don't . . . create the kind of evidence, or even sufficient evidence" to support the discovery requests). Furthermore, Judge Scanlon's order did not reach a *final* determination about either standing or notice, but rather indicated that she had some concerns about these issues that were independent of plaintiff's insufficient evidentiary showing. *See, e.g.*, Tr. 9:01–09 (noting that the lack of notice, even if not required by the CPLR, "seems like a huge due process problem"); Tr. 23:02–24:07 (analyzing the lack of notice, the lack of standing, and plaintiff's insufficient evidentiary showing together as a "due process problem"). I find that Judge Scanlon was right to be concerned, as the lack of notice and the potential lack of standing

party's bank accounts are frequently used to pay the judgment creditor's expenses does not adequately demonstrate that the judgment creditor has an "interest" in those accounts—even if the evidence is ample and well-documented.

Plaintiff cites to several cases "for the proposition that when a judgment debtor is using the bank account of a third party to either pay its bills on a routine basis or deposit its income . . . the judgment debtor will be deemed to have a pecuniary interest in all the funds on deposit in that account." Tr. 9:15–21. Read in isolation, certain language from these cases may support plaintiff's arguments, but when combined with the vast majority of cases requiring a more substantial connection between the bank accounts and the assets of the judgment debtor, these cases are unconvincing.

For example, plaintiff cites to *Bingham v. Zolt*, where the court held that an account can be restrained under the CPLR where "the evidence demonstrates that a judgment debtor regularly has used another's bank account as a 'recipient' of the debtor's personal assets *or as a source for payment of the debtor's expenses*." 647 N.Y.S.2d 220, 221 (N.Y. App. Div. 1996) (emphasis added). On its own, the italicized language might support plaintiff's argument, but the facts of the case are distinguishable from the facts presented here; in *Bingham*, the judgment debtor deposited his own funds in his wife's bank account, used funds from another account to pay his expenses, and *personally* drew checks on that bank account to satisfy his debts. *Id.* In combination, these

---

emphasize the core deficiency in plaintiff's requests—that the restraining notices and subpoenas served on HSBC and M&T Bank extended to assets and private information that belonged *only* to the independent third parties, and not to the judgment debtor. As a result, the discovery requests served on the banks were both contrary to the CPLR *and* to the due process rights of the third-party car dealerships. *See, e.g. JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366 (S.D.N.Y. 2003) (noting that restraining the assets of independent third parties "is not only unsupported by the text of N.Y. C.P.L.R. § 522 or any of the cases cited by the plaintiff, but would also pose significant due process problems.").

activities were sufficient to allow the restraint of several third-party accounts.[7] *Id.* Likewise, in *ERA Management, Inc. v. Morrison Cohen Singer & Weinstein*, the court found that the restraining notices were proper because the "bank accounts in question were regularly used to pay [the judgment debtor's] personal expenses, and indeed functioned . . . as 'recipients' of his personal assets." 605 N.Y.S.2d 91, 91 (N.Y. App. Div. 1993). Here, plaintiff has presented no evidence that the dealerships' bank accounts ever actually received money that belonged to the judgment debtor—let alone that they served as the depository for the debtor's assets.[8] Plaintiff has only shown that the dealerships' accounts were used to pay for various expenses, including rent and legal fees. *See, e.g.* Tr. 8:19–35 (noting that plaintiff has "over 71 examples" of the use of the dealerships' accounts to pay the debtor's expenses). But, as Judge Scanlon rightly noted, this could simply mean that the owners of the dealerships chose to pay the debtor's legitimate bills and sacrifice their profit as a result; it does not necessarily follow that "Plaza Automall, the debtor, has any interest in those monies." *Id.* at 16:01–02.

---

[7] Plaintiff misrepresents the facts by arguing that Judge Scanlon "improperly relied" on her own personal recollection of *Bingham v. Zolt*. In fact, Judge Scanlon merely noted that she had been involved in that case as a lawyer, Tr. 27:20–25, and she correctly recounted the facts and holding as written in the opinion.

[8] For the first time in its reply brief on appeal, plaintiff states that it has evidence that "Plaza Automall was, in fact, making deposits into the non-party car dealerships' bank accounts." Pl.'s Reply 10. Plaintiff states that this new information came from bank statements that were provided by M&T Bank in response to plaintiff's discovery requests two weeks after Judge Scanlon's order, and that they are available for in camera review. *Id.* at 10 n.7. However, plaintiff has provided the court with no information regarding these deposits, nor any evidence to suggest that they actually occurred. Furthermore, this evidence was not on the record in front of Judge Scanlon, and "[a]lthough this court has the power to consider new evidence on appeal, '[g]enerally an appellate court will not consider an issue that has not been presented to the court below.'" *Harper v. Hunter College*, No. 99-7464, 1999 WL 1015698, at *1 (2d Cir. Oct. 28, 1999) (quoting *United States v. Aulet*, 618 F.2d 182, 185 (2d Cir. 1980)). To the extent that plaintiff is arguing that new evidence it has acquired since the order provides it with a basis for serving a renewed restraining notice or bringing a proceeding to demonstrate evidence of fraudulent conveyance or to initiate a turnover of funds, *see* CPLR § 5225(b); § 5227, it is free to bring these arguments to Judge Scanlon in the future. *See also* Tr. 28:12–14 (noting that if, in the future, plaintiff has "other evidence that could support [its] view, certainly [it] could come back" to the court).

