UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
AXGINC CORPORATION formerly known as      :
Axis Group,                               :
                                          :
                  Plaintiff,              :      **REPORT AND RECOMMENDATION**
                                          :      14 Civ. 4648 (ARR) (VMS)
          -against-                       :
                                          :
PLAZA AUTOMALL, LTD.                      :
                                          :
                  Defendant,              :
                                          :
              -and-                       :
                                          :
JOHN ROSATTI, BAY RIDGE HYUNDAI,          :
LTD., PLAZA MOTORS OF BROOKLYN,           :
INC. d/b/a PLAZA AUTO MALL and d/b/a      :
PLAZA TOYOTA, PLAZA HYUNDAI,              :
LTD., d/b/a PLAZA AUTO MALL, and          :
CRYSTAL BAY IMPORTS, LTD. d/b/a           :
PLAZA AUTO MALL and d/b/a ACURA OF        :
BROOKLYN,                                 :
                                          :
                  Respondents.            :
                                          :
------------------------------------------------------------ x

**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court is a motion made by Plaintiff/Judgment Creditor AXGINC Corporation

f/k/a Axis Group, Inc. ("Plaintiff") pursuant to Rule 69 of the Federal Rules of Civil Procedure

("Rule 69") and Section 5225(b) of the New York Civil Practice Law and Rules ("Section

5225(b)") for an order (1) awarding a money judgment for amounts that Defendant/Judgment

Debtor Plaza Automall, Ltd. ("Defendant") allegedly fraudulently conveyed to Respondents John

Rosatti ("Mr. Rosatti"), Bay Ridge Hyundai, Ltd. ("Bay Ridge Hyundai"), Plaza Motors of

Brooklyn d/b/a Plaza Auto Mall d/b/a Plaza Honda ("Plaza Honda"), Plaza Oldmobile, Ltd. d/b/a

Plaza Auto Mall d/b/a Plaza Toyota ("Plaza Toyota"), Plaza Hyundai, Ltd. d/b/a Plaza Auto Mall

1

("Plaza Hyundai"), and Crystal Bay Imports, Ltd. d/b/a Acura of Brooklyn ("Acura of Brooklyn") (collectively, "Respondents" and Plaza Honda, Plaza Toyota, Plaza Hyundai and Acura of Brooklyn collectively, the "Plaza Dealerships") and (2) directing Respondents to turnover the amounts that Defendant allegedly fraudulently conveyed to them.  See ECF No. 98-6.

For the reasons that follow, this Court recommends that the District Court grant in part and deny in part Plaintiff's motion.  In summary, Plaintiff's motion should be (1) granted to the extent that the Court has personal jurisdiction over Respondents, (2) granted to the extent that Plaintiff may proceed on Rule 69(a) motion here without commencing a special proceeding in state court, and (3) denied in all other respects with leave to renew on papers consistent with the legal analysis below within 15 days of the Court's adoption of this report and recommendation, if it does so.

## I.  Background

### a.  Procedural History

The underlying action was commenced in 2014.  See ECF No. 1.  Judgment was entered in favor of Plaintiff and against Defendant in the sum of $2,735,929.59, see ECF No. 71, which was affirmed by the United States Court of Appeals for the Second Circuit, see ECF No. 97. Defendant has failed to pay any part of the judgment, and Plaintiff has taken post-judgment discovery and served Defendant and Respondents with restraining notices to enforce it.  See ECF No. 99-8; Exh. 2 (Plaintiff's restraining notice against Defendant); Exhs. 3-7 (Plaintiff's restraining notices against Respondents).  Thereafter, the Court issued, and the United States Marshals Service served, Plaintiff's writ of execution upon Defendant and Respondents.  See Exh. 8; ECF No. 89.

Plaintiff filed the instant motion pursuant to Federal Rule of Civil Procedure 69 seeking an order awarding a money judgment for amounts that Plaintiff alleges Defendant fraudulently conveyed to Respondents or to third parties on Respondents' behalf, and directing the turnover of those amounts to Plaintiff to satisfy or partially satisfy the Court's judgment.  See ECF No. 99.  Plaintiff seeks a turnover order against:

1. Respondent Plaza Honda for $508,967.97 plus interest from June 29, 2016;

2. Respondent Mr. Rosatti for $300,000.00 plus interest from September 16, 2016;

3. Respondent Plaza Honda for $239,356.00 plus interest from June 29, 2017;

4. Respondent Acura of Brooklyn for $125,000.00 plus interest from July 27, 2017;

5. Respondent Plaza Dealerships for $602,118.85 plus interest from December 28, 2017;

6. Respondent Bay Ridge Hyundai for $215,037.78 plus interest from December 28, 2017;

7. Respondent Plaza Honda for $245,000.00 plus interest from June 22, 2018.

See id.  Defendant and Respondents opposed, see ECF No. 103, and Plaintiff replied, see ECF No. 104, 106.[1]

---

[1] The Court notes that the parties' motion papers are filed twice on the docket—once with sensitive information redacted and once under seal and unredacted.  The Court's analysis cites exclusively to the parties' unredacted filings, which are:

| | |
|---|---|
| Plaintiff's opening papers | ECF No. 99 |
| Defendant's opposition papers | ECF No. 103 |
| Plaintiff's reply papers | ECF No. 104 |
| Plaintiff's corrective supplement | ECF No. 106 |

### b. The Parties

The following statement of facts is drawn from the parties' papers and evidence submitted in connection with these proceedings and is compiled only as relevant to the analysis in this report and recommendation.[2]

#### i. Defendant And Respondents Bay Ridge Hyundai And Plaza Dealerships

At all relevant times to this motion, Defendant was a New York domestic business corporation with its corporate offices at 2740 Nostrand Avenue, Brooklyn, New York 11210, and Defendant filed tax returns in New York. See ECF No. 7 ¶ 4; Exh. 73-9; Exh. 19.

Respondent Bay Ridge Hyundai and Respondents Plaza Dealerships are car dealerships. According to the New York State Department of State, Respondent Bay Ridge Hyundai is a New York domestic business corporation with its principal place of business at 9013 Fourth Avenue, Brooklyn, New York. See Exh. 10. According to the New York State Department of State, Respondents Plaza Dealerships are New York domestic business corporations with their principal places of business at 2740 Nostrand Avenue, Brooklyn, New York. See Exhs. 11-14.

As relevant here, Defendant and Respondents allege that from approximately 2000 through 2018, Defendant's sole operations were as "central paymaster" services to Respondents and others. See Herman Decl. ¶¶ 11(a), 23. Defendant used a single bank account to receive transfers of money from third parties owed to Respondents and money from Respondents owed to third parties; Defendant then transferred the money it received to the Respondent or to the

---

[2] Plaintiff's Exhibits 1 through 31, see ECF Nos. 99-8 through 99-43, are annexed to the Declaration of Plaintiff's Counsel Henry Rakowski ("Rakowski Decl."), see ECF No. 99-7. Defendant's Exhibits A through N, see ECF Nos. 103-3 through 13-17, are annexed to the Declaration of Defendant's Counsel Bret Herman ("Herman Decl."), see ECF No. 103-2. The Court will hereinafter cite to the numbered and lettered exhibits without reference to their accompanying counsel declarations or ECF numbering.

third party to which it was owed.  See id.; Exh. 1 at 55-56, 60-63, 87, 90-92, 151.  Defendant and

Respondents argue that in this intermediary paymaster role, Defendant had no interest in the

money that passed through its account.  See Herman Decl. ¶ 11(a); Exh. 19 at PLAZA EP 207-

08.  For example, although in at least one instance Defendant reported $800,000.00 that

Respondent Plaza Honda had transferred to it for payment to third parties on its tax returns as an

asset because it had not yet been disbursed to those third parties, it was not treated as taxable

income because it belonged to Respondent Plaza Honda.  See id.  According to Defendant, this

was consistent with its tax accounting that characterized its principal business activity to be

management or "Business Support Services" as a paymaster entity.  See id.

