UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------- x

AXGINC CORPORATION formerly known as
Axis Group,

                    Plaintiff,

        -against-

PLAZA AUTOMALL, LTD.,

                  Defendant,

        -and-

JOHN ROSATTI, PLAZA MOTORS OF
BROOKLYN, INC. d/b/a PLAZA AUTO MALL
and d/b/a PLAZA HONDA, PLAZA
OLDSMOBILE, LTD., d/b/a PLAZA AUTO
MALL and d/b/a PLAZA TOYOTA, PLAZA
HYUNDAI, LTD., d/b/a PLAZA AUTO MALL,
CRYSTAL BAY IMPORTS, LTD., d/b/a
PLAZA AUTO MALL and d/b/a ACURA OF
BROOKLYN, and PLAZA AUTOMOTIVE
LTD.,

                  Respondents.

--------------------------------------------------------- x

**REPORT
AND RECOMMENDATION**
14 Civ. 4648 (ARR) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

      Before the Court is a motion made by Plaintiff/Judgment Creditor AXGINC Corporation

f/k/a Axis Group, Inc. ("Plaintiff") pursuant to Rule 69 of the Federal Rules of Civil Procedure

("Rule 69") and Section 5225(b) of the New York Civil Procedure Law and Rules ("Section

5225(b)") for an order (1) awarding a money judgment for amounts that Defendant/Judgment

Debtor Plaza Automall, Ltd. ("Defendant") allegedly owned and fraudulently conveyed to

Respondents John Rosatti ("Mr. Rosatti"); Plaza Motors of Brooklyn d/b/a Plaza Honda ("Plaza

Honda"); Plaza Oldmobile, Ltd. d/b/a Plaza Toyota ("Plaza Toyota"); Plaza Hyundai, Ltd.

("Plaza Hyundai"); Crystal Bay Imports, Ltd. d/b/a Acura of Brooklyn ("Acura of Brooklyn");

and Plaza Automotive, Ltd. ("Plaza Kia") (hereinafter collectively "Respondents"),[1] and (2) directing Respondents to turn over the amounts that Defendant allegedly fraudulently conveyed to them.  See ECF No. 117-1.[2]  In the event the Court finds fact issues precluding summary relief for Plaintiff, Plaintiff's motion alternatively requests a trial to resolve issues of fact.  See ECF No. 117-2 at 24-25.

For the reasons that follow, this Court respectfully recommends that the District Court deny Plaintiff's motion for summary relief in light of triable issues of material fact pertaining to whether and, if so, to what extent Defendant had an interest in the funds sought, and whether Plaintiff's rights to the funds are superior to those of Respondents' rights, but grant Plaintiff's alternative motion to the extent it requests trial in the event summary relief is denied.

I.    **General Background**

Although the parties' familiarity with the underlying facts of the case and prior proceedings is generally assumed, see, e.g., Axginc Corp. v. Plaza Automall, Ltd., No. 14 Civ. 4648 (ARR) (VMS), 2017 WL 11504930 (E.D.N.Y. Feb. 21, 2017), aff'd, 759 F. App'x 26 (2d Cir. Dec. 26, 2018), the following summary is useful for context for the instant motion.

Beginning in 2007, Plaintiff began to sublease land to Defendant at the South Brooklyn Marine Terminal ("SBMT"); Plaintiff and Defendant entered into a restated and amended

---

[1] When the Court refers only to Plaza Honda, Plaza Toyota, Plaza Hyundai, Acura of Brooklyn and Plaza Kia, but not to Mr. Rosatti, it will use the term "Respondent Dealerships."

[2] In a prior turnover motion, Plaintiff also sought relief from Bay Ridge Hyundai, Ltd. ("Bay Ridge Hyundai").  In tandem with Plaintiff's instant turnover motion, Plaintiff requests to dismiss Bay Ridge Hyundai as a party pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure.  See ECF No. 118.  This Court respectfully recommends that the District Court grant Plaintiff's request and dismiss Bay Ridge Hyundai as a party.

sublease in 2012.  See id. at *1.[3]

Respondent Dealerships are car dealerships that kept inventory on the SBMT premises that Defendant leased from Plaintiff and that at times paid Plaintiff rent on behalf of Defendant. See Exh. 2 at 6, 13, 19, 26 (Respondent Plaza Hyundai), 7, 20 (Respondent Acura of Brooklyn), 8, 12, 14, 21, 25, 27 (Respondent Plaza Honda), 9-10, 15, 22-23, 28 (Respondent Plaza Toyota), 11, 24 (Respondent Acura of Brooklyn); Exh. 8, passim.[4]  At relevant times, Defendant and Respondent Dealerships have been New York domestic business corporations with their principal places of business at the same address, 2740 Nostrand Avenue, Brooklyn, New York. See ECF No. 7 ¶ 4; Sackowitz Decl. ¶ 20; Exhs. 11-16 (Defendant, Plaza Honda, Plaza Toyota, Plaza Hyundai, Acura of Brooklyn, Plaza Kia).  At relevant times, Respondent Mr. Rosatti was the Chief Executive Officer ("CEO") for Defendant, Plaza Honda, Plaza Toyota, Plaza Hyundai and Acura of Brooklyn, and CEO and 80-90% shareholder for Plaza Kia.  See Sackowitz Decl. ¶¶ 15-20; Exh. 1 at 17:20-24; 38:12-15, 85:8-86:7; Exh. 8 at 26:23-27:3, 30:2-4; Exh. 9 ¶ 2; Exh.

---

[3] This Court notes that after the original Plaintiff in this action filed for bankruptcy, it came under new ownership in the context of a bankruptcy reorganization involving related debtors. Accordingly, the Court's reference to "Plaintiff" is to that entity managed by its successor owners.  See, e.g., ECF No. 26 (noting that Plaintiff's counsel would meet with its new owners to confirm the status of representation); ECF No. 31 (Plaintiff's letter about the reorganization and addressing when its new owners would assume management control); ECF No. 34 (noting Plaintiff counsel's representation that although the bankruptcy reorganization was not yet approved, Plaintiff had the authority to proceed in the action).

[4] Throughout this report and recommendation, this Court will cite to Plaintiff's numbered exhibits and to Defendant and Respondents' lettered exhibits without reference to the declarations that attest to their truth and accuracy.  See Plaintiff's Exhibits 1 through 39, ECF Nos. 117-4 through 117-44, as annexed to the Declaration of Plaintiff's Counsel Adam Sackowitz ("Sackowitz Decl."), ECF No. 117-3; Defendant's Exhibits A through Y, ECF Nos. 103-3 through 103-17, 120-3 through 120-13, as annexed to the Declaration of Defendant's/Respondents' Counsel Bret Herman dated 5/29/2020 ("Herman Decl."), ECF No. 120-4; the Declaration of Adam Rosatti dated 5/29/2020 ("Rosatti 2020 Decl."), ECF No. 120-3; and the Declaration of Adam Rosatti dated 7/28/2021 ("Rosatti 2021 Decl."), ECF No. 120-2.

10; Exhs. 11-16; ECF No. 1-3 at 36.

Plaintiff commenced this action against Defendant seeking damages for, <u>inter alia</u>, Defendant's unpaid rent.  <u>See</u> ECF No. 1; <u>Axginc</u>, 2017 WL 11504930, at *3.  On a summary judgment motion, judgment was entered against Defendant in Plaintiff's favor in the sum of $2,735,929.59.  <u>See</u> ECF No. 71.  Defendant appealed.  <u>See</u> ECF No. 72.

Respondents were not parties to the original action.

While Defendant's appeal was pending, Plaintiff undertook post-judgment collection efforts by serving a restraining notice upon Defendant and began conducting discovery through an information subpoena.  <u>See</u> Exh. 2.  While Defendant's appeal was pending, Plaintiff served restraining notices and information subpoenas upon Plaza Honda, Plaza Toyota, Plaza Hyundai and Acura of Brooklyn.  <u>See</u> Exhs. 3-6; Sackowitz Decl. ¶¶ 11-12.  The United States Marshal's Service served writs of execution upon Defendant and Respondent Plaza Dealerships.  <u>See</u> Exh. 7; Sackowitz Decl. ¶ 13.

On January 16, 2019, Plaintiff's judgment was affirmed by the United States Court of Appeals for the Second Circuit.  <u>See</u> ECF No. 97.

Defendant has failed to pay any part of Plaintiff's judgment.

## II.    **Plaintiff's Previous And Instant Turnover Motion**

Plaintiff previously filed an opposed turnover motion against Respondents Mr. Rosatti, Plaza Honda, Playa Toyota, Plaza Hyundai and Acura of Brooklyn, alleging that Defendant had on various occasions transferred money from its bank account to Respondents or to nonparties on behalf of Respondents, and that Defendant should have paid these funds to Plaintiff to satisfy Plaintiff's judgment.  <u>See</u> ECF No. 99; ECF No. 103.

The Court granted Plaintiff's prior turnover motion in part and denied it in part with leave

to renew, holding that (1) the Court had personal jurisdiction over Respondents; (2) Plaintiff could proceed with its federal turnover application pursuant to a Rule 69(a) motion without commencing a special state court proceeding; (3) Plaintiff had not sufficiently raised or shown in its opening motion that Defendant had an interest in the funds that it transferred to Respondents or to nonparties on Respondents' behalf; and (4) Plaintiff's restraining notices against Defendant and Respondents would not be vacated pending Plaintiff's renewal of its motion.  See ECF No. 109, R&R adopted, ECF No. 110.

Plaintiff's instant renewed turnover motion seeks substantially the same relief as its prior motion, although it also adds Respondent Plaza Kia as a party and seeks additional turnover relief from Respondents Mr. Rosatti, Plaza Honda, Plaza Toyota, Plaza Hyundai and Acura of Brooklyn that it did not seek in its previous motion.  Compare ECF No. 99, with ECF No. 117. Plaintiff's motion again argues that Defendant was required to satisfy Plaintiff's judgment with funds that Defendant allegedly owned and fraudulently conveyed to Respondents or nonparties on behalf of Respondents in a series of transactions.  See ECF No. 117.[5]  Defendant and Respondents oppose, arguing, inter alia, that Respondents' "paymaster" agent Defendant did not

---

[5] Plaintiff's turnover motion does not make veil-piercing or alter-ego claims.  See, e.g., Epperson v. Entm't Express, Inc., 242 F.3d 100, 104 (2d Cir. 2001) (noting that veil-piercing or alter-ego claims "raise an independent controversy with a new party in an effort to shift liability"); Knox v. Orascam Telecom Holding S.A.E., 477 F. Supp. 2d 642, 646 (S.D.N.Y. 2007) (finding that "this action does in fact 'seek to hold nonparties liable for judgment on a theory that requires proof on facts and theories different from those underlying the judgment,' and it is not 'an attempt simply to collect a judgment duly rendered by a federal court, even if chasing after the assets of the judgment debtor in the hands of a third party'") (quoting U.S.I. Properties Corp. v. M.D. Constr. Co., 230 F.3d 489, 498 (1st Cir. 2000)); RBC Bearings, Inc. v. Thin Section Bearings, Inc., No. 05 Civ. 360 (SRU), 2007 WL 2727160, at *2 (D. Conn. Sept. 18, 2007) (denying a Rule 69(a) motion to enforce a default judgment against a non-party corporation and non-party individuals with veil-piercing claims but not fraudulent-conveyance claims because the non-parties did not have a full and fair opportunity to respond to and defend against the plaintiff's allegations as due process requires).

own the funds transferred and targeted by Plaintiff's turnover motion but instead merely held them temporarily before forwarding them to their due recipients. <u>See</u> ECF No. 120; <u>see</u> Section III, <u>infra</u> (discussing Defendant and Respondents' paymaster allegations in greater detail). Plaintiff replies. <u>See</u> ECF No. 121.[6]

## III.    Facts Relevant To Plaintiff's Instant Motion

### a.    Defendant's Alleged Provision Of "Paymaster" Services To Respondents In Their Financial Dealings With Nonparties

At all relevant times, Defendant and Respondents allege, including through the deposition testimony of non-party Adam Rosatti, who worked for Defendant and Respondent Dealerships in managerial roles, that Defendant served as Respondents' paymaster agent with respect to Respondents' financial dealings with nonparties in order to shield Respondents' individual bank account and routing numbers from data breaches, hacking, unauthorized withdrawals or other abuses. <u>See</u> A. Rosatti 2021 Decl. ¶¶ 5, 8; Herman Decl. ¶¶ 11(a), 23; Exh. 1 at 13:21-18:16, 55:11-56:7, 62:17-63:10, 91:20-92:21, 118:7-9, 118:16-20; Exh. 10 at PLAZA EL 202, 224, 249, 273. As described by Defendant and Respondents, Defendant used its M&T bank account, which at relevant times was its sole bank account, (1) to receive transfers of money from Respondents that was owed to nonparties, whereupon Defendant then transferred the equivalent amount of the incoming funds to the nonparties to which it belonged, and (2) to receive transfers of money from nonparties that was owed to Respondents, whereupon Defendant then transferred the identical sums to Respondents to which it belonged. <u>See id.</u>; Exh. 1 at 55-56, 60-63, 87, 90-92, 151. Defendant's paymaster services were such that they did not require Defendant to incur overhead expenses, and Respondents did not pay Defendant compensation for

---

[6] Motions for leave to seal will be addressed in a separate order.

the use of its account in this paymaster capacity.  See Exh. 1 at 67:10-15, 254:20-255:9.  For the

duration of the arrangement, Defendant and Respondent Dealerships were separate corporate

entities, operating separate businesses from one another, having their own books and records and

filing their own tax returns (on which Defendant at least in some instances reported its operations

as management or business-support services).  See A. Rosatti 2021 Decl. ¶ 7; Herman Decl. ¶

25; Exh. 1 at 326:20-327:2 (testifying that other than Defendant's services as an administrative

paymaster entity for Respondents in connection with their sale proceeds and the CFI Settlement

Agreement, Defendant generally did not carry on other business); Exh. 10 at PLAZA EP 114-15,

PLAZA EP 202-03, PLAZA EP 210, PLAZA EP 224-25, PLAZA EP 232.  Defendant ceased

providing such paymaster services for Respondents on or about December 28, 2017, when

Defendant stopped using its M&T bank account (which it then closed altogether on January 8,

2018, and Defendant has not opened any other bank account since).  See Rakowski Decl. ¶ 41;

Exh. 1 at 44:8-15, 123:14-131:12; Exh. 17 at M&T 190; Herman Decl. ¶ 26.   In sum, Defendant

and Respondents allege that, although deposits that are the subject of the instant motion were

made into Defendant's bank account at relevant times, Defendant did not own or have the right

to retain the funds, and transferred them to the payee to whom or which they belonged, such that

Defendant did not fraudulently convey them to avoid payment of Plaintiff's judgment.   See A.