Moreover, courts that have interpreted *ERA Management* and *Bingham* have held that both cases stand for the principle that a restraining notice can only be issued against a third party's bank accounts if there is evidence that those accounts actually hold "the *assets* of a judgment debtor." *JSC Foreign Econ. Ass'n*, 295 F. Supp. 2d at 392 (emphasis added) ("These cases, like the others cited by the plaintiff, support the proposition that a judgment creditor may restrain the assets of a judgment debtor wherever those assets may be."); *see also Amtrust North America*, 2016 WL 6208288, at *6. Plaintiff attempts to distinguish *JSC* by noting that the court in that case concluded that a creditor cannot restrain the assets of "an alleged alter ego" of the debtor "in anticipation of a finding that those third parties are [in fact] alter egos" of the debtor. *JSC Foreign Econ. Ass'n*, 295 F. Supp. 2d at 392–93. Plaintiff argues that it is not currently seeking a determination that the dealerships are the alter egos of the judgment debtor, and therefore *JSC*'s holding does not apply to the facts presented here. *See* Pl.'s Obj. 14–15. But this distinction is immaterial; *JSC* ultimately demonstrates that a judgment creditor may not restrain the bank account of a third party *unless and until* it shows that the account actually contains funds that belong to the judgment creditor. *JSC Foreign Econ. Ass'n*, 295 F. Supp. 2d at 393. Whether such a showing happens in conjunction with or is completely separate from a determination that the third party is the alter ego of the judgment debtor is irrelevant if the facts do not give rise to the debtor's necessary "interest" in the account. *Id.*; *see also Belesis v. Lowery*, No. 15-cv-2633 (JSR), 2017 WL 3641709, at *2 (S.D.N.Y. July 31, 2017) (denying a restraining order placed on the bank account of a third party where the judgment creditor "does not point to evidence that [the judgment debtor] deposited money specifically into those accounts").

Plaintiff cites several other cases that are equally inapposite, as they involved restraining notices that were placed on the third parties *themselves*, rather than on bank accounts that contained

funds completely distinct from the judgment debtor. *See, e.g. CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 472 (2d Cir. 2018) (finding that third-party garnishees violated a restraining notice served on them when they expended funds on the judgment debtor's behalf); *Ray v. Jama Prods., Inc.*, 425 N.Y.S.2d 630, 631 (N.Y. App. Div. 1980) (noting that a third party who had been restrained from paying the judgment debtor "may not circumvent the mandates of [the] restraining notice by claiming that the judgment debtor has no interest in the money merely because he will not acquire physical possession of such money"). There is a crucial difference, however, between serving a restraining notice on the third party dealerships, and serving one on the banks with the intent to restrain *all* of the dealerships' assets. As defendant notes, plaintiff's subsequent efforts to conduct discovery on the dealerships—forbidding them from making payments that benefit the judgment debtor—is not only consistent with the CPLR rules, but also provides plaintiff with a "more focused discovery." Def.'s Opp'n 12; *see also Matter of H.J. O'Connell Ass'n v. Ins. Pension & Welfare Fund of Roofers Local No. 241*, 381 N.Y.S. 2d 659, 659 (N.Y. Sup. Ct., 1976) (noting that the court's invalidation of the restraining notice placed on the garnishee banks "does not leave the judgment creditor without recourse; it has already served a restraining notice on the petitioner itself").

Likewise, Judge Scanlon did not err when she held that the document subpoenas served on the banks were vacated to the extent that they sought information about the dealerships' bank accounts. Because plaintiff provided no evidence that those accounts contained the assets of the judgment debtor, any subpoenas directed towards them would have "sweepingly pursue[d] material with little apparent or likely relevance to the subject matter." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560(RMB)(HBP), 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008); *see also D'Avenza*, 1998 WL 13844, at *4 (finding subpoenas overly

broad because they sought information from several third party entities, "regardless of whether such information relates to or may be said to be reasonably related to the judgment debtor, its assets, or suspected transfers of its assets").

As a result, I find that Judge Scanlon correctly applied the legal standards that govern the service of restraining notices and subpoenas on third parties.[9]

## CONCLUSION

For the foregoing reasons, I affirm Judge Scanlon's July 11, 2018 order. The parties are directed to raise any continued disputes regarding plaintiff's discovery requests with Judge Scanlon.

So ordered.

Date:   October 2, 2018                                   _____/s/_____
        Brooklyn, New York                                Allyne R. Ross
                                                          United States District Judge

---

[9] Plaintiff also argues, as a basis for reversal on appeal, that the order incorrectly relied on several facts not in evidence. *See* Pl.'s Obj. 4–5; Pl.'s Reply 1–2. However, plaintiff provides no evidence that these facts formed the basis for Judge Scanlon's opinion, and cites to no authority to demonstrate that it was improper for Judge Scanlon to note them.