### ii.  Respondent Mr. Rosatti

At all times relevant to this motion, Respondent Mr. Rosatti was the sole shareholder and

Chief Executive Officer ("CEO") of Defendant.  See Exh. 1 at 17:20-24; 38:12-15; Exh. 9; Exh.

17 at 26:23-27:3, 30:2-4; Exh. 18 ¶ 2; Exh. 19; ECF No. 1-3 at 36.  Respondent Mr. Rosatti was

also the sole shareholder and CEO of the Plaza Dealerships, see Exh. 1 at 85:8-19; Exhs. 10-14,

and the majority shareholder and CEO of Bay Ridge Hyundai, see Exh. 1 at 15:4-16; Exhs. 10-

14. Although Respondent Mr. Rosatti resides in Florida, see Exh. 1 at 50:3-10; Exh. 17 at 17, he

owns a condominium in Manhattan, see Exh. 1 at 51:2-15; Exh. 15, and comes to New York

"once every couple months," at times staying to work "for several weeks [at a time]," see Exh. 1

at 50:3-10.

### c.  Defendant's Money Transfers To Or At The Direction Of Respondents

### i.  Defendant Transferred $508,967.97 To Respondent Plaza Honda

Plaintiff's turnover motion seeks $508,967.97 that Defendant transferred to Respondent

Plaza Honda on June 28, 2016.  See ECF No. 99-8.  As relevant here, on June 27, 2016, nonparty

Kenwood Holdings Ltd. ("Kenwood") transferred $508,967.97 into Defendant's M&T bank account. See Rakowski Decl. ¶¶ 43-46; Exh. 1 at Tr. 155:7-156:10, 185:8-186:3; Exh. 20 at M&T 44, M&T 58, M&T 108, M&T 177; Exh. 27. The next day, Defendant transferred the same amount to Respondent Plaza Honda. See id. On July 1, 2016, Kenwood emailed a letter to a Respondent Plaza Honda controller at the time of the transfer that was addressed to Respondent Mr. Rosatti, greeted him as "Shareholder" and explained that the transfer as "cancellation payment(s) on series PN-2018." Rakowski Decl. ¶ 45; Exh. 27.

Defendant argues that the facts that the Kenwood letter is addressed to Respondent Mr. Rosatti, greets Respondent Mr. Rosatti as a shareholder and does not mention Defendant prove that the $508,967.97 that Kenwood transferred to Defendant was Respondent Mr. Rosatti's money as a Kenwood shareholder and his money in which Defendant had no interest. See Herman Decl. ¶¶ 48-49. Although it is accurate that the Kenwood letter does not mention Respondent Plaza Honda, Defendant and Respondent Plaza Honda do not explain why Defendant transferred the money to Respondent Plaza Honda and not to Respondent Mr. Rosatti.

### ii.    Defendant Transferred $300,000.00 To Respondent Mr. Rosatti

Plaintiff's turnover motion seeks $300,000.00 that Defendant transferred to Respondent Mr. Rosatti on September 16, 2016. See ECF No. 99-8. As relevant here, on September 15, 2016, two reinsurance companies owned in whole or in part by Respondent Mr. Rosatti, i.e., John Rosatti Reinsurance Company Ltd. ("JRRC") and John Rosatti/Adam Rosatti Reinsurance Company, Ltd. ("JRARRC"), issued corporate resolutions stating that each would loan $150,000.00 to Defendant Plaza Automall and directing an entity named Accelerated Service International ("ASI") to effect the transfer of the reinsurance companies' funds for the loan to Defendant Plaza Automall. See Rakowski Decl. ¶ 26; Exh. 1 at 161:5-163:25. That same day,

an entity named Freedom Insurance Company Ltd. ("Freedom Insurance") (not ASI) made two wire transfers of $150,000.00 each into Defendant Plaza Automall's M&T bank account. See Rakowski Decl. ¶ 25; Exh. 20 at M&T 115. Also that same day, in Kings County, New York, which lies in this District, Respondent Mr. Rosatti signed two promissory notes on behalf of Defendant Plaza Automall—one for JRRC and one for JRARRC—agreeing to repay each of their $150,000.00 loans. See Rakowski Decl. ¶ 28; Exh. 22. Although the record is not clear as to whether Respondent Mr. Rosatti signed those promissory notes on Defendant's behalf as its sole shareholder, CEO or both, see Exh. 1 at 17:20-24, Exh. 9, it shows that Respondent Mr. Rosatti thereafter directed one or both of Defendant's two controllers to transfer Defendant Plaza Automall's $300,000.00 loan repayment to Respondent Mr. Rosatti's personal bank account and not to ASI as the promissory notes agreed and promised that Defendant would do. See Exh. 1 at 255:10-256:8; Exh. 22. Although the record is not clear whether Respondent Mr. Rosatti was in New York when he gave that direction to Defendant's controllers, on September 16, 2016 (at most one day after Respondent Mr. Rosatti signed the promissory notes in New York), Defendant wired $300,000.00 into Respondent Mr. Rosatti's personal bank account. See Rakowski Decl. ¶ 29; Exh. 1 at 161:5-163:11; Exh. 20 at M&T 115. The facts of these events are depicted in the following chart:



Defendant and Respondent Mr. Rosatti argue that Freedom Insurance's September 15, 2016, transfer of $300,000.00 to Defendant were JRRC's and JRARRC's loan funds (although they do not explain why the money came from Freedom Insurance and not ASI), and that Defendant's September 16, 2016, transfer of $300,000.00 to Respondent Mr. Rosatti was Defendant repaying JRRC and JRARRC (they do not explain the one-day loans' utility or why the money went to Respondent Mr. Rosatti personally and not to his companies JRRC and JRARRC). See Herman Decl. ¶¶ 27-33; ECF No. 103-1 at 7-8. Yet, in a February 22, 2019, letter responding to Plaintiff's request for additional information about this transfer, Defendant and Respondent Mr. Rosatti stated that JRRC and JRARRC were not paid back the $300,000.00 they loaned Defendant. See Exh. 31; see also Exh. 1 at 161:5-163:11, 255:10-256:8.

### iii. Defendant Transferred $239,356.11 To Respondent Plaza Honda

Plaintiff's turnover motion seeks $239,356.11 that Defendant transferred to Respondent Plaza Honda on June 28, 2017. See ECF No. 99-8. As relevant here, on June 27, 2017, nonparty Kenwood transferred $239,356.11 into Defendant's M&T bank account. See Rakowski Decl. ¶¶ 43-46; Exh. 1 at Tr. 155:7-156:10, 185:8-186:3; Exh. 20 at M&T 44, M&T 58, M&T 108, M&T 177; Exh. 27. The next day, Defendant transferred the same amount to Respondent Plaza Honda. See id. On June 30, 2017, Kenwood emailed a letter to a Respondent Plaza Honda controller at the time of the transfer that was addressed to Respondent Mr. Rosatti, greeted him as "Shareholder" and explained that the transfer as "cancellation payment(s) on series PN-2018." Rakowski Decl. ¶ 45; Exh. 27.

Defendant argues that insofar as the Kenwood letter is addressed to Respondent Mr. Rosatti, greets Respondent Mr. Rosatti as a shareholder and does not mention Defendant, it shows that the $239,356.11 that Kenwood transferred to Defendant was Respondent Mr.

Rosatti's money as a Kenwood shareholder and was money in which Defendant had no interest. See Herman Decl. ¶¶ 48-49.  Although it is also correct that the Kenwood letter does not mention Respondent Plaza Honda, Defendant and Respondent Plaza Honda do not explain why Defendant transferred the money to Respondent Plaza Honda and not to Respondent Mr. Rosatti.