Rosatti Decl. ¶ 9; Herman Decl. ¶ 11(a); Exh. 10 at PLAZA EP 207-08; see also A. Rosatti 2021

Decl. ¶ 11; Herman Decl. ¶ 26.

        In response, Plaintiff argues that the paymaster allegation should be disbelieved because

certain of Defendant's operations suggest that it engaged in at least some non-paymaster

activities including, for example, its sublease of the SBMT premises from Plaintiff, see Section I,

supra; an instance when Defendant executed promissory notes to obtain a $300,000.00 loan, see

Section III.f, infra; and an instance when Defendant unsuccessfully sought to buy real property in its name, see Section III.e, infra.  See ECF No. 117-2 at 9-10.  Plaintiff also argues that the paymaster allegation should be disbelieved because, between 2007 and 2013 (prior to the transfers that are the subject of the instant motion), certain Respondent Dealerships occasionally paid rent to Plaintiff directly in connection with the SBMT sublease and without using Defendant as an intermediary; according to Plaintiff, this belies Respondents' concern for the bank account and routing number privacy alleged here.  See A. Rosatti 2021 Decl. ¶ 7; Exh. 2 at 6, 13, 19, 26 (Respondent Plaza Hyundai), 7, 20 (Respondent Acura of Brooklyn), 8, 12, 14, 21, 25, 27 (Respondent Plaza Honda), 9-10, 15, 22-23, 28 (Respondent Plaza Toyota), 11, 24 (Respondent Acura of Brooklyn).  In sum, Plaintiff argues that Defendant did not serve as Respondents' paymaster with respect to all or any of the transactions challenged in the instant turnover motion. See ECF No. 117-2 at 9-12.

> **b. Beginning In 2014, Nonparties Deposited A Total Of $2,557,352.81 Into Defendant's Bank Account, Which Defendant and Respondent Dealerships Demonstrate Were The Proceeds Of Respondent Dealerships' Vehicle And Parts Sales To Those Nonparties, And Which Defendant Transferred To The Respective Respondent Dealerships That Had Made The Sales**

Beginning in 2014 and continuing through December 2017, nonparties wired $2,557,352.81 into Defendant's bank account through one hundred and forty-eight (148) check and book transactions which Defendant and Respondent Dealerships allege were the proceeds of Respondent Dealerships' vehicle and parts sales to those nonparties, and which Defendant then transferred to Respondent Dealerships as follows:

- Between 2014 and May 3, 2017, Defendant transferred a total of $713,831.42 to Plaza Honda in fifty-four (54) check and book transactions.  See Sackowitz Decl. ¶¶ 61-62; Exhs. 29-30.

- Between 2014 and November 30, 2017, Defendant transferred a total of $1,169,316.87 to Plaza Toyota in sixty (60) check and book transactions.  See Sackowitz Decl. ¶¶ 63-64;

Exhs. 31-32.

- Between 2015 and April 20, 2017, Defendant transferred a total of $502,154.88 to Plaza Hyundai in ten (10) check and book transactions.  See Sackowitz Decl. ¶¶ 65-66; Exhs. 33-34.

- Between 2015 and December 13, 2017, Defendant transferred a total of $139,421.28 to Acura of Brooklyn in fifteen (15) check and book transactions.  See Sackowitz Decl. ¶¶ 67-68; Exhs. 35-36.

- Between 2015 and January 5, 2018, Defendant transferred a total of $32,628.36 to Plaza Kia in nine (9) check and book transactions.  See Sackowitz Decl. ¶¶ 69-70; Exhs. 37-38.

See ECF No. 117.  In his deposition testimony and a declaration, Adam Rosatti explains that these incoming deposits were nonparties' payments to Respondent Dealerships for vehicles or parts sold to them by the Respondent Dealerships; thus, Defendant did not have an interest in the funds.  Defendant in its role as Respondent Dealerships' paymaster transferred the funds to the Respondent Dealerships that had made the sales from inventory that the Respondent Dealerships owned.  See A. Rosatti 2021 Decl. ¶¶ 11-15; Exh. 1 at 90-134, 138-155, 158-159, 172-174, 178-179, 181-190, 202-206 (testifying generally that the Respondent Dealerships used Defendant as a paymaster for incoming sales proceeds from nonparties, and specifically as to certain deposits known to be such incoming sale proceeds later transferred); Exhs. Q-Y.  In addition, Defendant and Respondents submit a sample of retail certificates of sale showing that a subset of the incoming deposits and outgoing transfers were identical in amount and were the proceeds for sales from inventory owned by the Respondent Dealerships; they highlight that bank and check records show the temporal proximity between the deposits and Defendant's transfer of equivalent sums to the Respondent Dealerships.  See Exh. 1 at 90-206 (testifying from his personal knowledge and from identifiers on records that certain of these transactions reflected the sale of Respondent Dealerships' inventory); Exh. 17; Exhs. Q-Y; A. Rosatti 2021 Decl. ¶¶ 11-15.  Defendant's tax returns during the relevant years did not report these funds as income, and, at

9

times, stated its operations to be management and business-support services, supporting the

Defendant and Respondents' position that Defendant did not have a taxable ownership interest in

these funds.  See Exh. 10.

      **c.  In 2016, Respondent Plaza Honda Deposited $800,000.00 Into Defendant's Bank Account For Defendant, Which Defendant Then Distributed To Over One Thousand Nonparties In 2017 On Behalf Of CFI Respondents To Satisfy Certain Respondents' Obligations Under Their Credit Forget It, Inc. Settlement Agreement With The New York State Office Of The Attorney General**

    At some point prior to 2016, the New York State Office of the Attorney General

("NYSOAG") commenced an investigation into Respondent Plaza Honda's, Plaza Toyota's,

Plaza Hyundai's and Acura of Brooklyn's ("CFI Respondents") arrangement with nonparty

Credit Forget It, Inc. ("CFI") to sell their customers CFI credit-repair and identity-theft-

protection services in alleged violation of New York law.  See Sackowitz ¶ 42; Exh. 23.  On

April 20, 2016, in exchange for the NYSOAG's agreement to discontinue its investigation, the

CFI Respondents entered into a settlement agreement with the NYSOAG whereby the CFI

Respondents agreed to pay $800,000.00 by wire transfer or check within 30 days into an interest-

bearing bank account at M&T Bank, 7807 5th Avenue, Brooklyn, New York 11209, for later

distribution to consumers who had purchased CFI services in connection with CFI Respondents'

arrangement (hereinafter "CFI Settlement Agreement").  See Sackowitz Decl. ¶ 42; Exh. 23 ¶

39.[7]  After those distributions to each eligible consumer identified by CFI Respondents, the CFI

Settlement Agreement's terms stated that any interest earned on CFI Respondents' deposit into

the M&T bank account "shall belong to Respondents and be remitted to them[.]"  Id.; see Exh. 1

---

[7] Although the sum of these eventual distributions very slightly exceeds $800,000.00, Plaintiff's application moves only on the $800,000.00 round number.  See Sackowitz Decl. ¶ 54 n.12 ("Plaintiff only seeks to recover the $800,000.00 that Plaza Honda transferred to [Defendant].").

at 175-180.  Defendant was not a party to the CFI Settlement Agreement.  <u>See</u> Exh. 23; Herman Decl. ¶ 35; Exh. G.

On May 20, 2016, Respondent Plaza Honda transferred $800,000.00 into Defendant's M&T bank account from its bank account ending in -6204 in accordance with the CFI Settlement Agreement which, again, stated that any interest earned on the deposit but not distributed to eligible consumers belonged to CFI Respondents.  <u>See</u> Sackowitz Decl. ¶¶ 43-44; Exh. 17 at M&T 106; Exh. 23 ¶ 39.  According to Defendant and CFI Respondents, the $800,000.00 was transferred into Defendant's bank account because Defendant had agreed to serve as the CFI Respondents' paymaster for the purposes of distributing the CFI Settlement Agreement funds to the many individual parties owed settlement proceeds.  <u>See</u> A. Rosatti 2021 Decl. ¶¶ 5, 8; Herman Decl. ¶¶ 11(a), 23, 34, 38; Exh. 1 at 55-56, 60-63, 87, 90-92, 15; Exh. 10 at PLAZA EL 202, 224, 249, 273; Exh. D.

In Defendant's 2016 tax returns, it declared its assets as of December 31, 2016, to be $800,455.00, $800,000.00 of which reflected the CFI Settlement Agreement funds that Respondent Plaza Honda had transferred to Defendant's M&T bank account, but which Defendant had not yet distributed as of December 31, 2016.  <u>See</u> Sackowitz Decl. ¶¶ 45-46; Exh. 10 at PLAZA EP 117; Exh. 17 at M&T 00122.

Then, between January 1, 2017, and December 28, 2017, in accordance with the NYSOAG settlement, Defendant made payments totaling $587,927.47 out of its M&T bank account to 1,106 eligible consumers in accordance with the CFI Settlement Agreement.  <u>See</u> Sackowitz Decl. ¶¶ 47-50; Exh. 1 at 174:23-177:18, 283:6-17, 287:18-288:5; Exh. 17 at M&T 00125-M&T 00193; Exhs. 24-25.

On July 27, 2017, when Defendant had not yet distributed a significant portion of the

11

$800,000.00 destined to satisfy the CFI Settlement Agreement, Defendant delivered $125,000.00 of the unexpended CFI Settlement Agreement funds from Respondent Plaza Honda to Respondent Acura of Brooklyn and $75,000.00 to Respondent Plaza Kia as "short term loans," which these Respondent Dealerships paid back into Defendant's account on August 4, 2017, and August 10, 2017, respectively.  See Sackowitz Decl. ¶¶ 55-59; Exh. 17 at M&T 0180, M&T 00182; Exh. 28; A. Rosatti 2021 Decl. ¶ 9 n. 2.

On December 28, 2017, by which time Defendant had distributed $587,927.47 to over one thousand individual consumers/settlement beneficiaries, Defendant issued a check payable to itself for $215,037.76—the balance of the unexpended $800,000.00—with the annotation "bank check to clear Credit Forget It"; bought an M&T bank check in the same amount dated December 28, 2017, made payable to the NYS Comptroller; and remitted that payment to the NYS Comptroller on behalf of the CFI Respondents in connection with the CFI Settlement Agreement.  See Sackowitz Decl. ¶¶ 51-54; Exh. 17 at M&T 00190, M&T 00192; Exhs. 26-27; Herman Decl. ¶¶ 38-40, 52-53.

### d.   In 2016 And 2017, Nonparty Kenwood Holdings Ltd. Made Two Deposits Totaling $748,324.08 Into Defendant's Account As Respondent Mr. Rosatti's Investment Proceeds As A Kenwood Shareholder, Which Defendant Then Transferred To Respondent Plaza Honda

On June 27, 2016, nonparty Kenwood Holdings Ltd. ("Kenwood") transferred $508,967.97 into Defendant's M&T bank account.  See Sackowitz Decl. ¶ 37; Exh. 1 at Tr. 155:7-156:10, 185:8-186:3; Exh. 17 at M&T 44, M&T 58, M&T 108, M&T 177; Exh. 22.   The next day, Defendant transferred the same amount to Respondent Plaza Honda.  See id.  On July 1, 2016, Kenwood emailed a letter to a Respondent Plaza Honda controller at the time of the transfer that was addressed to Respondent Mr. Rosatti, greeted him as "Shareholder" and explained that the transfer as "cancellation payment(s) on series PN-2018."  Sackowitz Decl. ¶

12

41; Exh. 22.

On June 27, 2017, Kenwood transferred $239,356.11 into Defendant's M&T bank account and, the next day, Defendant transferred the same amount to Respondent Plaza Honda. See Sackowitz Decl. ¶¶ 39-40; Exh. 1 at Tr. 155:7-156:10, 185:8-186:3; Exh. 17 at M&T 44, M&T 58, M&T 108, M&T 177; Exh. 22. On June 30, 2017, Kenwood emailed a letter to a Respondent Plaza Honda controller at the time of the transfer that was addressed to Respondent Mr. Rosatti, greeted him as "Shareholder" and explained that the transfer as "cancellation payment(s) on series PN-2018." Sackowitz Decl. ¶ 41; Exh. 22.