### iv.  Defendant Transferred $125,000.00 to Respondent Acura Of Brooklyn

Plaintiff's turnover motion seeks $125,000.00 that Defendant transferred to Respondent Acura of Brooklyn on July 27, 2017.  See ECF No. 99-8.  As relevant here, on July 27, 2017, Defendant transferred $125,000.00 to Respondent Acura of Brooklyn.  See Rakowski Decl. ¶ 57; Exh. 20 at M&T 180.  On August 4, 2017, Respondent Acura of Brooklyn transferred $125,000.00 back to Defendant.  See Herman Decl. ¶ 56; Exh. 20 at M&T 182.  Nonparty Adam Rosatti testified at his deposition that he was unable to answer what the transfer represented.  See Rakowski Decl. ¶ 57; Exh. 1 at 186:17-187:6.  In a letter dated February 22, 2019, in response to Plaintiff's request for additional information, Defendant claimed that the transfer represented its repayment of a  "a short term loan" that it made to Respondent Acura of Brooklyn, and that Defendant and Respondent Acura of Brooklyn did not possess any documents concerning the transfer.  See Rakowski Decl. ¶¶ 56-58; Exh. 31.

### v.  Defendant Transferred Money To Over One Thousand Nonparty Consumers Totaling As Much As $602,118.85 To Satisfy Respondent Plaza Dealerships' Obligations Under The "Credit Forget It" Settlement Agreement

Plaintiff's turnover motion seeks a total amount of $602,118.85 that Defendant transferred to over one thousand nonparties through individual checks issued on behalf of Respondent Plaza Dealerships on December 28, 2017.[3]  See ECF No. 99-8.  As relevant here, at

---

[3] Defendant argues that Plaintiff is actually seeking less because not all of the checks it issued

some point prior to 2016, the Office of the Attorney General of the State of New York ("NYAG") commenced an investigation into Respondent Plaza Dealerships' arrangement with nonparty Credit Forget It, Inc. ("CFI") to sell their customers CFI credit repair and identity theft protection services in alleged violation of New York law. See Exh. 28. On April 20, 2016, in exchange for the NYAG's agreement to discontinue its investigation, Respondent Plaza Dealerships entered into a settlement agreement with the NYAG whereby Respondent Plaza Dealerships agreed to pay $800,000.00 by wire transfer or check within 30 days into an interest-bearing bank account at M&T Bank, 7807 5th Avenue, Brooklyn, New York 11209, "specifically referencing [the CFI Settlement Agreement]," for Respondent Plaza Dealerships' later distribution to consumers who purchased CFI services in connection with Respondent Plaza Dealerships' CFI arrangement (hereinafter "CFI Settlement Agreement"). See Exh. 28 ¶ 39. After those distributions to each eligible consumer identified by Respondent Plaza Dealerships, the CFI Settlement Agreement's terms stated that any interest earned on Respondent Plaza Dealerships' deposit into the M&T bank account "shall belong to Respondents and be remitted to them[.]" Id. Defendant and Respondent Bay Ridge Hyundai were not parties to the CFI Settlement Agreement. See Exh. 28; Herman Decl. ¶ 35; Exh. G. On May 20, 2016, a bank account ending in -6204 transferred $800,000.00 into Defendant's M&T bank account in apparent accordance with the CFI Settlement Agreement which, again, stated that any interest earned on the deposit but not distributed to eligible consumers belonged to Respondent Plaza Dealerships. See Rakowski Decl. ¶ 49; Exh. 20 at M&T 106; Exh. 28 ¶ 39. In Defendant's 2016

---

were cashed. See Section I.c.vi; Herman Decl. ¶ 39. This Court also notes that because Defendant issued checks on so many different dates throughout 2017, for simplicity, Plaintiff has aggregated all of these transfers and treated the transfer date for the last transfer—December 28, 2017—as the transfer date for the sum.

tax returns, it declared its assets to be $800,455.00, which corresponded to the ending balance in its M&T bank account as of December 31, 2016. See Rakowski Decl. ¶ 50; Exh. 19 at PLAZA EP 117; Exh. 20 at M&T 122. Between January 1, 2017, and December 28, 2017, Defendant made payments totaling $602,118.85 out of its M&T bank account to 1,126 eligible consumers in accordance with the CFI Settlement Agreement. See Rakowski Decl. ¶¶ 52-54; Exh. 1 at 174:23-177:18, 283:6-17, 287:18-288:5; Exh. 29; Exh. 30.

According to Defendant, Respondent Plaza Honda deposited the $800,000.00 into Defendant's M&T bank account from its account as a "book transfer" for the purposes of Defendant's management of Respondent Plaza Dealerships' compliance with the CFI Settlement Agreement through the dissemination of funds during 2017 to eligible consumers. See Herman Decl. ¶¶ 34, 38; Exh. D. As for the fact that Defendant's 2016 taxes reported $800,455.00 in assets, Defendant notes that they also reported no taxable income, suggesting that at least its own accounting methods treated the $800,000.00 transfer as money in which it held no taxable interest. See Exh. 19 at PLAZA EP 120, PLAZA EP 224.

### vi. Defendant Transferred $215,037.76 To Nonparty Comptroller Of The State Of New York To Satisfy Respondents' Obligations Under The CFI Settlement Agreement

Plaintiff's turnover motion seeks $215,037.76 that Defendant transferred to the Comptroller of the State of New York on behalf of Respondents on December 28, 2017. See ECF No. 99-8. As relevant here, on December 28, 2017, Defendant wrote a check payable to itself for $215,037.76 with the annotation "bank check to clear Credit Forget It." See Rakowski Decl. ¶ 31; Exh. 23. After that check cleared that same day, it left Defendant M&T's bank account nearly empty with a remaining balance of a little over $1,000.00. See Rakowski Decl. ¶ 32; Exh. 20 at M&T 190, M&T 192. Defendant used the $215,037.76 from that check to obtain

an M&T bank check also dated December 28, 2017, made payable to the Comptroller of the State of New York with the memo "#545 – Bay Ridge." See Rakowski Decl. 34; Exh. 24. According to Plaintiff, although the funds were not transferred to Respondent Bay Ridge Hyundai directly, Defendant transferred them to the Comptroller of the State of New York in partial satisfaction of the CFI Settlement Agreement. See Rakowski Decl. ¶ 35.

Defendant argues that this $215,037.76 was the difference between the $800,000.00 that Respondent Plaza Honda transferred to it for management of Respondent Plaza Dealerships' compliance with the CFI Settlement Agreement discontinuing the NYAG's CFI investigation and the amounts that Defendant disbursed to eligible consumers during 2017 to that end. See Herman Decl. ¶ 38. Defendant argues that because this money never belonged to it in the first instance and had been transferred to it so that it could manage compliance with the CFI Settlement Agreement, its transfer of this balance to the Comptroller of the State of New York "to clear Credit Forget it" was nothing more than its delivery of Respondent Plaza Honda's own money for that purpose. See Herman Decl. ¶¶ 38-40, 52-53. Although $215,037.76 is not the difference between $800,000.00 and the $602,118.85 in checks that Plaintiff's evidence shows Defendant issued to eligible consumers pursuant to the CFI Settlement Agreement in 2017 (the difference between those numbers is $197,881.15), Defendants explain that $215,037.76 is the difference between $800,000.00 and the total amount of checks cashed from the ones issued (suggesting that consumers cashed only $584,962.24 worth of the checks Defendant issued). See Herman Decl. ¶ 39. Defendant's position suggests that consumers cashed only $584,962.24 worth of the checks Defendant issued, which this Court notes is a number very close to what Defendant's M&T bank account statements in the record reflect. See Exh. 20 at M&T 128, M&T 145, M&T 167, M&T 172, M&T 175, M&T 178, M&T 180, M&T 182, M&T 184, M&T

12

186, M&T 188, M&T 190 (reflecting an aggregate of $587,665.79 checks paid between January 2017 and the closure of Defendant's M&T bank account one year later).