     **e. In 2018, Nonparty Suffolk Regional Off Track Betting Corporation Delivered A Check For $245,000.00 Made Payable To Defendant For The Repayment Of A Partial Security Deposit Made Using Respondent Plaza Honda's Money In Connection With SROTB's Unrealized Sale Of Real Estate To Defendant**

On September 30, 2016, Respondent Plaza Honda transferred $245,000.00 by check to an escrow agent for Suffolk Regional Off Track Betting Corporation ("SROTB") for intended use as a partial down payment for Defendant's proposed but never realized purchase of real property from SROTB in the Town of Brookhaven (the partial down payment constituted approximately 10% of what the required down payment may have been had the deal been realized). See Sackowitz Decl. ¶¶ 28-29; Exh. 1 at 70:21-71:11, 257:23-258:12, 277:20-278:16; Exh. 20. Adam Rosatti testified that Defendant proposed to hold title to the property at least in part for the Respondent Dealerships' inventory storage. See Exh. 1 at 70:21-71:11, 73:22-74:4, 263:10-16, 279:9-281:8. On May 3, 2018, after Defendant's purchase of the property was not consummated, SROTB's attorney and escrow agent wrote a check refunding the $245,000.00 partial down payment that was made out to Defendant as the payee. See Sackowitz Decl. ¶ 31; Exh. 1 at 70:21-71:11; Exh. 20. In June 2018 (by which time Defendant's sole bank account was

13

restrained and closed), Respondent Plaza Honda—which had paid the security deposit in the first instance—deposited the check into its bank account.  See Rakowski Decl. ¶ 41; Sackowitz Decl. ¶¶ 30-35; Exh. 1 at 123:14-131:12, 256:20-264:16, 267:14-17; Exh. 2; Exh. 17 at M&T 190; Exh. 21; Herman Decl. ¶ 45; Exh. J.

### f. Defendant's 2016 Transfer Of $300,000.00 To Respondent Mr. Rosatti Representing The Alleged Repayment Of A Loan Made To Defendant By Two Reinsurance Companies

On September 15, 2016, the reinsurance company John Rosatti Reinsurance Company Ltd. ("JRRC") issued a corporate resolution directing an entity named Accelerated Service International ("ASI") to invest company funds by loaning $150,000.00 to Defendant, and a second reinsurance company John Rosatti/Adam Rosatti Reinsurance Company, Ltd. ("JRARRC") did the same.  See Sackowitz Decl. ¶¶ 24-25; Exh. 1 at 159-172; Exh. 18. Respondent Mr. Rosatti is the sole owner of JRRC and the half owner of JRARRC, with Adam Rosatti owning JRARRC's other half.  See Exh. 1 at 162:12-16.  That same day, Respondent Mr. Rosatti signed two promissory notes on behalf of Defendant.  See Rakowski Decl. ¶ 28; Exh. 19. In one of them, Defendant agreed to pay ASI $150,000.00 by September 1, 2021, for the benefit of JRRC and that Defendant's obligations to JRRC thereunder were secured by the "[c]urrent and future reserves of [JRRC]."  Id.  In the other, Defendant similarly promised to pay ASI $150,000.00 by that same date for the benefit of JRARRC, with Defendant's obligations to JRARRC thereunder secured by the "[c]urrent and future reserves of [JRARRC]."  See id.

Also on that same day, an entity named Freedom Insurance Company Ltd. ("Freedom Insurance")—not ASI—made two wire transfers of $150,000.00 each into Defendant's M&T bank account for a total deposit of $300,000.00.  See Sackowitz Decl. ¶ 27; Exh. 17 at M&T 00051 ("Loan from John Rosatti/Adam Rosatti Reinsurance Company"), id. at M&T 00052

14

("Loan from John Rosatti Re[insurance Company]"); id. at M&T 00115. Respondent Mr. Rosatti thereafter directed Defendant to transfer the $300,000.00 to Respondent Mr. Rosatti's personal bank account, and, on September 16, 2016, Defendant wired $300,000.00 into Respondent Mr. Rosatti's bank account. See Sackowitz Decl. ¶¶ 26-27; Exh. 1 at 161:5-163:11, 255:10-256:8; Exh. 17 at M&T 115; Exh. 19.

Adam Rosatti testified that the incoming deposits to Defendant from Freedom Insurance were loan proceeds, and that Defendant then transferred them to Respondent Mr. Rosatti. See Exh. 1 at 76-80, 159-164. In later declarations sworn by Adam Rosatti, he explained that when Freedom Insurance deposited the $300,000.00 into Defendant's account as a payment to JRRC and JRARRC, and that Defendant's transfer of the funds to Respondent Mr. Rosatti in his capacity as the owner or co-owner of both reinsurance companies constituted Defendant's performance of a paymaster function for the reinsurance companies in that regard. See A. Rosatti 2020 Decl. ¶ 2; Herman Decl. ¶¶ 27-32; A. Rosatti 2021 Decl. ¶ 16.e. Although Adam Rosatti declared that Freedom Insurance's payment of the funds to the reinsurance companies was structured in this way for a reason, that reason is not explained in the record. See id.

## IV. Legal Standards

### a. Rule 69(a) And CPLR 5225(b) Generally

"A motion to enforce a money judgment is governed by Rule 69(a), which provides that 'proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located.'" CSX Transp., Inc. v. Island Rail Terminal, Inc., 879 F.3d 462, 468 (2d Cir. 2018) (quoting Fed. R. Civ. P. 69(a)). In New York, Article 52 of the CPLR governs the enforcement and collection of money judgments. See N.Y. C.P.L.R. §§ 5201-53; Tire Eng'g & Distrib. L.L.C. v. Bank of China Ltd., 740 F.3d 108, 110 (2d Cir. 2014).

Section 5225(b) offers judgment creditors a procedural "mechanism for obtaining a money judgment against the recipient of a fraudulent conveyance" where the claim's elements are met, F.D.I.C. v. Conte, 612 N.Y.S.2d 261, 262 (3d Dep't 1994), and "without the need to resort to a plenary action," Mitchell v. Lyons Prof'l Servs., 727 F. Supp. 2d 120, 123 (E.D.N.Y. 2010). See N.Y. C.P.L.R. § 5225(b). As relevant to the instant motion, Plaintiff invokes Sections 273, 273-a, 274, 275 and 276 of the New York Debtor and Creditor Law in connection with its Section 5225(b) proceeding's fraudulent-conveyance allegations.[8] ECF No. 117.

"By its express language, [Section 5225(b)] provides for a two-step analysis." Beauvais v. Allegiance Sec., Inc., 942 F.2d 838, 840 (2d Cir. 1991); see N.Y. C.P.L.R. § 5225(b). "First, it must be shown that the judgment debtor 'has an interest' in the property the creditor seeks to reach." Beauvais, 942 F.2d at 840; see In re Navigator Gas Transp. PLC, 358 B.R. 80, 88 (S.D.N.Y. 2006) (denying turnover motion for movant's failure to prove that the judgment debtor had an interest in property at issue); United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 988 F. Supp. 367, 374 (S.D.N.Y. 1997) (denying judgment creditor's turnover motion for failing to show that judgment debtor, which was not an intended third-party beneficiary to a contract between a bank and the judgment debtor's wholly owned subsidiary, had an interest in funds that belonged to the subsidiary but were deposited into the judgment debtor's account to be held on the subsidiary's behalf).[9] Where this first step is satisfied, the trial court must, second, then

---

[8] This Court applies the versions of Sections 273, 273-a, 274, 275 and 276 in effect at the time of the allegedly fraudulently conveyances. See N.Y. Debt. & Cred. L. §§ 273, 273-a, 274, 275, 276. New York has since amended its Debtor and Creditor Law effective April 4, 2020, see 2019 N.Y. Sess. Laws ch. 580, but the new law does "not apply to a transfer made or obligation incurred before [the act's] effective date," Ray v. Ray, 799 F. App'x 29, 31 n.1 (2d Cir. Jan. 23, 2020).

[9] Whether a judgment debtor "has an interest" in property "must be understood to mean a direct

16

make one of two findings if supported by the record: "it must find either that the judgment debtor is 'entitled to the possession of such property,' or it must find that 'the judgment creditor's rights to the property are superior' to those of the party in whose possession it is." Beauvais, 942 F.2d at 840 (emphasis in the original). "Only after both steps of the analysis are demonstrated may the trial court order the transferee to turn over the property to the judgment creditor." Id. at 840-41; see Ladjevardian v. The Republic of Argentina, No. 04 Civ. 2710 (TPG), No. 06 Civ. 3276 (TPG), 2016 WL 3039189, at *3 (S.D.N.Y. May 26, 2016) (denying the plaintiffs' turnover motion against a nonparty trustee, finding that the debtor "retain[ed] no interest in proceeds paid into the [t]rust"), aff'd, 663 F. App'x 77, 79 (2d Cir. Oct. 17, 2016).[10]

Plaintiff has the burden of proof as to both steps of a Section 5225(b) analysis. See Kissin v. Empire Bluecross Blueshield, No. 106448/2006, 2007 WL 9229475, at *1 (N.Y. Sup.

---

interest in the property itself which, while it may require a court determination, is leviable and not an indirect interest in the proceeds of the property." Amtrust N. Am., Inc. v. Preferred Contractors Ins. Comp. Risk Retention Grp., LLC, No. 16 Misc. 340 (CM), 2016 WL 6208288, at * 5-6 (S.D.N.Y. Oct. 18, 2016) (quoting Sumitomo Shoji New York, Inc. v. Chem Bank New York Trust Co., 47 Misc. 2d 741, 746 (N.Y. Sup. 1965)). "It might be difficult with certain types of property to determine if the judgment debtor does indeed have a legal or a beneficial interest." Weinstein, Korn & Miller, New York Civil Practice: CPLR ¶ 5225.16. "Escrow funds are an example of property in which the judgment debtor's interest may vary from being a legal interest to no interest at all." Id.

[10] See also A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97 Civ. 4978 (LMM), 1999 WL 47223, at *7 (S.D.N.Y. Feb. 3, 1999) ("The [c]ourt is convinced that [a party] may not assert a claim of fraudulent conveyance where the property transferred does not belong to the transferor."); Bell v. Leakas, No. 90 Civ. 7981 (LMM), 1993 WL 77320, at *7 (S.D.N.Y. Mar. 13, 1993) (dismissing fraudulent conveyance claims against the officers and sole stockholders of a corporation because "[t]he assets that were the subject of the alleged conveyance(s) belonged to [the corporation]"); Weismann v. Robins, 594 N.Y.S.2d 337, 338 (2d Dep't 1993) (affirming finding that a fraudulent conveyance had not occurred "[s]ince the judgment debtor did not have an actual interest" in the property transferred to the respondent); A.J. Armstrong Co. v. Halikman, 358 N.Y.S.2d 86, 87 (2d Dep't 1974) (holding that conveyance of a husband's interest in property to wife was not fraudulent because evidence showing that the wife used her own money for the down payment and for the payment of second mortgage, showed that the husband only held his interest in trust for his wife).

17

Ct., N.Y. Cnty. 2007); see also N. Mariana Islands v. Canadian Imperial Bank of Commerce, 717 F.3d 266, 268 (2d Cir. 2013) (finding that the judgment creditor had not met its burden of proof in Section 5225(b) proceeding); Irving & William H. Stark, Inc. v. Milberg Factors, Inc., 326 N.Y.S.2d 867, 868 (1st Dep't 1971) (holding that although the judgment creditor had the burden of proving that the property sought to be reached belonged to the judgment debtor).  A plaintiff may meet this burden through a preponderance of the evidence, with the exception of actual intent to defraud under Section 276 claim, which must be proven with clear-and-convincing evidence.  See First Small Bus. Inv. Corp. v. Zaretsky, 282 N.Y.S.2d 973, 973 (2d Dep't 1967) (dismissing turnover proceeding because the "plaintiff failed to prove by a preponderance of the evidence" that the debtor owned the property that the plaintiff sought to reach: "In the absence of such quantum of proof, this proceeding must fail."); Section IV.d.ii, infra (discussing preponderance standard for constructive fraudulent-conveyance claims); Section IV.d.i, infra (discussing clear-and-convincing standard for actual fraudulent-conveyance claims).

### b.  A Rule 69(a) Motion Is Treated Like A Summary Judgment Motion

A motion under Rule 69(a) is treated like a summary judgment motion.  See HBE Leasing Corp. v. Frank, 48 F.3d 623, 633 (2d Cir. 1995); Deflora Lake Dev. Assocs., Inc. v. Hyde Park, No. 13 Civ. 4811 (CS), 2016 WL 7839191, at *2 (S.D.N.Y. June 9, 2016) ("The posture of this proceeding is like that of a summary judgment motion."), aff'd, 689 F. App'x 93 (2d Cir. May 3, 2017).  "A court may grant summary relief where there are no questions of fact, but it must conduct a trial on disputed issues of fact on adverse claims in a turnover matter." CSX Transp., 879 F.3d at 473 (citations & internal quotations omitted).  "In a summary proceeding such as a turnover proceeding pursuant to CPLR 5225(b), a court is authorized to make a summary determination upon the pleadings, papers and admissions to the extent that no

triable issues of fact are raised."  See Centerpointe Corp. Park P'ship 350 v. MONY, 946

N.Y.S.2d 354, 355 (4th Dep't 2012) (citations & internal quotations omitted).[11]  "[T]he court

must view all facts in the light most favorable to the non-moving party" in a Section 5225(b)

turnover proceeding brought under Rule 69(a), Cordius Trust v. Kummerfeld, No. 99 Civ. 3200

(DLC), 2007 WL 2435156, at *5 (S.D.N.Y. Aug. 29, 2007), as its role "is to determine if bona

fide issues of fact exist, and not to resolve issues of credibility," Fernbach, LLC v. Calleo, No.