### vii.   Defendant Stopped Using Its M&T Bank Account

Also on December 28, 2017, Defendant stopped using its M&T bank account and began to use Respondent Plaza Honda's account instead of its own.  See Rakowski Decl. ¶ 41; Exh. 20 at M&T 190.  Nonparty Adam Rosatti testified at his deposition that this was because Defendant had been served Plaintiff's restraining notice, knew its effect and wanted to avoid funds being restrained.  See Rakowski Decl. ¶ 41; Exh. 1 at 123:14-131:12.  Defendant further clarifies that on January 8, 2018, its M&T bank account was closed altogether, and that this was its sole bank account.  See Herman Decl. ¶ 26.

### viii.   Defendant Transferred $245,000.00 To Respondent Plaza Honda

Plaintiff's turnover motion seeks $245,000.00 that Defendant transferred to Respondent Plaza Honda on June 22, 2018.  See ECF No. 99-8.  As relevant here, on September 30, 2016, Respondent Plaza Honda transferred $245,000.00 by check to an escrow agent for Suffolk Regional Off Track Betting Corporation ("SROTB") as a down payment for Defendant's intended purchase of real property from SROTB that was located in the Town of Brookhaven. See Rakowski Decl. ¶ 37; Exh. 1 at 257:23-258:12; Exh. 25.  After the prospective purchase was unrealized, on May 3, 2018, SROTB sent a check payable to Defendant returning the $245,000.00 down payment.  See Rakowski Decl. ¶ 39; Exh. 25.  On June 22, 2018, Defendant deposited the $245,000.00 made payable to it into Respondent Plaza Honda's bank account.  See Rakowski Decl. ¶ 37; Exh. 26.  Nonparty Adam Rosatti testified at his deposition that this occurred because Respondent Plaza Honda had transferred the $245,000.00 to Defendant to pay the down payment in the first instance, but he could not explain why Respondent Plaza Honda

13

would have done that in light of the fact that it was Defendant that purchased the real property from SROTB.  See Rakowski Decl. ¶¶ 40-41; Exh. 1 at 256:20-264:16.  In a February 22, 2019, letter responding to Plaintiff's request for additional information about this transfer, Defendant claims not to have any financial statements or mortgage/loan applications pertaining to the SROTB matter.  See Exh. 31.

Defendant argues that it deposited the $245,000.00 check made payable to it into Respondent Plaza Honda's bank account because it was the return of the down payment that Respondent Plaza Honda had made from its account in the first instance.  See Herman Decl. ¶ 45; Exh. J.

## II.    Rule 69(a) And CPLR 5225(b)

"A motion to enforce a money judgment is governed by Rule 69(a), which provides that 'proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located.'"  CSX Transportation, Inc. v. Island Rail Terminal, Inc., 879 F.3d 462, 469 (2d Cir. 2018) (quoting Fed. R. Civ. P. 69(a)).  In New York, Article 52 of the CPLR governs the enforcement and collection of money judgments.  See N.Y. C.P.L.R. §§ 5201-53; Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd., 740 F.3d 108, 110 (2d Cir. 2014).  As relevant here, Section 5225(b) authorizes a judgment creditor's turnover proceedings "against a garnishee or a transferee[,]" Aaron v. Mattikow, 225 F.R.D. 407, 412 (E.D.N.Y. 2004), and provides that

> [u]pon a special proceeding commenced by the judgment creditor, against [1] a person in possession or custody of money . . . in which the judgment debtor has an interest [hereinafter "garnishee turnover"[4]], or [2] against a person who is a transferee of money . . . from the judgment debtor [hereinafter "transferee

---

[4] The CPLR defines a "garnishee" in part as "a person other than the judgment debtor who has property in his possession or custody in which a judgment debtor has an interest."  N.Y. C.P.L.R. § 105(i).

turnover"], where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, . . . the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor[.]

N.Y. C.P.L.R. § 5225(b).  In <u>Beauvais v. Allegiance Securities, Inc.</u>, 942 F.2d 838, 840 (2d Cir. 1991), the Second Circuit quoted Section 5225(b)'s garnishee turnover standard and held that "by its express language, the rule provides for a two-step analysis in determining whether property belonging to a judgment debtor—but in the possession of a third party—should be turned over to a judgment creditor."  "First, it must be shown that the judgment debtor 'has an interest' in the property the creditor seeks to reach."  <u>Id.</u> (quoting N.Y. C.P.L.R. § 5225(b)). "Where this first step is satisfied, the trial court must, second, then make one of two findings: it must find either that the judgment debtor is 'entitled to the possession of such property,' or it must find that 'the judgment creditor's rights to the property are superior' to those of the party in whose possession it is."  <u>Id.</u>

Although Section 5225(b) refers to "special proceedings," it is not necessary for a judgment creditor seeking the court's assistance to bring a special proceeding under New York law.  <u>See CSX Transp.</u>, 879 F.3d at 469 ("[A] party seeking a money judgment against a non-party garnishee may proceed by [Rule 69] motion and need not commence a special proceeding[.]"); <u>Vera v. Republic of Cuba</u>, 802 F.3d 242, 244 n.3 (2d Cir. 2015) ("[T]he filing requirements of a 'special proceeding' under New York law need not be strictly adhered to as long as there is no prejudice to the opposing party in giving notice of the claims and framing the issues.") (citation omitted).[5]

---

[5] To the extent that Defendant argues that Plaintiff should be required to commence a special proceeding in state court, this Court notes that Defendant's citations pre-date the Second Circuit's 2018 decision in <u>CSX Transportation</u>.  <u>See</u> ECF No. 103-1 at 10-11.  The <u>CSX</u>

A motion under Rule 69(a) is treated like a summary judgment motion.  See Deflora Lake Dev. Assocs., Inc. v. Hyde Park, No. 13 Civ. 4811 (CS), 2016 WL 7839191, at *2 (S.D.N.Y. June 9, 2016) ("The posture of this proceeding is like that of a summary judgment motion."), (citing, inter alia, HBE Leasing Corp. v. Grank, 48 F.3d 623, 633 (2d Cir. 1995)), aff'd, 689 F. App'x 93, 99 (2d Cir. May 3, 2017).  "A court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter."  CSX Transp., Inc., 879 F.3d at 473 (citations & quotations omitted); Matter of Empire Mut. Ins. Co. (Greaney), 156 A.D.2d 154, 156 (1st Dep't 1989) ("The provision . . . for trial . . . does not obviate the general rule [is] that the court's determination is to be based upon the pleadings, papers and admissions submitted to the court.").  Courts have found that judgment creditors seeking both legal and equitable relief are not entitled to demand such trial by jury, see Leedpak, Inc. v. Julian, 78 Misc. 2d 519, 521 (Sup. Ct. N.Y. Cnty. 1974), although third-party turnover respondents do possess a right to a jury trial and may demand it, see Colonial Surety v. Lakeview Advisors, LLC, 125 A.D.3d 1292, 1294 (4th Dep't 2015).

### III.    The Court Has Personal Jurisdiction Over All Respondents To Review Plaintiff's Turnover Request Under Rule 69(a)

As a threshold matter, this Court determines whether there is personal jurisdiction over all the Respondents to grant the relief Plaintiff seeks by a Rule 69(a) motion.  The Second Circuit has held that "a party seeking a money judgment against a non-party garnishee may proceed by [Rule 69(a)] motion and need not commence a special proceeding [under CPLR § 5225(b)], as long as the court has personal jurisdiction over the garnishee."  CSX Transp., 879 F.3d at 469 (quoting N.Y. C.P.L.R. § 5225(b)).

---

Transportation holding means that Plaintiff may proceed on Rule 69(a) motion in lieu of a state court special proceeding controls, and Defendant's argument is unavailing.

Because Respondents Bay Ridge Hyundai and Plaza Dealerships have conceded personal jurisdiction, this Court may exercise it over them.  See Section III.a, infra.  This Court finds that there is specific jurisdiction over Respondent Mr. Rosatti on the basis that he conducted business in New York and that his business transactions have a substantial relationship to Plaintiff's claim for turnover.  See Section III.b, infra.