13878/2010 (PGF), 2011 WL 2308599, at *1 (N.Y. Sup. Ct., Nassau Cnty. May 24, 2011)

(denying summary judgment due to fact issues raised about "whether the transfers identified by

the plaintiff were legitimate transfers, or a ruse to fraudulently prevent the plaintiff from

satisfying its judgment").  Where a court finds that a "[d]isputed issue of material fact exists

regarding the interest of both parties and non-parties in the property sought to be turned over[,]"

the court should deny summary judgment.  DiMare Homestead, Inc. v. Alphas Co. of New York,

No. 09 Civ. 6644 (PKC), 2012 WL 2930072, at *3 (S.D.N.Y. July 18, 2012).[12]

---

[11] See also Marenyi v. Packard Press Corp., No. 90 Civ. 4439 (CSH), 1994 WL 16000129, at *5 (S.D.N.Y. June 9, 1994) ("A petition pursuant to CPLR § 5225 may be decided on the basis of the parties' submissions; however, disputed issues of material fact require a hearing or trial.") (citations omitted).

[12] See Aluminum Co. of Am. v. Moskovitz, No. 88 Civ. 2616 (RJW), 1991 WL 177246, at *2 (S.D.N.Y. Sept. 5, 1991) ("A motion made pursuant to CPLR § 5225 is in the nature of a motion for summary judgment, and the existence of a disputed issue of material fact precludes a determination of the dispute based on the submission of the parties alone."); id. (denying the plaintiff's turnover motion for the contents of a judgment debtor's apartment where summary disposition was inappropriate given that the debtor's wife raised a fact issue about the debtor's ownership with affidavit and documentary evidence stating that the property belonged to her); Cadle Co. II, Inc. v. McLean, 839 N.Y.S.2d 811, 812 (2d Dep't 2007) (affirming the denial of summary judgment where fact issues bearing on the nature of the defendant's indebtedness was unclear); Adelaide Prods., Inc. v. BKN Int'l AG, 833 N.Y.S.2d 450 (1st Dep't 2007) (finding that a respondent's affidavit evidence that it did not owe the judgment debtor the amounts alleged in opposition to a Section 5225 turnover proceeding "clearly created, at least, a factual issue as to the amount of the debt [the respondent] owed to [the judgment debtor,]" and reversing

"[S]ummary disposition sought by [the plaintiff in a Section 5225 matter] is warranted only if the entire record would inevitably lead a rational trier of fact to find in [its] favor." Nashewat v. Salem, 365 F. Supp. 2d 508, 525 (S.D.N.Y. 2005).[13]  For this reason, when a court finds genuine issues of material fact, the court may not summarily dismiss a turnover application in favor of a nonmovant.  See Rozales v. Pegalis & Wachsman, P.C., 511 N.Y.S.2d 376, 377 (2d Dep't 1987) (affirming the denial of the appellant's motion to dismiss Section 5225(b) proceeding over its objection to the petitioners' allegation that the appellant was in possession of

---

the grant of a money judgment for factfinding on the question of whether and to what extent respondent owed a debt to the judgment debtor); Cadle Co. v. Satrap, 754 N.Y.S.2d 354, 355 (2d Dep't 2003) (finding that although the debtor's name on a vehicle's title established his presumptive joint ownership of the property, his wife's affidavit in opposition raised "issues of fact as to whether joint ownership was intended, and whether there was an agreement that the vehicle be the wife's separate property"; as a result, under the circumstances, summary disposition of the turnover petition was improper and a hearing was required "to determine the wife's interest in the vehicle before deciding that it should be turned over"); Breffort v. Kipness, 436 N.Y.S.2d 11, 11-12 (1st Dep't 1981) (reversing summary judgment on the judgment creditor's turnover motion, finding fact issues pertaining to the creditor's speculative allegation that the respondent corporations owed a debt to the debtor); Yeh v. Seakan, 464 N.Y.S.2d 627, 631 (N.Y. Sup. Ct., Oneida Cnty. 1983) (finding fact issues regarding the judgment debtor's interest in chattels and appliances that required factfinding before Section 5225(b) turnover adjudication).

[13] See also In re Penn-Dixie Steel Corp., 6 B.R. 817, 823-24 (Bankr. S.D.N.Y. 1980) ("At times, whether a debt or trust arose may not be too clear.  In these cases the intention of the parties must be sought and is determinative.  If the formative language, written or oral, provides no clue, resort to circumstances surrounding the transaction in question must be had."); Gen. Motors Acceptance Corp. v. Norstar Bank of Hudson Valley, 549 N.Y.S.2d 862, 863 (3d Dep't 1989) (holding that the trial court erred in summarily granting a judgment creditor's application under CPLR 5225(b) for an order directing a bank to turn over an amount sufficient to satisfy the judgment from the judgment debtor's account where there was documentary evidence that the account was listed in the names of the debtor and his attorney as "escrowee," and the attorney's verified answer indicated that the account was an escrow account for the benefit of another creditor, raising disputed question of fact as to the status of the account); Triangle Pac. Bldg. Prods. Corp. v. Nat'l Bank of N. Am., 404 N.Y.S.2d 121, 122-23 (2d Dep't 1978) (finding that where a bona fide question of fact existed as to the ownership of a joint account such that the appellant's property rights would be substantially affected by a turnover order, a turnover order could not be summarily granted).

legal fees belonging to the petitioners' judgment debtor, finding that "whether or not [the referring attorney, the judgment debtor, was] entitled to the funds in the appellant's possession is an issue to be determined . . . at a hearing").[14]

### c. A Debtor's Possession Of Funds In Its Bank Account Gives Rise To A Rebuttable Presumption That The Debtor Owns Them

For the purposes of the instant motion, Plaintiff argues that it has made a prima facie showing of the first element—Defendant's interest in the funds—because the disputed funds were once in Defendant's bank account. See ECF No. 117-2 at 8-9; Section IV.c, infra. Under New York law, "[w]hen a party holds funds in a bank account, possession is established, and the presumption of ownership follows." Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara ("Pertamina I"), 313 F.3d 70, 86 (2d Cir. 2002) (citations omitted); see In re Suntech Power Holdings Co., Ltd., 520 B.R. 399, 411 (Bankr. S.D.N.Y. 2014) (holding that a bank account's titleholder "is its presumptive owner"). Although on this motion this Court accepts that Plaintiff has established a presumption of Defendant's interest in the subject funds, the presumption is rebuttable and is less robust than Plaintiff would desire. See Pertamina I, 313 F.3d at 86. Where a debtor raises triable issues of fact as to ownership with rebuttal evidence, the creditor cannot rest on the presumption, which effectively disappears in the face of contradictory evidence. Instead, the parties must face off on an even playing field at trial.

---

[14] See also Milberg Factors, 326 N.Y.S.2d at 868 (holding that although the judgment creditor had not, as a matter of law, sustained its burden of proving that $7,500 held by a respondent belonged to the judgment debtor, in the interests of justice the judgment creditor should have an opportunity of developing facts at a hearing with respect to the funds' source and ownership); Margaret Tietz Nursing & Rehab. Ctr. v. Svitlik, No. 7003266/2011 (HGL), 2014 WL 2995006, at *1 (N.Y. Sup. Ct., Queens Cnty. 2014) (denying the defendant's motion for summary dismissal of the plaintiff's turnover proceeding, holding that summary judgment should be denied if there is any doubt as to the existence of a triable issue or when a material issue of fact is arguable).

Stated differently, although the rebuttable presumption upon which Plaintiff relies in the instant motion "supplies the place of rational inference[,]" the "office of a presumption must disappear when the opposite side puts in proof, and the party charged with the burden of proof [may] fail, if he goes no further, or cannot use his adversary's evidence as support of the affirmative." Pariso v. Towse, 45 F.2d 962, 964 (2d Cir. 1930) (L. Hand, J.). "To hold otherwise would be to impose the burden of proof upon the party having the negative." Id.[15]

### i. A Presumption Of An Account Holder's Ownership May Be Rebutted By Evidence Of A Third Party's Ownership Of The Funds

The presumption that Defendant owned the funds it possessed in its bank account "may be rebutted by evidence that [Respondents] actually controlled the disputed funds, or that [Defendant] merely held the funds for [Respondents], in the manner of a trustee." Pertamina I, 313 F.3d at 86 (citing New York constructive trust cases in its discussion of how one might rebut the presumption of ownership that arises from a debtor's possession of funds in its bank account. Consistent with these principles, cases have acknowledged that a debtor may rebut the presumption of an interest in funds when the debtor's possession of them is in a disbursing agent or mere conduit role. See In re Montreal, Maine & Atl. Ry., Ltd., 888 F.3d 1, 10 (1st Cir. 2018) (citations & internal quotations omitted) (finding in the bankruptcy context that where a debtor

---

[15] See also United States v. Hendrix, 542 F.2d 879, 882 (2d Cir. 1976) ("We have, in matters involving other presumptions, consistently held that a true presumption is a procedural device, not evidence; and that, when proof in rebuttal is introduced, the presumption is out of the case.") (collecting cases); British Am. Assurance Co. of Toronto, Canada v. Bowen, 134 F.2d 256, 259 n.5 (10th Cir. 1943) ("A presumption . . . serves the purpose of a prima facie case until the other party has gone forward with his evidence, but in itself [the presumption] is not evidence, and involves no rule as to the weight of the evidence to meet it. . . . It is not a probative matter, which may be a basis of inference and weighed and compared with other matter of a probative nature.") (citation & quotation omitted); United States v. Pulver, 54 F.2d 261, 263 (2d Cir. 1931) ("A true presumption is not evidence, though it supplies its place and requires the other party to proceed with the negative. Unless he does, he loses; when he does, the presumption is out of the case, and the issue is open.").

holds funds as a mere "disbursing agent" pursuant to a contract that prevents it from putting the funds to any use other than the one designated, it would not make commercial sense to allow unsecured creditors to share "in funds that the debtor could not have retained for its own use"); In re Finley, Kumble, Wagner v. Alexander & Alexander, Inc., 130 F.3d 52 (2d Cir. 1997) (collecting and discussing "mere conduit" cases).[16]

Defendant and Respondents rebut Plaintiff's prima facie allegation of Defendant's presumed interest in the contested funds with evidence that Respondents controlled and owned them, with Defendant possessing them only as Respondents' agent.  See ECF No. 120-1 at 6-12. A defendant or respondent may offer such proof to show the actual owner's control through its "power or authority to manage, direct, or oversee" the property at issue.  In re Chowaiki & Co. Fine Art Ltd., 593 B.R. 699, 713-14 (Bankr. S.D.N.Y. 2018) (citation & internal quotation

---

[16] See also The Cadle Co. v. Newhouse, No. 98 Civ. 5945 (NRB), 2000 WL 1721131, at *3 (S.D.N.Y. Nov. 16, 2000) (finding that a "transfer may indeed not be considered a conveyance . . . when the transfer is truly just a momentary stopping point for funds that are part of a larger ongoing transaction"); cf. Official Comm. of Unsecured Creditors v. Columbia Gas Sys., Inc., 997 F.2d 1039, 1062-63 (3d Cir. 1993) (refunds collected were held by debtor in trust solely to pay customers; amounts that were collected from customers were unrestricted where the debtor was required to pay suppliers regardless of collections, making the relationship debtor-creditor); id. at 1059 (finding in the bankruptcy context a congressional intention that "when a debtor is a mere conduit for funds to travel from one party to another, it lacks equitable interest in the monies"); Yonkers Bd. of Educ. v. Richmond Children's Ctr., Inc., 58 B.R. 980, 981-82 (S.D.N.Y. 1986) (finding that a debtor children's residential facility that deposited a state "pass-through" payment for delivery to the Yonkers school district held those funds in constructive trust: "Under the contract, no debt is owed to [Yonkers] by [the debtor] . . . the [d]ebtor's obligation was merely that of auditing claims and passing through payments[.]"); id. at 983 (attaching no significance to the fact that an express trust had not been made); In re Black & Geddes, Inc., 59 B.R. 873, 875 (Bankr. S.D.N.Y. 1986) (finding that the debtor's payment to a defendant whose uncontradicted evidence was that it received the funds "only as an agent for a disclosed principal" was "not in payment of any indebtedness, antecedent or otherwise," owed to the defendant acting as a mere conduit of funds such that no recovery could be had); In re Fabric Buys of Jericho, Inc., 33 B.R. 334, 337 (Bankr. S.D.N.Y. 1983) (holding that the law firm that accepted settlement check on behalf of client, deposited it into escrow account, and paid funds to the client was a mere conduit, not initial transferee).

omitted); see In re Shulman Transp. Enters., Inc., 744 F.2d 293, 295-96 (2d Cir. 1984) (holding

that to determine whether a debtor held property as the agent of another party, the "real

character" of the parties' relationship and control must be assessed).[17]

> ### ii. A Presumption Of A Debtor's Ownership May Be Rebutted By Evidence That The Debtor Held The Property In The Manner Of A Trustee

Defendant and Respondents further rebut Plaintiff's assertion of a presumption as to

Defendant's ownership of contested funds with evidence that Defendant held the disputed funds

for Respondents in the manner of a trustee.  See ECF No. 120-1 at 12-16.  Plaintiff unavailingly

argues that, because constructive-trust doctrine is generally meant to rectify fraud and

overreaching but not to enforce intent, one should not be imposed here.  See ECF No. 121-1 at 6-

7.  Plaintiff misunderstands that Defendant and Respondents are not asking for the imposition of

a constructive trust.  They are arguing that their rebuttal evidence shows that Defendant did not

have an interest in the disputed funds because it held them for Respondents "in the manner of a

trustee."  In mentioning constructive-trust law, their briefing simply follows the lead of the

---

[17] See also In re DeFlora Lake Dev. Assocs., Inc., 628 B.R. 189, 199-200 (Bankr. S.D.N.Y. 2021) ("This presumption of ownership can be rebutted by evidence that another person really owns the property by demonstrating that [the other person] exercises control over the property or that the ostensible owner holds the property for [the other person's] benefit.") (internal quotations & citation omitted); Fragetti v. Fragetti, 692 N.Y.S.2d 442, 443 (2d Dep't 1999) (finding that the presumption of ownership of funds in a joint account "can be rebutted by providing direct proof that no joint tenancy was intended or substantial circumstantial proof that joint account had been opened for convenience only[,]" and holding that the presumption of the defendant's ownership had been rebutted through evidence showing, inter alia, that the defendant was not the source of the funds in the account and had made no deposits or withdrawals on her own behalf); Vergari v. Kraisky, 502 N.Y.S.2d 788, 789 (2d Dep't 1986) (holding that although certificate of title constituted prima facie evidence of a vehicle's ownership, the presumption was rebutted by contrary evidence of the parties' relative dominion and control over the vehicle in question); Geller v. Levitt, 202 N.Y.S.2d 59, 60 (N.Y. Sup. Ct., Kings Cnty. 1960) (noting that the preponderance of credible evidence successfully rebutted the presumption that the decedent owned passbooks because they were in her deposit box by showing that her brother was their actual owner and the funds represented by them).