### a.  Personal Jurisdiction Over Bay Ridge Hyundai And Plaza Dealerships Is Conceded

Defendant and Respondents Bay Ridge Hyundai and Plaza Dealerships do not dispute personal jurisdiction; they have thus waived the objection and conceded that the Court may exercise jurisdiction over them in connection with Plaintiff's motion.  See ECF No. 103-1; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 n.14 (1985) (explaining that "personal jurisdiction requirement is a waivable right"); Levine as trustee of Marvin H. Schein Descendants' Tr. v. Brown, No. 15 Civ. 1738 (JMF), 2020 WL 550653, at *1 (S.D.N.Y. Feb. 4, 2020).

This Court thus finds jurisdiction as to Respondents Bay Ridge Hyundai and Plaza Dealerships, and Plaintiff's Rule 69(a) motion may proceed as against them.  See Levine, 2020 WL 550653, at *2.

### b.  The Court Has Personal Jurisdiction Over Respondent Mr. Rosatti

Specific, or long-arm, jurisdiction in New York is provided for in CPLR Section 302. "To determine the existence of jurisdiction under [S]ection 302(a)(1), a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action 'aris[es] from' such a business transaction."  Best Van Lines, Inc. v. Walker, 490 F.3d 239, 249 (2d Cir. 2007) (quoting Deutsche Bank Sec., Inc. v. Montana Bd. of Invs., 7 N.Y.3d 65, 71 (N.Y. 2006)); D & R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d

292, 297 (N.Y. 2017).

As to the first element, known as the "purposeful availment" prong of Section 302(a)(1), the proper inquiry is whether under the totality of the circumstances the defendant, by some act or acts, "purposefully avail[ed himself] of the privilege of conducting activities within New York . . . thereby invoking the benefits and protections of its laws." Strauss v. Crédit Lyonnais, S.A., 175 F. Supp. 3d 3, 18-19 (E.D.N.Y. 2016) (citing Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012)); see Fiedler v. First City Nat'l Bank of Houston, 807 F.2d 315, 317 (2d Cir. 1986); Leuthner v. Homewood Suites by Hilton, 151 A.D.3d 1042, 1043 (2d Dep't 2017).[6] Courts have found nonresident individuals with shareholder and officer roles at New York corporations to have "transacted business in New York within the meaning of CPLR 302(a)(1)." Hall v. City of Buffalo, 151 A.D.3d 1942, 1943 (4th Dep't 2017) (collecting cases); see Baizan Guerrero v. 79th St. Gourmet & Deli, Inc., No. 18 Civ. 4761 (ARR) (ST), 2019 WL 4889591, at *3 (Sept. 10, 2019) (finding that individual defendants "transacted business within the state of New York as owners, officers and/or agents" of corporations formed in New York, "thus invoking the benefits and protection of its laws"), report & recommendation adopted by 2019 WL 4887914, at *1 (E.D.N.Y. Oct. 3, 2019); Moneygram Payment Sys., Inc. v. Consorcio Oriental, S.A., No. 05 Civ. 10773 (RMB), 2007 WL 1489806, at *5 (S.D.N.Y. May 21, 2007) (finding that majority shareholder transacted business in New York where he exercised some control over and benefitted from a New York corporate transaction); Fischbarg v. Doucet, 9 N.Y.3d 375, 380 (N.Y. 2007) (finding a defendant's purposeful activities to be "those with

---

[6] See also Yousef v. Al Jazeera Media Network, No. 16 Civ. 6416 (CM), 2018 WL 1665239, at *14 (S.D.N.Y. Mar. 2018) (observing that because "[s]pecific jurisdiction was not the subject" of Daimler AG v. Bauman, 571 U.S. 117, 138-40 (2014), a recent Supreme Court decision pertaining to when a state can exercise general jurisdiction over a foreign corporation, "there is no reason to believe that Daimler changed pre-existing law on that subject").

which a defendant . . . avails itself of the privilege of conducting activities within the forum

State, thus invoking the benefits and protections of its laws"); <u>People v. Frisco Mktg. of NY</u>

<u>LLC</u>, 93 A.D.3d 1352, 1354 (4th Dep't 2012) (finding that defendants transacted business in

New York for the purposes of personal jurisdiction as officers of corporations whose actions

being challenged).  The facts that Respondent Mr. Rosatti is the sole shareholder and officer of

Defendant (a corporation formed in New York State and with operations in Kings County, New

York, in this District), the sole shareholder and CEO of Respondents Plaza Dealerships

(corporations formed in New York and with operations in Kings County, New York, in this

District), and the majority shareholder and CEO of Respondent Bay Ridge Hyundai (a

corporation formed in New York and with operations in Kings County, New York, in this

District), are therefore relevant to whether he transacts business in New York.  Further,

Respondent Mr. Rosatti visits New York with some regularity, at times staying to work "for

several weeks" at a time, which is also relevant to whether he can be said to transact business

here.  <u>See</u> Exh. 1 at 50:3-10; <u>JB Aviation v. R Aviation Charter Servs., LLC</u>, 143 F. Supp. 3d 37,

44 (E.D.N.Y. 2015) (finding that despite the defendant John Rosatti's Florida resident, his

multiple visits to New York in connection with contested agreement supported a finding that he

transacted business in the state).  At least one of those visits occurred in September 2016, when

Respondent Mr. Rosatti signed the promissory notes on behalf of Defendant in Kings County,

New York, which lies in this District, and which promissory notes specifically pertain to

Defendant's $300,000.00 transfer to Respondent Mr. Rosatti that gave rise to Plaintiff's

allegations against Respondent Mr. Rosatti here.  <u>See</u> ECF No. 22; <u>Hoffritz for Cutlery, Inc. v.</u>

<u>Amajac, Ltd.</u>, 763 F.2d 55, 60 (2d Cir. 1985) ("[T]he case in which the defendant was physically

present in New York at the time the contract was made, in addition to sufficient other contacts, is

merely the clearest sort of case in which [New York] courts would have 302 jurisdiction.")

(citation & internal quotations omitted); Mayes v. Leipziger, 674 F.2d 178, 183 (2d Cir. 1982)

("[W]here a defendant has entered the state, even for one day, to negotiate and execute the

contract on which suit is eventually brought, [Section] 302(a)(1) gives jurisdiction.") (citing

George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 653 (N.Y. 1977)); JB Aviation, 143 F. Supp.

3d at 44 (finding that Respondent Mr. Rosatti's execution of contract in New York was a factor

that supported finding that he transacted business in the state); Rusnyiak v. Gensini, 629 F. Supp.

2d 203, 229 (N.D.N.Y. 2009) (finding allegations that nonresident directors breached their

fiduciary duties to a foreign corporation at meetings they convened while visiting New York

showed personal jurisdiction over them under New York long-arm statute); Pfeffer v. Mark, 36

F. Supp. 2d 556, 559-60 (E.D.N.Y. 1999) (finding personal jurisdiction over nonresident

defendant where the contract from which the action arose was negotiated and reduced to writing

in New York); George Reiner & Co. v. Schwartz, 41 N.Y.2d 648, 653-54 (N.Y. 1977) (finding

jurisdiction over a nonresident salesman from his single contact with New York to negotiate an

employment agreement with the plaintiff, calling it "purposeful activity in New York directed

toward and resulting in the establishment of a contractual relationship").  Taking these facts

together, this Court finds that the totality of the circumstances demonstrate that Respondent Mr.

Rosatti transacted business in New York in satisfaction of the first element of Section 302(a)(1).

See Regency Capital, LLC v. Corpfinance Int'l, Inc., No. 02 Civ. 5615 (KTD), 2003 WL

22400200, at *3 (S.D.N.Y. Oct. 20, 2003) (finding that the court had personal jurisdiction over a

defendant from evidence that she played a role in managing a corporation shown to have a

presence and business operations in New York by virtue of her serving as a director and officer

for it and being involved in the negotiation of the transaction contested by the action).