Second Circuit, which has cited to New York constructive-trust law in its discussion of how such funds may be held.  Pertamina I, 313 F.3d at 86 (citing Kurtish v. Iskokovic, 612 N.Y.S.2d 263, 264 (3d Dep't 1994), and Mendel v. Hewitt, 555 N.Y.S.2d 899, 900 (3d Dep't 1990)). Constructive-trust arguments are a proper response in this case where there is an allegation that Defendant would be unjustly enriched if funds owned by Respondents were ordered paid to Plaintiff in order to cancel Plaintiff's judgment against Defendant.

Disputed material facts underlying a determination that Defendant held contested funds for Respondents in the manner of a trustee must be determined by a factfinder.  See Northbay Const. Co., Inc. v. Bauco Const. Corp., 832 N.Y.S.2d 280, 281 (2d Dep't 2007) (finding that a trial should be held with respect to a disputed fact pertinent to constructive trust); Williams v. Lynch, 666 N.Y.S.2d 749, 751-52 (3d Dep't 1997) (requiring a factfinder to resolve issues of disputed fact relevant to constructive trust analysis).  A constructive trust may be found in the absence of any express agreement between parties when "the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it."  In re First Cent. Fin., Corp., 377 F.3d 209, 213 (2d Cir. 2004); see In re Flanagan, 503 F.3d 171, 181 (2d Cir. 2007).  "A constructive trust thus places its beneficiary ahead of other creditors with respect to the trust res."  Id.  As relevant here, the elements of a constructive trust under New York law are "(1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer of the subject res made in reliance on that promise; and (4) unjust enrichment."  In re First Cent. Fin., 377 F.3d at 212 (quotation & citations omitted); see Pertamina I, 313 F.3d at 86 (citing Kurtish, 612 N.Y.S.2d at 264, for these

elements of a constructive trust between parties)).[18]

### iii.  A Presumption Of An Account Holder's Ownership May Be Rebutted Even Where Funds Are Commingled

Defendant and Respondents' rebuttal of the presumption of Defendant's interest in the funds is consistent with the recognized principle that a party's "possession of [] disputed funds is not the end of the story." Pertamina I, 313 F.3d at 86 n.16.  "Under absolute Hornbook law, [a c]ourt must look past that and must recognize any property rights in that money which belong to any other parties[.]" Id.  In the event a party holds another's money as a conduit in the manner of an agent or in the manner of a trustee in a commingled account, this is not a "conclusive indication[]" of the holder's control, although it may permit that inference in the absence of evidence tracing the funds' true ownership by another.  In re Shulman Transp. Enters., 744 F.2d at 296 (holding that an examination of the real character of the parties' relationship is necessary to determine whether property was held by a debtor in trust for another, and observing that the debtor's actual commingling of funds is not a conclusive indication that they were not held by the debtor as an agent); In re Warner-Quinlan Co., 86 F.2d 103, 105 (2d Cir. 1936) (holding that where the parties agreed that the appellant reserved title to consignment sale proceeds but the moneys were deposited in the appellee's general account, the funds were sufficiently traced to permit the appellant's reclamation of them where the appellee's account balance exceeded the amount claimed); In re Martin Fein & Co., Inc., 43 B.R. 623, 628 (Bankr. S.D.N.Y. 1984) ("The fact that money has no earmark is a good reason why the claimant cannot insist that any

---

[18] See Republic of Philippines v. Marcos, 806 F.2d 344, 355 (2d Cir. 1986) (finding that because the prevention of unjust enrichment is the point of constructive trust, the element of fiduciary relationship is not dispositive); Toobian v. Golzad, 147 N.Y.S.3d 61, 67 (2d Dep't 2021) (finding that the totality of fact issues pertaining to the relevant parties' relationship and the defendant's enrichment precluded a summary finding of constructive trust); Diorio v. Graziano, No. 18680/2008 (SAB), 2009 WL 926918, at *1 (N.Y. Sup. Ct., Nassau Cnty. Mar. 20, 2009).

particular part of the mingled [trust] fund is his; but it is no reason why he should be denied an interest in the fund, no reason why he should be relegated to a mere personal claim[.]").

      **iv. Defendant And Respondents Only Have A Burden Of Production, Not Persuasion, On This Motion To Rebut The Presumption Of Ownership And To Preclude Summary Judgment For Plaintiff**

Given that Defendant and Respondents have come forth with evidence to rebut the presumption that Defendant has an interest in the contested funds, it must be noted that Defendant and Respondents, as the nonmovants, have "only the burden of _production_, not the burden of _persuasion_." Baker v. Power Sec. Corp., 948 F. Supp. 255, 260 (W.D.N.Y. 1996) (emphasis in original) (citations omitted).[19]  A summary judgment motion based on a presumption of ownership must be denied when a triable issue of fact is raised as to the alleged ownership. See RLI Ins. Co. v. Steely, 932 N.Y.S.2d 80, 83 (2d Dep't 2011) (finding that although evidence raised a triable issue of fact sufficient to rebut the presumption of an outboard

---

[19] See MFS/Sun Life Trust-High Yield Series v. Van Dusen Airport Servs. Co., 910 F. Supp. 913, 938 (S.D.N.Y. 1995) ("Where, as here, the absence of fair consideration has been demonstrated, the burden of coming forward with proof that the debtor nonetheless remained solvent shifts to the defendants. Here, the defendants have presented some proof of . . . solvency . . . and have thus satisfied their burden of production. The burden of persuasion remains with the plaintiffs."); see also Harrington v. Brunson, 12 N.Y.S.3d 696, 698 (4th Dep't 2015) ("Even assuming, arguendo, that the statutory presumption of joint tenancy applies to the joint accounts, we conclude that defendant submitted evidence tending to rebut the statutory presumption that is sufficient to raise a triable issue of fact whether, at the time the accounts were created, the accounts were opened as a matter of convenience.") (citation & internal quotations omitted); V.S. Med. Servs., P.C. v. Allstate Ins. Co., 811 N.Y.S.2d 886, 893 (N.Y.C. Civ. Ct., Kings Cnty. 2006) (rejecting the application of the clear-and-convincing-evidence standard to a presumption defense because the respondent "need only come forward with evidence that rebuts [the] presumption," i.e., "once the petitioner has made out its prima facie case, the burden of production (also called the burden of going forward) on the issue . . . falls upon the respondent"); id. ("How much evidence must [a] defendant produce to satisfy its burden of production [where its defense seeks to rebut the plaintiff's prima facie case based on a presumption]?  There is no magic formula[]" and, "[a]fter all the evidence has been presented, the [c]ourt must decide whether the evidence . . . preponderates in favor of the petitioner, the party who bears the burden of persuasion.").

engine's ownership created by a certificate of title as to who had "dominion and control" over the engine as its de facto owner, it was insufficient to establish the identity of the de facto owner as a matter of law).[20]

> **d. If A Judgment Creditor Can Show That The Debtor Has An Interest In the Property That The Creditor Seeks To Reach, The Judgment Creditor May Show That Its Rights To The Property Are Superior To Those Of The Transferee By Proving Fraudulent Conveyance**

It is also Plaintiff's burden to establish the second element of its Section 5225(b) claims; here, Plaintiff proceeds on the theory that its rights to the disputed funds are superior to those of Respondents because Defendant fraudulently conveyed them. See ECF No. 117-2. Plaintiff alleges that the transfers were made with actual intent to defraud under Section 276 of New York's Debtor and Creditor Law or, alternatively, made with fraudulent intent implied by law under Sections 273, 273-a, 274 and 275. See ECF No. 117; N.Y. Debt. & Cred. L. §§ 273, 273-

---

[20] In light of the above discussion that Defendant and Respondents' burden of production, not persuasion, on summary judgment is to show that their rebuttal evidence raises issues of triable fact, this Court notes but disagrees with Plaintiff's argument from Section 675 of the New York Banking Law that Defendant and Respondents' evidence must clearly and convincingly disprove Defendant's ownership of the funds at this stage. See ECF No. 121-1 at 2 (citing In re Carella, 340 B.R. 710, 711 (Bankr. W.D.N.Y. 2006), for its application of New York Banking Law § 675). Although the quantum of Defendant and Respondents' rebuttal evidence might be relevant to whether Plaintiff's motion should be summarily dismissed, that question need not be reached on this record where the rebuttal evidence demonstrates issues of material fact to be weighed and resolved by a factfinder. See Section V, infra; see, e.g., In re Zorskas, 2008 WL 25821832, at *4 (N.Y. Surr. Ct., Nassau Cnty. June 27, 2008) (assessing whether evidence was sufficient "to rebut the presumption or to raise a triable issue of fact"). This Court adds only that the clear-and-convincing evidentiary standard cited by Plaintiff from Section 675 pertains to a rebuttable statutory presumption that money held in a joint bank account is held by both account holders, which is not what is at issue here. Courts have applied a preponderance-of-the-evidence standard in other bank account cases. See, e.g., Geller, 202 N.Y.S.2d at 60 (noting that the preponderance of credible evidence successfully rebutted the presumption that the decedent owned passbooks because they were in her deposit box by showing that her brother was their actual owner and the funds represented by them); McGuigan v. McGuigan, 140 N.Y.S.2d 553, 555 (N.Y. Sup. Ct., Richmond Cnty. 1955) (holding that "presumption of joint ownership arising by virtue of the form of the deposits may be overcome by competent and preponderant proof").

a, 274, 275, 276. "'[S]uperior' rights in property have been assessed by New York courts based on legal interests in the property, as for example where the 'fraudulent conveyance provisions of the [New York] Debtor and Creditor Law' apply." Dussault v. Republic of Argentina, 616 F. App'x 26, 28 (2d Cir. Oct. 5, 2015) (quoting Gelbard v. Esses, 465 N.Y.S. 2d 264, 268 (2d Dep't 1983)). "But under New York law, preferring one creditor over another is neither actually nor constructively fraudulent." Dussault, 616 F. App'x at 28 (citing In re Sharp Int'l Corp., 403 F.3d 43, 56 (2d Cir. 2005); HBE Leasing, 48 F.3d at 634). Stated differently, a judgment creditor must show that it was more than an unsecured general creditor to show that its rights to property were superior to those of another. See Dussault, 616 F. App'x at 28. The Court briefly sets forth the fraud statutes on which Plaintiff relies to prove the second Section 5225(b) element.

### i. Conveyance Made With Actual Intent To Defraud

Section 276 of the DCL provides that

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. Debt. & Cred. L. § 276. The burden of proving "actual intent" on the part of the transferor by clear and convincing evidence is on the party seeking to set aside the conveyance, and the issue is usually a question of fact under New York law. See In re Sharp Int'l, 403 F.3d at 56 (internal citation omitted); United States v. McCombs, 30 F.3d 310, 328 (2d Cir. 1994) (noting that actual intent to defraud "must be proven by clear and convincing evidence"). Intent to defraud cannot be found "based merely on suspicion, conjecture, or doubtful inference." Lowendahl v. Baltimore & Ohio R.R. Co., 287 N.Y.S. 62, 76 (1st Dep't 1936); see Gen. Motors Acceptance, 549 N.Y.S.2d at 863 (holding that a court must conduct a trial on disputed issues of fact on adverse claims in a turnover matter despite "denials disputing the characterization of an

29

account" as one that evidence could show was in the nature of an escrow). "[A]lthough it may be difficult to establish actual intent in the summary judgment context, it is not impossible to do so." <u>Newhouse</u>, 2000 WL 1721131, at *2. As a debtor's "actual intent" under Section 276 may be difficult to show by direct proof, a plaintiff may "rely on 'badges of fraud' to establish an inference of fraudulent intent." <u>Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.</u>, No. 04 Civ. 4971 (NG) (MDG), 2013 WL 417352, at *11 (E.D.N.Y. Jan. 29, 2013) (internal quotation marks & citation omitted). These "badges of fraud" include

> (1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance.

<u>Id.</u> (internal citations omitted). Although the presence or absence of any particular badges of fraud is not determinative in finding fraudulent intent, "the presence of multiple indicia will increase the strength of the inference." <u>MFS/Sun Life Trust-High Yield Series</u>, 910 F. Supp. at 935. The lack of consideration may be viewed as a particularly important badge although it does not establish a presumption of actual intent to defraud. <u>See</u> <u>Newhouse</u>, 2000 WL 1721131, at *4 n.2; <u>Marine Midland Bank v. Murkoff</u>, 508 N.Y.S.2d 17, 21 (2d Dep't 1986) (lack of fair consideration does not give rise to presumption of actual fraud).