"As for the second part of the test, '[a] suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" Best Van Lines, Inc., 490 F.3d at 246 (quoting Henderson v. INS, 157 F.3d 106, 123 (2d Cir. 1998)). Section 302 is a "single act" statute in that a single purposeful transaction conducted in New York can give rise to specific jurisdiction, as long as the plaintiff's claims raised have a substantial relationship to the transaction. See Grimaldi v. Guinn, 72 A.D.3d 37, 44 (2d Dep't 2010) (collecting cases). "At the very least, there must be 'a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former, regardless of the ultimate merits of the claim.'" D&R Glob. Selections, S.L. v. Bodega Olegario Falcon Pineiro, 29 N.Y.3d 292, 299 (N.Y. 2017) (quoting Licci v. Lebanese Can. Bank, SAL, 20 N.Y.3d 327, 339 (N.Y. 2012)). "This inquiry is 'relatively permissive' and an articulable nexus or substantial relationship exists 'where at least one element arises from the New York contacts' rather than 'every element of the cause of action pleaded.'" D&R Glob. Selections, S.L., 29 N.Y.3d at 299 (quoting Licci, 20 N.Y.3d at 339)). This Court finds an articulable nexus between Plaintiff's claim that on September 16, 2016, Defendant fraudulently conveyed $300,000.00 to Respondent Mr. Rosatti and Respondent Mr. Rosatti's related actions on September 15, 2016, when he signed promissory notes in this District on Defendant's behalf agreeing that Defendant would remit $300,000.00 to reinsurance companies owned by Respondent Mr. Rosatti in purported repayment of loans. See Section I.c.ii, supra; Wallace Church & Co. v. Wyattzier, LLC, No. 20 Civ. 1914 (CM), 2020 WL 4369850, at *6 (S.D.N.Y. July 30, 2020) (finding defendants subject to specific personal jurisdiction based on evidence that they were primary actors in a business transaction giving rise to the complaint); Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc., 10 F. Supp. 2d

334, 340  (S.D.N.Y. 1998) (finding a substantial nexus between corporate president defendant's

New York contacts—among them a visit to law firm's New York office to retain their services

and subsequent communications—and the law firm's claims that the defendant diverted

settlement proceeds to deprive them of earned fees).  The next day, September 16, 2016,

Defendant made the contested $300,000.00 transfer to Respondent Mr. Rosatti.  See id.   This

Court notes Respondent Mr. Rosatti's argument that there is an innocent explanation for the

evidence that Defendant transferred the $300,000.00 to him, i.e., Respondent Mr. Rosatti

received it for the benefit of his reinsurance companies, but this is a merits argument that does

not defeat the "sufficient nexus—be it labeled 'articulable' or 'substantial'" that this Court finds

between Plaintiff's claim against Respondent Mr. Rosatti and the action of Respondent Mr.

Rosatti not just in in New York, but in this District.  United Feature Syndicate, Inc. v. Miller

Features Syndicate, Inc., 216 F. Supp. 2d 198, 205 (S.D.N.Y. 2002); see Hallmark Cards, Inc. v.

JTK Corp., No. 88 Civ. 3890 (RJD), 1992 WL 118805, at *2 (E.D.N.Y. May 20, 1992)

("[U]nder New York law, the presence or absence of a meritorious defense is irrelevant for

purposes of a motion to vacate for lack of personal jurisdiction."); U.S. Bank Nat'l Ass'n v.

Kaufman, 187 A.D.3d 1456, 1457 (3d Dep't 2020) ("[W]hether defendant had a meritorious

defense was irrelevant to the issue of whether the court had personal jurisdiction over her.").

Exercising personal jurisdiction over Respondent Mr. Rosatti also comports with

constitutional due process.  The exercise of jurisdiction comports with due process if a

defendant's conduct and connection with the forum is "such that [the defendant] should

reasonably anticipate being haled into court there."  Contant v. Bank of Am. Corp., 385 F. Supp.

3d 284, 292 (S.D.N.Y. 2019) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286,

297 (1980)).  "[W]here [courts] have found personal jurisdiction based on an agent's contacts,

[courts] have never suggested that due process requires something more than New York law." Charles Schwab Corp. v. Bank of Am. Corp., 883 F.3d 68, 85 (2d Cir. 2018) (citations omitted); see Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 170 (2d Cir. 2013) (noting that only in the "rare" case will CPLR Section 302(a)(1) be satisfied but not due process). Here, Plaintiff demonstrated that Respondent Mr. Rosatti could have and should have reasonably anticipated being brought into court in New York arising from his management of Defendant. Respondent Mr. Rosatti was the sole shareholder of Defendant, a New York corporation, and was the primary actor in Defendant's business activities in New York. Despite an active litigation pending against Defendant in this Court, Respondent Mr. Rosatti facilitated the transfer of money out of Defendant's bank account at M&T Bank. Plaintiff argued that the transfer was made without consideration knowing that Defendant would not be able to satisfy any judgment entered against it. See, e.g., ECF No. 74-1 ¶¶ 15-17; ECF No. 99-8 at 14. Respondent Mr. Rosatti has not presented any compelling reason that would render jurisdiction unreasonable. See Gerstle v. Nat'l Credit Adjusters, LLC, 76 F. Supp. 3d 503, 511-12 (S.D.N.Y. 2015) (exercising jurisdiction over out-of-state defendant where jurisdiction was proper under CPLR Section 302(a)(1) and defendant presented no considerations for defeating jurisdiction).

For the foregoing reasons, this Court finds that it is appropriate to exercise personal jurisdiction over Respondent Mr. Rosatti. Plaintiff's Rule 69(a) motion may also proceed against Respondent Mr. Rosatti. This Court next considers whether Plaintiff is entitled to such relief.

## IV.    Plaintiff's Turnover Motion Should Be Denied For Failure To Show That Defendant "Has An Interest" In The Money At Issue

It is well-established that "[a]rguments may not be made for the first time in a reply brief[,]" Knipe v. Skinner, 999 F.2d 708, 710-11 (2d Cir. 1993), and that "[n]ew arguments first

raised in reply papers in support of a motion will not be considered[,]" <u>Domino Media, Inc. v. Kranis</u>, 9 F. Supp. 2d 374, 387 (S.D.N.Y. 1998).  <u>See Playboy Enter., Inc. v. Dumas</u>, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) (finding it would be "manifestly unfair to allow [the movant] to make a complex and possibly dispositive argument after [the nonmovant's] opportunity to respond has passed, thereby silencing [the nonmovant] on the issue and depriving the [c]ourt of [the nonmovant's] views on the question raised"), <u>aff'd</u>, 159 F.3d 1347 (2d Cir. 1998).  Analysis of Plaintiff's entitlement to its requested relief must begin with this observation because in its opening motion papers Plaintiff stated unequivocally that its motion was governed by the two-step test for garnishee turnover set forth by the Second Circuit in <u>Beauvais</u>.  <u>See</u> ECF No. 99-8 at 8 (<u>citing</u> <u>Beauvais</u>, 942 F.2d at 840, for its "two-step analysis" for determining "when money . . . in possession of a third party must be turned over to a judgment creditor").  In light of this, Defendant and Respondents' opposition brief understandably devotes significant attention to arguing that Plaintiff has failed to satisfy the two-step <u>Beauvais</u> test's threshold element that Defendant "has an interest" in the money at issue.  <u>See</u> ECF No. 103-1 at 1-5, 9-11, 19.  As Defendant and Respondents note, Plaintiff incorrectly states the threshold element of <u>Beauvais</u>'s turnover test to be whether the judgment creditor—as opposed to the judgment debtor—has an interest in the money at issue.  <u>See</u> ECF No. 99-8 at 8 ("Axginc has an interest"); <u>id.</u> at 14 ("As demonstrated herein, Axginc has an interest in the funds[.]"); <u>id.</u> at 17 (same); <u>id.</u> at 20 (same); <u>id.</u> at 22 (same); <u>id.</u> at 24 (same); <u>id.</u> at 25 (same).  As a result, this Court finds that Plaintiff did not move on, brief or prove whether Defendant (and not Plaintiff) "has an interest" in the money at issue, the threshold first element of Plaintiff's claim as framed by Plaintiff's motion itself.