### ii. Conveyance Made With Fraudulent Intent Implied By Law

Sections 273, 273-a, 274 and 275 of the New York Debtor and Creditor Law provide creditors with various paths to prove through preponderant evidence that a debtor's conveyance was constructively fraudulent. <u>See</u> <u>Ray</u>, 799 F. App'x at 30-31; <u>Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.</u>, 126 F. Supp. 3d 388, 406 n.8 (S.D.N.Y. 2015) (collecting federal cases

adopting the preponderance of the evidence approach).[21]  First, Section 273 provides that

> [e]very conveyance made and every obligation incurred by a person who is or will
> be thereby rendered insolvent is fraudulent as to creditors without regard to his
> actual intent if the conveyance is made or the obligation is incurred without a fair
> consideration.

N.Y. Debt. & Cred. L. § 273, repealed by L.2019, c.580, § 2, eff. April 4, 2020.  Second, Section

273-a provides that

> [e]very conveyance made without fair consideration when the person making it is
> a defendant in an action for money damages or a judgment in such an action has
> been docketed against him, is fraudulent as to the plaintiff in that action without
> regard to the actual intent of the defendant if, after final judgment for the plaintiff,
> the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. L. § 273-a.  Third, Section 274 provides that

> Every conveyance made without fair consideration when the person making it is
> engaged or is about to engage in a business or transaction for which the property
> remaining in his hands after the conveyance is an unreasonably small capital, is
> fraudulent as to creditors and as to other persons who become creditors during the
> continuance of such business or transaction without regard to his actual intent.

N.Y. Debt. & Cred. L. § 274.  Fourth, Section 275 provides that

> Every conveyance made and every obligation incurred without fair consideration
> when the person making the conveyance or entering into the obligation intends or
> believes that he will incur debts beyond his ability to pay as they mature, is
> fraudulent as to both present and future creditors.

N.Y. Debt. & Cred. L. § 275.  Stated differently, each of these sections requires in the first

instance that the creditor show that the debtor made the challenged conveyance without fair

consideration and, then, that this occurred in the presence of additional circumstances; none

---

[21] Courts have differed as to whether a plaintiff must prove constructive fraudulent conveyance
claims by clear-and-convincing evidence, as opposed to preponderant proof.  See Am. Federated
Title, 126 F. Supp. 3d at 406 n.8 (collecting cases applying preponderance standard, and those
applying clear-and-convincing standard).  Because fact issues preclude summary judgment for
Plaintiff on even the preponderance standard, this Court need not resolve the jurisprudential split
and will assume but not determine that the more lenient requirement applies.  See Section V.b.ii.

31

requires the creditor to prove the transferor's intent.  See N.Y. Debt. & Cred. L. § 273 (the creditor must also show that the debtor is or will be rendered insolvent by the transaction); id. § 273-a (the creditor must show that the debtor is a defendant in an action for money damages or that an unsatisfied judgment has been docketed against it); id. § 274 (the creditor must show that the debtor is or will be left with unreasonably small capital by the transaction); id. § 275 (the creditor must show that the debtor intends or believes that it will incur debts beyond its ability to pay as they mature); Ostashko v. Ostashko, No. 00 Civ. 7162 (ARR), 2002 WL 32068357, at *21 (E.D.N.Y. Dec. 12, 2002) ("None of [the Debtor and Creditor Law sections regarding constructive fraud] requires the plaintiff to show that the defendant acted with actual intent.").

The element of fair consideration for a conveyance is a fact-specific inquiry.  See In re Palermo, No. 08 Civ. 7421 (RPP), 2011 WL 874866, at *4 (S.D.N.Y. Sept. 2, 2011).  It is comprised of two elements, i.e., good faith and the payment of a fair equivalent value for the property interest conveyed.  Chen v. New Trend Apparel, Inc., 8 F. Supp. 3d 406, 447 (S.D.N.Y. 2014).  With respect to the good-faith component of fair consideration, given that Sections 273, 273-a, 274 and 275 all state that claims arising thereunder are "without regard to . . . actual intent," see N.Y. Debt. & Cred. L. §§ 273, 273-a, 274, 275, "courts have not equated 'good faith' with the absence of 'actual intent,'" Ostashko, 2002 WL 32068357, at *22 (quoting S. Indus., Inc. v. Jeremias, 411 N.Y.S.2d 945 (2d Dep't 1978)).  They have inquired into the subjective mental states of the parties to determine whether "one or more of the following factors is lacking: (1) an honest belief in the propriety of the activities in question; (2) no intent to take unconscionable advantage of others; and (3) no intent to, or knowledge of the fact that the activities in question will hinder, delay or defraud others."  Id.; see Amusement Indus., Inc. v. Midland Ave. Assocs., LLC, 820 F. Supp. 2d 510, 527 (S.D.N.Y. 2011) (citation & internal

quotations omitted).  "In short, the lack of good faith imports a failure to deal honestly, fairly and openly."  Ostashko, 2002 WL 32068357, at *23 (citation & internal quotation omitted).  Courts have differed as to whether good faith is required of both the transferor and the transferee, but "[a]t a minimum, . . . a plaintiff must establish that the transferee acted without good faith."  Id. at *22; compare Amusement Indus., 820 F. Supp. 2d at 527, with Integrity Elecs., Inc. v. Garden State Distribs., No. 14 Civ. 3197 (BMC), 2016 WL 3637004, at *8 (E.D.N.Y. June 30, 2016).

As for what constitutes fair equivalent value, Section 272(b) defines fair value as the "amount not disproportionately small as compared with the value of the property, or obligation obtained."  N.Y. Debt. & Cred. L. § 272(b).  Assessing fair equivalent value requires "neither mathematical precision nor a penny-for-penny exchange[.]"  Chen, 8 F. Supp. 3d at 448 (citation & internal quotations omitted); see A.J. Armstrong, 358 N.Y.S.2d at 87 (finding that a husband's transfer of property he held in trust for his wife back to his wife could not be held to have been "for less than fair consideration").  Generally, "the burden of proving the lack of fair consideration [is] upon the party challenging the conveyance[.]"  McCombs, 30 F.3d at 324 (citation omitted); Baker, 948 F. Supp. at 260 (finding that where evidence of the value of consideration is within a transferee's control, the transferee has the burden of production of such evidence, but that the burden of persuasion remains with the challenging party).

## V.    Discussion

### a.    This Court Respectfully Recommends That The District Court Deny Plaintiff's Turnover Motion Because Fact Issues Preclude Summary Findings As To Defendant's Interest In The Funds Sought

#### i.    The Parties' Disputed Issue Of Material Fact Pertaining To Defendant's Alleged Paymaster Services For Respondents Must Be Analyzed As To Each Category Of Disputed Transfers

The parties' disputed issue of material fact pertaining to Defendant's alleged paymaster

services for Respondents must be analyzed as to each category of disputed transfers.  As a preliminary matter, Plaintiff's allegation that Defendant's operations were different than those of a purely administrative paymaster on some occasions does not mean that there is not a fact issue regarding whether and to what extent Defendant acted as Respondents' paymaster with respect to the contested conveyances.  See In re Possick, 763 N.Y.S.2d 902, 906 (N.Y. Surr. Ct., N.Y. Cnty. 2003) ("The equity of a transaction must shape the measure of relief.") (quoting Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 389 (N.Y. 1919)).  For the same reasons, Respondents' occasional remittance of sublease rent payments directly to Plaintiff between 2007 and 2013 (a period that predated the transfers contested in the instant motion) does not categorically preclude Defendant and Respondents from showing that they served as a paymaster as to challenged conveyances.  For example, Respondents' concern for and efforts to shield their bank account and routing numbers may have been different during the later period relevant to those transfers or in the context of their dealings with different parties.  See ECF No. 117-2 at 11.  Accordingly, this Court will analyze whether triable fact issues are presented with respect to the paymaster allegations in the context of conveyance-specific discussions.

### ii. Defendant's Transfer Of $2,557,352.81 In Respondent Dealerships' Alleged Sales Proceeds To The Respondent Dealerships

As to over one hundred deposits totaling $2,557,352.81 into Defendant's bank account, Defendant and Respondents' rebuttal evidence presents a fact issue regarding whether and to what extent Defendant or Respondent Dealerships controlled and owned the funds, as Defendant only briefly held the funds before transferring them to Respondent Dealerships.  Such a course of conduct may establish Respondents as the funds' actual owners, and Defendant acting in the manner of a trustee.

Defendant and Respondents may rebut Plaintiff's presumption of Defendant's ownership

34

through several material facts.  First, via deposition testimony, Defendant and Respondents offer evidence that the deposits at issue were the proceeds of Respondent Dealerships' vehicle and part sales to nonparties.  Second, a sample of retail certificates of sale demonstrate the same with respect to a subset of the transactions.  Third, bank and check record evidence show the temporal proximity and equivalent value of the incoming deposits with their outgoing transfers.  A factfinder could reasonably collectively credit this evidence to find that Defendant received the purchase monies as Respondent Dealerships' paymaster and did not have any ownership interest in them.  See Rosatti Decl. ¶¶ 11-15; Exhs. 1, 8, 17; Exhs. Q-Y.  In addition, given Defendant's years-long arrangement with multiple Respondent Dealerships, a factfinder could determine whether and to what extent Defendants exercised independent control over the funds or whether Defendant lacked any interest in the funds and, instead, had the obligation which it honored to simply forward them to Respondent Dealerships to which they belonged in the manner of Respondent Dealerships' trustee.  Although Defendant did not execute a written promise that it would forward the funds due to the Respondent Dealerships as the deposits from nonparties were made, such a promise may fairly be implied from the years-long course of conduct with multiple dealerships, and a formal writing may have been unnecessary given that the arrangement appears plainly "instinct with an obligation" undertaken and, in fact, performed by Defendant for Respondent Dealerships.  See Sharp v. Kosmalski, 386 N.Y.S.2d 72, 72 (N.Y. 1976) (quoting Wood v. Duff-Gordon, 222 N.Y. 88, 91 (N.Y. 1917)).[22]  Depending upon the resolution of the

---

[22] It should be noted that, although Defendant and the Respondent Dealerships' sample of retail certificates of sale for approximately 20% of the transactions underlying the $2,557,352.81 adds to the totality of proof to show that there is a fact issue precluding a summary determination that Defendant had an interest in the funds, it would be for a factfinder to decide what statistical inferences to draw, if any, from the sample with respect to the extent of Defendant's interest or lack of interest in the overall $2,557,352.81 res of this category of contested money.  See

disputed facts discussed, Defendant may have been unjustly enriched had it retained some or all of the $2,557,352.81 instead of delivering it to Respondent Dealerships as owners of the funds.

In summary, Plaintiff's disagreement with Defendant and Respondents' characterization of their evidence as showing that Defendant did not own these funds but acted with respect to them as Respondent Dealerships' paymaster underscores that there is a question of material fact which must be resolved at a trial.

### iii. Defendant's Distribution Of $800,000.00 To Thousands Of Nonparty Consumers And Nonparty NYS Comptroller In Connection With Respondent Plaza Dealerships' CFI Settlement Agreement

Although Defendant's possession of the $800,000.00 in its bank account may give rise to a presumption of ownership, Defendant and CFI Respondents' evidence in rebuttal creates a triable issue of material fact regarding whether and to what extent the CFI Respondents controlled and owned these funds or whether and to what extent Defendant held them on behalf of CFI Respondents in the manner of a trustee.

The commingling of these funds with other deposits in Defendant's account does not conclusively undermine the fact issue regarding whether the CFI Respondents owned the funds and not Defendant.  See Section IV.c.iii, supra.

Evidence showing that Defendant may have held and distributed the $800,000.00 in the manner of a trustee for the CFI Respondents which actually controlled and owned it includes testimonial and documentary evidence showing that Defendant's distributed the money to nonparty CFI Settlement Agreement payees in accordance with CFI Respondents' obligations

---

generally Chin v. Port Auth. of N.Y. & N.J., 685 F.3d 135, 145 (2d Cir. 2012) (discussing circumstances under which a jury could draw inferences of statistical evidence's significance). Defendant and Respondents would not be limited at trial to the evidence sample offered on the motion, subject to any discovery-related limitations.

under the CFI Settlement Agreement with the State of New York.  See Herman Decl. ¶ 11(a);

Exh. 1, passim; Exh. 10 at PLAZA EP 207-08; see also A. Rosatti 2021 Decl. ¶ 11; Herman

Decl. ¶ 26.  It could be inferred that, despite the $800,000.00's deposit with Defendant, CFI

Respondents retained control and dominion over the funds and relied upon Defendant's promise

that it would distribute the funds to CFI Settlement Agreement payees.  See Exh. 23 ¶ 39 (CFI

Settlement agreement dated April 20, 2016, requiring the CFI Respondents to deposit

$800,000.00 into an M&T bank account within thirty days); Exh. 17 at M&T 00106

(Defendant's M&T bank account record showing that the $800,000.00 was deposited therein on

May 20, 2016.  This Court notes the CFI Settlement Agreement's term that the funds be held in

one account at M&T Bank, 7807 5th Avenue, Brooklyn, New York 11209, which is in Bay

Ridge, Brooklyn, where Defendant's bank records suggest it held its account.  See Exh. 23 ¶ 39;

see, e.g., Exh. 17 at M&T00062 ("For inquiries call . . . Bay Ridge Office").  Although it did not

require that CFI Respondents use Defendant as paymaster to distribute it therefrom, Plaintiff

does not provide evidence or legal citation as to why CFI Respondents would not have been

permitted to do this.  In light of Defendant and Respondents' proof tracing Defendant's ultimate

distribution of the $800,000.00's equivalent amount to CFI Settlement Agreement payees (which

lends further support to their position that Defendant acted as CFI Respondents' paymaster as

claimed), see Exh. 17 at M&T 00106 (showing that the account's May 2016 month-end balance

after the initial commingling was $800,237.33, i.e., commingled but substantially comprised of

the CFI Settlement Agreement funds); Exh. 23 (CFI Settlement agreement); Exh. 24

(Defendant's more than one thousand checks totaling $587,927.47 issued to individual

consumers); Exh. 27 (Defendant's check for $215,037.76), a factfinder must resolve fact issues

as to whether Defendant held the money in the manner of a trustee or as a paymaster for CFI

Respondents. Stated differently, fact findings are necessary to an understanding of the totality of these circumstances and could reasonably permit the conclusion that Defendant would have been unjustly enriched had it kept the $800,000.00 (or paid it to Plaintiff to cancel part of its judgment debt) instead of distributing it to CFI Settlement Agreement payees in its capacity as Respondent Dealerships' paymaster.