  In their opposition, Defendant and Respondents also argued that even if Plaintiff had

properly moved, Plaintiff would fail on its claim.  After Defendant pointed out Plaintiff's erroneous legal theory, Plaintiff, which bears the burden of proof on its motion, argues in its reply for the first time that its motion is not for a garnishee turnover and that Beauvais's two-step test does not apply.  See ECF No. 104-1 at 3-4; Petrocelli v. Petrocelli Elec. Co., Inc., 121 A.D.3d 596, 596 (1st Dep't 2014); Nat'l Comm'ns Corp. v. Bloch, 259 A.D.2d 427, 427 (1st Dep't 1999).  Instead, Plaintiff argues for the first time (1) that its motion is a transferee turnover motion under Section 5225(b); (2) that the transferee turnover test requires Plaintiff to prove only that Respondents are "transferee[s] of money . . . from [Defendant]" as to which Plaintiff's rights "are superior to those of [Respondents]"; and (3) that the transferee turnover test, unlike the garnishee turnover test, does not require Plaintiff to prove that Defendant has an interest in the money at issue.  See ECF No. 104-1 at 3-4.[7]  Given that Plaintiff raises these arguments for the first time in its reply, as it has in this action in the past, this Court respectfully recommends that the District Court not consider them as Plaintiff's memorandum of law and exhibits are not organized in a way such that Defendant and Respondents could fairly oppose the proposed transferee test.  See, e.g., United Intern. Holdings, Inc. v. Wharf (Holdings) Ltd., 988 F. Supp.

---

[7] Whether a judgment debtor "has an interest" in property "must be understood to mean a direct interest in the property itself which, while it may require a court determination, is leviable and not an indirect interest in the proceeds of the property."  Amtrust N. Am., Inc. v. Preferred Contractors Ins. Comp. Risk Retention Grp., LLC, No. 16 Misc. 340 (CM), 2016 WL 6208288, at * 5-6 (S.D.N.Y. Oct. 18, 2016) (quoting Sumitomo Shoji New York, Inc., v. Chem Bank New York Trust Co., 47 Misc. 2d 741, 746 (N.Y. Sup. 1965)).  "It might be difficult with certain types of property to determine if the judgment debtor does indeed have a legal or a beneficial interest."  Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.16.  "Escrow funds are an example of property in which the judgment debtor's interest may vary from being a legal interest to no interest at all."  Id.  Because Plaintiff has not briefed or attempted to show that Defendant has an interest in the money at issue in its garnishee turnover motion, the Court has not made any finding as to the merits of Defendant and Respondents' pass-through argument.  See, e.g., Wurlitzer v. State Tax Comm'n, 35 N.Y.2d 100, 106 (N.Y. 1974) (affirming tax commission finding that where one corporation was acting as the finance department of another, their combined net income provides a reasonable basis for tax assessment).

367, 374 (S.D.N.Y. 1997) (denying judgment creditor's turnover motion for failing to show that judgment debtor, which was not an intended third-party beneficiary to a contract between a bank and the judgment debtor's wholly owned subsidiary, had an interest in funds that belonged to the subsidiary but were deposited into the judgment debtor's account to be held on the subsidiary's behalf); In re Navigator Gas Transport PLC, 358 B.R. 80, 88 (S.D.N.Y. 2006) (denying turnover motion for movant's failure to prove that the judgment debtor had an interest in property at issue). As importantly, Defendant and Respondents have not had opportunity to respond with evidence. See Axginc Corp. v. Plaza Automall, Ltd., No. 14 Civ. 4648 (ARR) (VMS), 2018 WL 4771886, at *5 n.8 (E.D.N.Y. Oct. 2, 2018) (declining to consider new evidence raised by Plaintiff in its reply brief appealing the vacatur of certain restraining notices and denial of certain nonparty discovery).

Although this Court does not decide Plaintiff's newly raised transferee turnover arguments, it notes that Section 5225(b) permits a transferee turnover proceeding to be brought against, and recovery to be had from, "'a transferee of money . . . from the judgment debtor' if it can be demonstrated that the debtor is entitled to the property or that the creditor's interest is superior to that of the transferee." FDIC v. Conte, 204 A.D.2d 845, 846 (3d Dep't 1994); see Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.17. Stated differently, it is "a mechanism for obtaining a money judgment against the recipient of a fraudulent conveyance." Id.; see Allstate Ins. Co. v. Mirvis, No. 08 Civ. 4405 (PKC) (PK), 2018 WL 4921631, at *4 (E.D.N.Y. Sept. 4, 2018); Leser v. U.S. Bank Nat'l Ass'n, No. 09 Civ. 2362 (KAM), 2013 WL 3788877, at *8 (E.D.N.Y. July 18, 2013).

For example, a judgment creditor must prove a constructive fraudulent conveyance claim by a preponderance of the evidence by showing that a debtor made a "transfer"—defined as a

26

mode of "disposing of or parting with <u>an asset or an interest in an asset</u>, which includes payment of money[,]" N.Y. Debt. & Cred. L. § 270(p) (emphasis added)—"without receiving fair consideration in return and intending insolvency as a result." <u>See</u> N.Y. Debt. & Cred. L. § 273(a)(ii); <u>id.</u> § 273(c). This comports with the principle that "[t]he creditor can reach only what the debtor can sell[.]" Garrard Glenn, The Law of Fraudulent Conveyances § 139 at 190 (1996); <u>see, e.g.</u>, N.Y. Prac., Enforcing Judgments & Collecting Debts § 3:360 ("In an attempt to become 'judgment proof,' a debtor may transfer [its] interest in property to . . . third parties . . . without receiving 'fair value' therefor. Such transfers are often made with intent to 'hinder, delay or defraud' existing or future creditors."); <u>Beauvais</u>, 942 F.2d at 840-41 ("Only after both steps of the analysis are demonstrated may the trial court order the <u>transferee</u> to turn over the property to the judgment creditor[.]") (emphasis added); <u>Julien J. Studley, Inc. v. Lefrak</u>, 66 A.D.2d 208, 213-14 (2d Dep't 1979) ("A transfer of all the <u>assets</u> of a corporation of a sole stockholder or to a corporation controlled by the stockholder may be set aside when made in derogation of the rights of creditors.") (emphasis added), <u>aff'd</u> <u>mem.</u>, 48 N.Y.2d 954 (N.Y. 1979); <u>Hamilton v. Muncie</u>, 182 A.D. 630, 633 (2d Dep't 1918) (finding that whether loaned money could be treated as wrongly diverted depended upon the debtors' "prior right of property in the money"); <u>see also</u> <u>Axginc Corp.</u>, 2018 WL 4771886, at *4 (noting that New York courts have held that restraining notices are only effective against assets in which a debtor has an interest) (citation & internal quotation marks omitted).

Yet, Plaintiff's argument about transferee turnover first raised in their reply brief is that it is not required to prove that the funds at issue were Defendant's assets or that Defendant had an interest in them as an asset for its motion. <u>See</u> ECF No. 104-1 at 6 (Plaintiff arguing that its motion can be successful regardless of whether Defendant transferred funds that were its asset).