Although Defendant and CFI Respondents' evidence shows fact issues precluding summary judgment for Plaintiff, this does not mean that they have established that Plaintiff's motion should be summarily dismissed. Still other proof could persuade a reasonable factfinder to resolve the fact issue in whole or in part in Plaintiff's favor. For example, the parties dispute the significance of Defendant reporting the funds as an asset on its 2016 tax returns. See Exh. 10. On the one hand, Plaintiff argues that this tax reporting may be construed to show that Defendant owned the funds. See ECF No. 117-2 at 10. On the other, Defendant argues that the tax handling is consistent with its paymaster position because the same return characterized its principal business activity as management or business-support services; the same return reported the funds as a liability and not as income; and its 2017 returns did not report the funds as an asset or otherwise because, by December 31, 2017, the funds had been distributed fully to the CFI Settlement Agreement payees and New York State, and were no longer in Defendant's account such that reporting was unnecessary. See Exh. 1 at 287:11-17; Exh. 10 at PLAZA EP 114-15, PLAZA EP 202-03, PLAZA EP 210, PLAZA EP 224-25, PLAZA EP 232; Herman Decl. ¶ 25. It would be for a factfinder, not this Court on summary judgment, to assess whether and, if so, to what extent the tax evidence shows that Defendant had an actual interest in the $800,000.00.

A factfinder resolving the paymaster allegation could also consider what have been described as Defendant's July 2017 short-term loans to Respondents Plaza Hyundai and Plaza

38

Kia using an as-yet undistributed portion of Respondent Plaza Honda's $800,000.00 deposit into
Defendant's account.  Plaintiff may argue to a factfinder, as it has in the context of the instant
motion, that it may be inferred from the incident that Defendant exercised some control or
dominion suggestive of an ownership interest over at least this portion of the CFI Settlement
Agreement res.  See Section III.c, supra.  Although Defendant and CFI Respondents argue that
these two transfers were loans allowed by CFI Respondents to Respondents Plaza Hyundai and
Plaza Kia prior to their re-deposit with Defendant for CFI Settlement Agreement distribution and
that this is consistent with their paymaster allegation, a factfinder must resolve the contested
significance of the event vis-à-vis the parties' respective positions.[23]

---

[23] Both sides incorrectly invoke In re Shulman Transport Enterprises, Inc., 744 F.2d 293 (2d Cir.
1984), to argue that they are presently entitled to summary disposition in their favor.  In relevant
part, the Shulman Court held that in assessing whether the debtor held property as the agent of
other parties, the examination of the parties' relationship must be according to its "real character
rather than by the form and color that the parties have given it."  Id. at 295.  In other words, "[a]
debtor does not become the agent of his creditor simply because he is called an agent."  Id.  In
that case, the debtor was an international freight forwarder that sold airlines' freight
transportation services to its clients, and the airlines paid it a commission on those sales.  See id.
at 294.  It was undisputed that under the relevant agreement between the debtor and the airlines,
the debtor assumed the responsibilities and risks pertaining to collection such that it was bound
to pay the airlines for their services regardless of whether the debtor's clients ever remitted
payment to the debtor.  See id. at 296.  After a bank was granted a security interest in the
debtor's accounts receivables, the airlines argued that they were not the debtor's mere creditors
but the owners of the debtor's accounts receivables because the debtor had been their agent.  See
id.  In examining the real character of the debtor and airlines' relationship, the Shulman Court
found that, due to the debtor's assumptions of collection responsibility and risk, it lacked the
critical element of the airlines' control over the receivables to show that the debtor had held them
in trust for the airlines.  See id. at 296 ("[I]t is . . . obvious that, if [the debtor] paid [an airline]
the bill of a delinquent shipper and thereafter collected the amount of the bill from the shipper,
the money thus collected could not have been the property of [the airline].").  In contrast, the
conflicting material fact issues in this case preclude a determination on summary judgment with
respect to the real character of the relationship between Defendant and the CFI Respondents as it
pertains to the $800,000.00.

Due to these same fact issues precluding summary judgment on this record, this Court also
declines Plaintiff's invitation to find two federal admiralty attachment cases controlling here.

### iv.  Defendant's Transfer Of $748,324.08 In Respondent Mr. Rosatti's Alleged Kenwood Investment Proceeds To Respondent Plaza Honda

Plaintiff argues that Defendant's one-time possession of the $748,324.08 in Kenwood investment funds in Defendant's bank account establishes a rebuttable presumption that Defendant owned the money.  To the contrary, Defendant and Respondents' evidence shows a material fact issue as to ownership that cannot be resolved on summary judgment.  For example, a factfinder could conclude from the Kenwood letters addressing and greeting Respondent Mr. Rosatti as its shareholder that Respondent Mr. Rosatti owned the Kenwood funds as his own investment proceeds, not Defendant.  See Herman Decl. ¶¶ 48-49.  This Court notes Plaintiff's argument that Defendant's transfer of the funds to Respondent Plaza Honda may impeach the proof of Respondent Mr. Rosatti's ownership, but such determinations about the persuasive force of competing evidence would be for a factfinder to make.

### v.  Defendant's Delivery Of The $245,000.00 SROTB Check For Respondent Honda's Deposit

As a preliminary matter, Plaintiff's motion does not brief with any specificity the fact that the SROTB check for $245,000.00 was never deposited into Defendant's bank account such that Defendant's possession of the funds therein showed presumed ownership.  The basis for Plaintiff's argument that Defendant had an interest in the deposit money is the evidence that the check was made out to Defendant.  Yet, this cannot establish Defendant's interest in the funds as a matter of law given Defendant and Respondents' proof that the check refunded Respondent

---

See Chiquita Int'l Ltd. v. MV Bosse, 518 F. Supp. 2d 589, 593 (S.D.N.Y. 2007); AET Inc., Ltd v. Servicios Marítimos, Cardoso & Fonseca, 464 F. Supp. 2d 241 (S.D.N.Y. 2006).  The admiralty rules provide a broad attachment rule "under which attachment is quite easily obtained" in light of the fact that maritime law addresses the need to get security for a potential judgment where an absent party's assets are transitory.  Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 436 (2d Cir. 2006).

Plaza Honda's payment of the partial security deposit for an ultimately unconsummated real estate transaction.  See In re Navigator Gas Transp. PLC, 358 B.R. at 89 (holding that creditor failed to make a sufficient showing of "interest" where facts alleged suggest that the debtor had only considered purchasing the shares in question but had not actually done so); Magnet Litho Supply Corp. v. Broad St. LLC, 2003 WL 21497354, at *1 (N.Y. App. Term 2003) (denying request for turnover where petition could not conclusively establish that the judgment debtor had an interest in the monies sought, finding that a judgment creditor was not entitled to funds deposited with a landlord as security for an apartment occupied by a judgment debtor where the funds deposited as security were not paid by the judgment debtor).  Defendant and Respondents' evidence presents a triable material fact as to whether Respondent Plaza Honda, and not Defendant, owned the funds.  See Exhs. 20-21.  Even if Defendant had deposited the check into its account (assuming that it could have, as its account was by then was closed) as Plaintiff suggests it should have, the ownership fact issue would look largely the same given the evidence that Respondent Plaza Honda had paid SROTB in the instance using Respondent Plaza Honda's money.

### vi.  Defendant's Transfer Of $300,000.00 In Alleged Loan Proceeds To Respondent Mr. Rosatti

Triable issues regarding the existence or amount of a debt owed by a respondent to a judgment debtor preclude summary judgment directing the respondent to turn over funds to a judgment creditor without factfinding on the question of whether and to what extent a debt was owed.  See Adelaide Prods., 833 N.Y.S.2d at 451 (reversing Section 5225 money judgment where the respondent's affidavit evidence that it did not owe the judgment debtor the amounts alleged created a fact issue); McLean, 839 N.Y.S.2d at 812 (affirming the denial of summary judgment where fact issues had been presented as to whether the defendant's indebtedness had

41

been voided as they believed); <u>Breffort</u>, 436 N.Y.S.2d at 11-12 (reversing summary judgment on

the judgment creditor's turnover motion, finding fact issues pertaining to the creditor's allegation

that the respondents owed a debt to the debtor and directing a hearing be held to determine

whether the creditor could meet its burden to establish whether and to what extent the

respondents owed such a debt); <u>Leedpak, Inc. v. Julian</u>, 356 N.Y.S.2d 1011, 1011 (N.Y. Sup. Ct.,

N.Y. Cnty. 1974) (finding that triable issues of fact existed as to whether sums involved

represented loans to respondent by the judgment debtor and, if they represented loans, whether

the loans are owed to the judgment debtor or to the corporate drawer of the checks").[24]

According to Plaintiff, Defendant's possession of the $300,000.00 in its bank account for

one day establishes an ownership presumption.  Defendant and Respondent Mr. Rosatti seek to

rebut this presumption.  Plaintiff argues that the transaction is the loan that the promissory notes

say it was such that Respondent Mr. Rosatti owes a $300,000.00 debt to Defendant because this

is what Defendant owes the reinsurance companies.  <u>See</u> ECF No. 117-2.  Defendant argues that

it lacked an interest in the funds because, although the deposit into its account was papered as if

it were loan proceeds from the reinsurance companies, these papers did not accurately reflect the

---

[24] <u>See also</u> <u>Am. Inv. Bank, N.A. v. Marine Midland Bank, N.A.</u>, 595 N.Y.S.2d 537, 538 (2d
Dep't 1993) (finding a "triable issue of fact as to the benefit [the judgment debtor] received" as a
result of property he transferred to a bank as additional security on an outstanding loan the bank
had made to a corporation of which the debtor was president and majority stockholder which the
debtor had personally guaranteed and which was in default); <u>Republic Nat'l Bank of New York
v. Greenwald</u>, 517 N.Y.S.2d 544, 544-45 (2d Dep't 1987) (finding that where the plaintiff's loan
guarantors took out a $200,000.00 mortgage and the proceeds were directed to a corporation
closely owned by the guarantors and not the guarantors personally, "it cannot be said that the
assets of the plaintiff's guarantors were depleted at the expense of the plaintiff"); <u>Wells Fargo
Bank. Int'l v. Binabdulaziz</u>, 500 N.Y.S.2d 993, 994 (4th Dep't 1986) ("In the face of the proof
that the transfer of funds constituted a loan that was repaid, plaintiff failed to sustain its burden . .
. of establishing that the conveyance was a fraudulent scheme concocted to hinder, delay or
defraud it, . . . or that it was made without a fair consideration."); <u>id.</u> ("Moreover, [the] plaintiff
did not establish that the transferee of the conveyance was a gratuitous donee[.]").

transaction.  See Section III.f, supra.  Instead, they show that Freedom Insurance routed a payment to the reinsurance companies by delivering the funds to Defendant, which then transferred them to Respondent Mr. Rosatti as the reinsurance companies' whole and part owner. See id.  It is important to note that the payor of the note the reinsurance companies never paid any money to Defendant, raising the question of whether the loan stated in the promissory note was ever consummated.  See id.  A factfinder could draw an inference from the unusual promissory note provisions stating that the reinsurance companies' assets guaranteed the loans, and not Defendant's assets, to mean that Defendant did not incur any indebtedness in whole or in part thereunder.  See Exh. 19.  Further, a factfinder considering the evidence collectively could infer that the funds' momentary presence in Defendant's account is consistent with Defendant's allegation that it has no interest in them because Defendant obtained no discernible use or benefit from its pass through of the money (which Defendant says is consistent with the fact that it had no use for capital given the general paymaster nature of its operations).  See Section III.f, supra. In sum, a factfinder should weigh the contradictory evidence to determine the nature of the transaction and the fact and extent of Defendant's interest in the funds that it gave rise to, if any.[25]

### vii.  Conclusion

In light of the foregoing, this Court respectfully recommends that the District Court find

---

[25] Although this Court has discussed the fact issues about the fact and extent of Defendant's interest in these funds that emerge most plainly from the record, a factfinder's deliberations about the transaction's nature vis-à-vis Plaintiff's claim may be different depending on the shape of the evidence and arguments the parties present at trial.  For example, the parties may make arguments to a factfinder that are not developed on this motion pertaining to the relationship between the parties, ASI (the entity which the reinsurance companies' corporate resolutions and Defendant's promissory notes stated would be involved in the transaction) and Freedom Insurance (which deposited the proceeds into Defendant's account).  See Exhs. 18-19.

that triable material fact issues preclude summary judgment on the first element of Plaintiff's

turnover claims, i.e., whether and to what extent Defendant has an interest in the funds that

Plaintiff seeks to reach.