Although Plaintiff's new arguments about transferee turnover have not addressed this issue, New York law may entitle Plaintiff to a rebuttable presumption that the funds were a Defendant asset because Defendant held them in its bank account.  See N.Y. Debt. & Cred. L. § 270(b) (defining an asset as "property of a debtor"); id. § 270(l) (defining property as "anything that may be the subject of ownership"); Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70, 86 (2d Cir. 2002) ("When a party holds funds in a bank account, possession is established, and the presumption of ownership follows.").  If this rebuttable presumption is established, this then would entitle Defendant and Respondents to rebut the presumption with "evidence that [Respondents] actually controlled the disputed funds, or that [Defendant] merely held the funds for [Respondents], in the manner of a trustee."  Id.  This legal analysis only reinforces why the Court should not decide Plaintiff's motion on the basis of new arguments made in Plaintiff's reply.  Defendant and Respondent have not had a fair opportunity to brief or present evidence consistent with any burden of proof that may have shifted to them but as to which Plaintiff has said nothing which, in turn, means that Plaintiff has asked the Court to resolve legal and factual questions on its motion that have not been tested through the adversarial process.  See Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 196 (D.C. Cir. 1992) ("Considering an argument advanced for the first time in a reply brief . . . is not only unfair to [the nonmovant], but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered.") (internal citations omitted); Axginc Corp., 2018 WL 4771886, at *5 n.8; Playboy Enterprises, Inc., 960 F. Supp. at 720 n. 7.

For these reasons, this Court respectfully recommends that Plaintiff's motion be denied because there is no legal basis for the Court to grant relief on the basis that Respondents are garnishees, and the Court should not consider the new transferee turnover arguments raised in

Plaintiff's reply.  It is apparent that Plaintiff seeks relief against Respondents' funds, but moved on inapplicable grounds.

## V.    Plaintiff May Have Leave To Renew Its Motion

This Court respectfully recommends that Plaintiff should be granted leave to make the transferee turnover motion within 15 days of the Court's adoption of this report and recommendation, if the Court adopts it, to give Plaintiff an opportunity to present the legal theory argued in their reply with properly supporting evidence and to give Defendant and Respondents the opportunity to oppose with their own supported papers.  In order to maintain the status quo, this Court respectfully recommends staying vacating the restraining notices until either the time for Plaintiff's renewal of the motion has passed or the new motion is decided.  If Plaintiff renews its motion, it must confirm, as this Court expects, that it is against Respondent as "transferee[s] of money . . . from [Defendant]" as to which "[Plaintiff's] rights to the property are superior to those of [Respondents]," see ECF No. 104-1 at 3-4 (quoting N.Y. C.P.L.R. § 5225(b)).  Its submission should also provide briefing, including citations to relevant law, on the following issues also not addressed in submissions:

- What is a judgment creditor's burden of proof on the transferee turnover element of whether funds transferred by a debtor to third parties are the debtor's asset or the debtor's interest in an asset.  Among other things, the parties should address the difference between a debtor's asset and interest in an asset; whether a judgment creditor is entitled to a legal presumption that when a debtor holds funds in its bank account, the funds are the debtor's asset or the debtor has an interest in them as an asset and, if so, whether the debtor and/or third-party transferees may present evidence to rebut that presumption; the applicable law for their burden of proof on rebuttal; including cases where a debtor and/or third party transferees' rebuttal evidence was found to meet their burden of proof, and cases finding that it did not.  The parties' discussion of such law should include cases with facts similar to those presented here, i.e., where the debtor is alleged to have provided paymaster, pass-through or financial services on behalf of a third-party transferee shareholder or third-party transferee corporations controlled by the shareholder.  See, e.g., Section IV; N.Y. Debt. & Cred. L. § 270(p) (defining transfer as a debtor's mode of disposing of an asset or interest in an asset); id. § 270(b) (defining asset as "property of a debtor"); id. § 270(l) (defining property as "anything that may be the

subject of ownership"); <u>Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 313 F.3d 70, 86 (2d Cir. 2002) ("When a party holds funds in a bank account, possession is established, and the presumption of ownership follows."); <u>id.</u> (stating that the "presumption may be rebutted by evidence that [the transferee] actually controlled the disputed funds, or that [the debtor] merely held the funds for [the transferee], in the manner of a trustee[]").

- Whether any transferee turnover motion is properly made against Respondents where Defendant did not transfer the money at issue to them directly, but instead to third-party eligible consumers and the Comptroller State of New York to satisfy Respondent Plaza Dealerships' obligations under the CFI Settlement Agreement.  <u>See, e.g.</u>, Section I.c.v, <u>supra</u> (discussing Defendant's transfer of funds to over one thousand eligible consumers to satisfy Respondent Plaza Dealerships' obligations under the CFI Settlement Agreement); Section I.c.vi, <u>supra</u> (discussing Defendant's transfer of funds to the Comptroller of the State of New York to satisfy Respondent Plaza Dealerships' obligations under the CFI Settlement Agreement).

- What is the measure of whether a debtor received a reasonably equivalent value in exchange for a transfer—the amount of money actually transferred or the fair market value of its services to the Respondent—where, as here, Defendant claims that the transfers represented its performance of paymaster, pass-through or financial services to the Respondents.  <u>See, e.g.</u>, <u>In re Palermo</u>, No. 08 Civ. 7421 (RPP), 2011 WL 3874866, at *7 n.8 (S.D.N.Y. Sept. 2, 2011) (discussing a distinction between whether consideration was "fair in itself" as opposed to the fair market value of the property transferred).

- Whether Plaintiff or Defendant is correct with respect to the total amount of funds Defendant transferred to eligible consumers as represented by checks cashed—as opposed to checks written.  <u>See, e.g.</u>, Section I.c.v-vi, <u>supra</u> (Defendant arguing that close analysis of its M&T bank records appearing at Exh. 20 demonstrates that not all of the $602,118.85 in checks Defendant wrote to eligible consumers were cashed).

- Whether a judgment creditor can demonstrate that its rights to property are superior to those of transferees where the money at issue was transferred prior to service of restraining notice or writ of execution.  <u>See, e.g.</u>, <u>Aspen Indus. v. Marine Midland Bank</u>, 52 N.Y.2d 575, 580 (N.Y. 1981); <u>Garland D. Coz & Assocs., Inc. v. Koffman</u>, 48 N.Y.2d 878, 879-80 (N.Y. 1979); <u>Fischer v. Chabbott</u>, 178 A.D.3d 923, 925 (2d Dep't 2019).

- Whether any questions of fact precluding the Court's ability to grant summary relief on documentary submissions can be resolved through evidentiary hearing or whether they must be resolved at trial and, if by trial, whether that is to be trial by jury or bench, and whether a party making a jury demand here, if any, has timely made it and with the entitlement to do so.  <u>See, e.g.</u>, <u>CSX Transp.</u>, 879 F.3d at 473; <u>Colonial Surety</u>, 125 A.D.3d at 1294; <u>Leedpak, Inc.</u>, 78 Misc. 2d at 521.

Within 15 days of Plaintiff's new motion, if allowed, Defendant and Respondents must oppose.

Within 7 days of Defendant and Respondent's opposition, Plaintiff must reply.

## VI.    Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Court grant in part and deny in part Plaintiff's motion to enforce its money judgment against Defendant pursuant to Rule 69 and CPLR 5225(b) as follows:

- Grant Plaintiff's motion for a finding that the Court has personal jurisdiction over Respondents Bay Ridge Hyundai and Plaza Dealerships, see Section III.a, supra;

- Grant Plaintiff's motion for a finding that the Court has personal jurisdiction over Respondent Mr. Rosatti, see Section III.b, supra;

- Grant Plaintiff's motion for a finding that Plaintiff may make its turnover motion against Respondents pursuant to Rule 69(a) here, and need not commence a special proceeding pursuant to Section 5225(b) in state court, see Sections II-III, supra; and

- Deny Plaintiff's motion because it was made for garnishee turnover which according to Plaintiff does not apply to Defendant and Respondents, see Section IV, supra.

Insofar as this Court has granted Plaintiff leave to renew its motion, it respectfully requests that the District Court refer any renewed motion for further proceedings and additional report and recommendation.  See Section V.

## VII.    Objections

A copy of this report and recommendation is being provided to the Parties via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals.

See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
        March 2, 2021

*Vera M. Scanlon*

VERA M. SCANLON
United States Magistrate Judge