> **b. This Court Respectfully Recommends That The District Court Deny Plaintiff's Turnover Motion Because Fact Issues Precluding Summary Findings As To Whether Any Of The Conveyances At Issue Were Fraudulent Conveyances**

Generally, a debtor's transfer of property in which it has no interest cannot sustain a

fraudulent conveyance claim because the transferor's assets have not been depleted at creditor

expense.  See Bryce v. Nat'l City Bank of New Rochelle, 93 F.2d 300, 302 (2d Cir. 1937)

(holding that for a transfer to be actionable as in fraud of creditors, it is necessary that the assets

of the transferor be depleted); Lippe v. Bairnco Corp., 249 F. Supp. 2d 357, 375 (S.D.N.Y. 2003)

("Unless the conveyance diminishes the value of the debtor's estate, the claimant has no

pecuniary harm or right of objection since the assets of the transferor are no less after the

questioned transfer was made than before.") (citation & internal quotations omitted).  "[A]

creditor cannot recover transferred property if the property could not have been used to satisfy

the creditor's claim."  In re White Metal Rolling & Stamping Corp., 222 B.R. 417, 427 (Bankr.

S.D.N.Y. 1998).  As a result, the above-discussed disputed fact issues pertaining to Defendant's

interest in the contested funds preclude Plaintiff's ability to establish on summary judgment that

its rights to the funds were superior to those of Respondents under theories of actual or

constructive fraudulent conveyance.  This Court's analysis could therefore conclude at this point

but, for the sake of completeness, it will examine the fraudulent-conveyance allegations, which

also raise issues of material fact.

> **i. Fraudulent Conveyance Made With Actual Intent To Defraud**

"The existence of actual intent" for a fraudulent conveyance claim pursuant to Section

44

276 of the New York Debtor and Creditor Law "is generally a question of fact which precludes summary judgment," and Plaintiff provides "no basis to depart from that rule" on the instant motion.  Farmers Prod. Credit Ass'n v. Taub, 504 N.Y.S.2d 448, 449 (2d Dep't 1986).  The presence or absence of certain material badges of fraud cannot be decided on this record without a factfinder's resolution of disputed issues.  Id.; N.Y. C.P.L.R. § 276.   The two fraud badges that Plaintiff has shown are themselves insufficient to establish actual fraud.

First, a close relationship between the parties to a conveyance is a fraud badge that may be shown when a corporate insider participates in both sides of a transfer and controls the transferee.  See 3 West 16th Street, LLC v. Ancona, No. 153301/2013 (ACS), 2013 WL 5459456, at *5 (N.Y. Sup. Ct., N.Y. Cnty. Apr. 27, 2013); Northpark Assocs., L.L.P. v. Westcon, Inc., No. 18844/2001 (AAN), 2002 WL 34569784, at *3 (N.Y. Sup. Ct., Westchester Cnty. Aug. 21, 2002) (finding a close relationship between companies with common officers and shareholders in connection with fraudulent conveyance claim).  As a result of Defendant and Respondents' common owner and CEO, Plaintiff has shown a close relationship between them.

Second, whether a transfer has been made in secrecy and haste has been construed to pertain to the amount of time that elapses between an event alerting the debtor that the creditor may claim the property and the subsequent, allegedly fraudulent conveyance of the property. See, e.g., Kreisler Borg Florman Gen. Constr. Co. v. Tower 56, LLC, 872 N.Y.S.2d 469, 470 (2d Dep't 2009) (finding that the contested transfer was made "only days before the plaintiff entered its default judgment"); Barnett v. Bell, 623 N.Y.S.2d 590, 590 (1st Dep't 1995) (finding that the transfer of property occurred four days after adverse verdict was rendered against transferor). Plaintiff has not shown any secrecy or haste in Defendant's transfers by this standard.  Although Plaintiff argues in conclusory fashion that all fraud badges are shown on the record, it does not

45

specifically address this one, for example, by showing where the contested transfers occurred close in time and in apparent response to a particular litigation development.  See ECF No. 117-2 at 20-21.  This Court does sua sponte observe that Defendant's delivery of the SROTB check to Respondent Plaza Honda may permit an inference of haste given that it closely followed Plaintiff's service of its restraining notice upon Defendant, see Sections I, III.e, but the significance of that timing, if any, is heavily dependent upon whether a factfinder concludes that Defendant had an interest in the funds, see Section V.a.v, supra.  Moreover, any conclusion as to this transaction would likely require additional evidence, such as when the real property came to market, the circumstances of any bids or offers, discussions between Defendant and Respondent Plaza Honda, and Respondent Dealerships' storage needs.  It may be worth noting that it was the withdrawal of the use of the Brooklyn property under the lease with Plaintiff after Superstorm Sandy that put pressure on Respondents to locate alternative storage facilities.  See, e.g., Axginc, 2017 WL 11504930, at *2.

Third, the badge of fraud pertaining to a lack of consideration for a challenged conveyance "is possibly the most important one[,]" Newhouse, 2000 WL 1721131, at *4 n.2, as it implicates whether "the assets of [the debtor] were depleted at the expense of the plaintiff" for the purposes of a fraudulent conveyance claim, Greenwald, 517 N.Y.S.2d at 544; see Bryce, 93 F.2d at 302; Lippe, 249 F. Supp. 2d at 375;  In re White Metal Rolling & Stamping, 222 B.R. at 427.  On this record the presence or absence of this fraud badge cannot be decided without a factfinder's conclusions about Defendant's interest in contested funds.  If a factfinder concluded that Defendant lacked dominion and control over the contested funds or held them in the manner of a trustee for Respondents, this would influence what consideration would be adequate for Defendant to receive, if any, for their transfer.

Fourth, Plaintiff argues, and Defendant and Respondents do not contest, that Defendant knew of Plaintiff's claims and its inability to pay them at relevant times.  See Fed. Nat. Mortg. Ass'n, 2013 WL 417352, at *11.

Fifth, Plaintiff's motion does not address or show that Defendant used dummies or fictitious parties or that Defendant retained control of any of the contested funds are considerations.  See ECF No. 117-2 at 20-21.

In sum, Plaintiff has offered undisputed evidence as to only two badges of fraud—a close relationship between the parties to the contested transfers and Defendant's awareness of Plaintiff's claim.  Other badges do not apply.  A fact issue precludes determination of whether Defendant received adequate consideration for the transfers.  Under the totality of these circumstances, Plaintiff's evidence is insufficient to establish an inference of actual fraudulent intent as a matter of law.  See Haines v. West, 110 N.Y.S.2d 183, 184 (4th Dep't 2019) (finding that the plaintiffs failed to meet their initial burden under Section 276 "because they did not eliminate triable issues of fact with respect to [the] defendants' alleged fraudulent intent[,]" and noting that "the presence of one or more badges of fraud does not necessarily compel the conclusion that a conveyance is fraudulent").

### ii. Fraudulent Conveyance Made With Fraudulent Intent Implied By Law

Generally, whether a conveyance was made without fair consideration is a question of fact, and a plaintiff's constructive fraudulent conveyance claim may not be granted on summary judgment where it is not conclusively established.  See Teamsters Local 456 v. CRL Transp., Inc., No. 18 Civ. 2056 (KMK), 2020 WL 3619048, at *6 (S.D.N.Y. July 2, 2020).

Here, it would be inappropriate to find that Defendant or any Respondent lacked good faith for the disputed transfers prior to a factfinder's resolution of fact issues regarding

47

Defendant's interest in the funds.  See Section V.a, supra.  If triable issues about the true

character of Defendant's interest in the funds are resolved in Plaintiff's favor, a factfinder could

also conclude that Defendant and Respondents subjectively lacked, inter alia, an honest belief in

the propriety of the conveyances in question.  The opposite may be true if Defendant had no

interest in the funds, i.e., a factfinder could conclude under those circumstances that Defendant

and Respondents subjectively had an honest belief in the propriety of the transfers.  Other

conclusions would also be possibly depending on the evidence presented.

It would likewise be inappropriate to find on this record that Defendant was not paid fair

equivalent value for the funds conveyed.  Again, assuming that a factfinder credits that

Defendant held some or all of the contested funds for Respondents in the manner of a trustee,

this would color what fair exchange of value Defendant as a mere conduit would obtain for

transferring funds that it did not own as a paymaster agent:  Arguably, no benefit was owed to

Defendant.

Plaintiff's argument that Defendant's contested transfers should be presumed to lack fair

consideration as a matter of law is without merit on this record because it relies on an exception

to the rule that preferential payments of pre-existing obligations are not fraudulent conveyances,

i.e., that a debtor corporation's payment of an antecedent debt to its shareholders, officers, or

directors are presumed not to be transfers for fair consideration.  See ECF No. 117-2 at 16-17

(citing HBE Leasing, 48 F.3d at 634).  Yet, for the reasons discussed, if a factfinder concludes

that Defendant did not have an interest in the funds it transferred to Respondents because they

were owned by the Respondents, it has not been established that Defendant's transfers

constituted repayment of antecedent debt to corporate insiders so as to trigger the presumption

alleged.  See Section V.a, supra.

Assuming, arguendo, that it could be summarily found that Defendant had an interest in the funds at issue and received no fair consideration for their transfer, this Court turns to the "additional circumstances" that are an element of each of Plaintiff's various fraudulent conveyance claims.  See Section IV.d.ii, supra.  With the exception of Plaintiff's Section 273-a claim, the above-discussed fact issues in this case preclude summary judgment as to the elements of "additional circumstances," which vary by statute.

Section 273-a's "additional circumstance" asks whether Defendant knew at the time of the conveyances that it was a defendant in an action for money damages or a judgment in such an action has been docketed against it, and whether after final judgment for the plaintiff, the defendant failed to satisfy the judgment.  See N.Y. Debt. & Cred. L. § 273-a.  Defendant does not contest that these facts are met, and the element could be summarily satisfied on this record. See ECF No. 120-1.

As to the other fraudulent-conveyance statutes, the "additional circumstances" required, in addition to fair consideration, to show constructive fraud through insolvency pursuant to Section 273, unreasonably small capital pursuant to Section 274 and inability to pay debts pursuant to Section 275 may sensibly be addressed together on this specific record although in other circumstances their distinct but related purposes require separate analysis.  See, e.g., N.Y. Debt. & Cred. L. §§ 271(a) (providing that "[a] debtor is insolvent if, at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets"); id. § 273; id. § 274; id. § 275.[26]  Because questions of fact pertaining to Defendant's interest in the funds sought for

---

[26] See In re Operations NY LLC, 490 B.R. 84, 97-99 (Bankr. S.D.N.Y. 2013) (explaining that the unreasonably small capital test "denotes a financial condition short of equitable insolvency" and is aimed at transferees "that leave the transferor technically solvent but doomed to fail"); id. at 98 (noting that the ability to pay test asks the transferor's subjective belief—not its intent, which

turnover could be resolved against Plaintiff, it cannot be said that the record now indisputably shows that Plaintiff has at this juncture established any of the "additional circumstances" of Sections 273, 274 and 275.  If Defendant had no interest in the funds and transferred them as a mere agent, their transfer could be found to have left Defendant in no worse financial position than before the conveyance.  See Lippe, 249 F. Supp. 2d at 375; Am. Inv. Bank, 595 N.Y.S.2d at 539 (finding that the determination of insolvency is generally one of fact, and that the petitioner was not entitled to summary judgment on the basis of any presumed insolvency where there was a triable issue as to fair consideration); see also Moody v. Sec. Pacific Bus. Credit, Inc., 971 F.2d 1056, 1071 (3d Cir. 1992) (finding that unreasonably small capital and insolvency questions are "distinct but related concepts . . . look[ing] for a link between the challenged conveyance and the debtor's insolvency").

### iii.  Conclusion

In light of the foregoing, this Court respectfully recommends that the District Court find that triable issues of fact preclude summary judgment on the second element of Plaintiff's turnover claims, i.e., whether Plaintiff's rights to the funds are superior to those of the Respondents'.  See Beauvais, 942 F.2d at 840.

## VI.  Conclusion

For the foregoing reasons, this Court respectfully recommends that the District Court deny Plaintiff's motion pursuant to Rule 69 and Section 5225(b) for summary relief.  See ECF No. 117.  Plaintiff's turnover motion should be denied to the extent it seeks summary judgment

---

is not required to show constructive fraudulent conveyance—that its transaction will cause it to "incur debt it cannot pay at maturity"); MFS/Sun Life Trust-High Yield Series, 910 F. Supp. at 944 ("In order to determine the adequacy of capital, a court will look to such factors as the company's debt to equity ratio, its historical capital cushion, and the need for working capital in the specific industry at issue.").

on any of its claims due to disputed material fact issues pertaining to (1) whether and, if so, to what extent Defendant has an interest in the funds that Plaintiff seeks to reach, see Section V.a, supra; and (2) whether Plaintiff's rights to the funds are superior to those of Respondents' rights, see Section V.b, supra.  This Court respectfully recommends that Plaintiff's alternative motion should be granted to the extent it seeks trial of those disputed fact issues.

## VII.    Objections

A copy of this report and recommendation is being provided to the parties via ECF. Any written objections to this report and recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this report.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or the Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge]'s report operates as a waiver of any further judicial review of the magistrate [judge]'s decision.").

Dated:  Brooklyn, New York
        February 20, 2022

_Vera M. Scanlon_
_____
VERA M. SCANLON
United States Magistrate Judge