```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```
------------------------------------------------------------------- X
                                                                    :
AXGINC CORPORATION, f/k/a AXIS GROUP, Inc.                          :
                                                                    :
                              Plaintiff,                            :           14-CV-4648 (ARR) (VMS)
                                                                    :
         -against-                                                  :           NOT FOR ELECTRONIC
                                                                    :           OR PRINT PUBLICATION
PLAZA AUTOMALL, LTD.,                                               :
                                                                    :           OPINION & ORDER
                              Defendant,                            :
                                                                    :
                       -and-                                        :
                                                                    :
JOHN ROSATTI, PLAZA MOTORS OF BROOKLYN,                             :
INC. d/b/a PLAZA AUTO MALL and d/b/a PLAZA                          :
HONDA, PLAZA OLDSMOBILE, LTD. d/b/a PLAZA                           :
AUTO MALL and d/b/a PLAZA TOYOTA, PLAZA                             :
HYUNDAI, LTD. d/b/a PLAZA AUTO MALL,                                :
CRYSTAL BAY IMPORTS, LTD. d/b/a PLAZA                               :
AUTO MALL and d/b/a ACURA OF BROOKLYN, and                          :
PLAZA AUTOMOTIVE LTD.,                                              :
                                                                    :
                              Respondents.                          :
                                                                    :
------------------------------------------------------------------- X

ROSS, United States District Judge:

On August 5, 2014, plaintiff commenced this action against defendant Plaza Automall, Ltd. seeking damages for, *inter alia*, defendant's unpaid rent. On November 9, 2017, I entered judgment against defendant in plaintiff's favor for $2,735,929.59. Plaintiff now moves against respondents, John Rosatti, Plaza Motors of Brooklyn d/b/a Plaza Honda ("Plaza Honda"); Plaza Oldmobile, Ltd. d/b/a Plaza Toyota ("Plaza Toyota"); Plaza Hyundai, Ltd. ("Plaza Hyundai"); Crystal Bay Imports, Ltd. d/b/a Acura of Brooklyn ("Acura of Brooklyn"), and Plaza Automotive Ltd. ("Plaza Kia") (collectively "respondents"), for an order (1) awarding a money judgment for amounts that defendant allegedly owned and fraudulently conveyed to respondents, and (2) directing

1

respondents to turn over these amounts to plaintiff. On February 20, 2022, I received a Report and Recommendation ("R & R") from the Honorable Vera Scanlon, United States Magistrate Judge, addressing plaintiff's motion for summary relief (the "turnover motion"). On March 14, 2022, plaintiff objected to Judge Scanlon's finding that defendant and respondents had raised triable issues of fact as to defendant's ownership interest in the disputed funds. Plaintiff requests that I grant it a judgment against respondents for the amounts requested in its turnover motion. After *de novo* review, I conclude that Judge Scanlon was correct in finding that triable issues of material fact preclude granting summary relief to plaintiff. Moreover, after reviewing the portions of the R & R to which no party objected, I find no clear error. The R & R is thus adopted in full.

## BACKGROUND

### A. Factual Background

Because plaintiff did not object to any of Judge Scanlon's findings of fact, I adopt these findings as detailed in the R & R, *see* R & R 6–15, ECF No. 124. I summarize the facts briefly below.

Defendant sublet a parcel of land from plaintiff from 2007 to 2014. Op. & Order 3−5, ECF No. 61 ("SJ Op."); R & R 1–4. Plaza Honda, Plaza Toyota, Plaza Hyundai, Acura of Brooklyn, and Plaza Kia (collectively, "respondent dealerships") kept inventory on this land and at times paid plaintiff rent on defendant's behalf. R & R 3. At relevant times, John Rosatti was CEO of defendant and respondent dealerships and the majority owner of Plaza Kia. *Id.* After defendant failed to pay rent pursuant to the sublease agreement, SJ Op. 4–5, plaintiff obtained a judgment against defendant from this court, Clerk's J., ECF No. 71. To satisfy this judgment, plaintiff now seeks a turnover order against respondents. R & R 1−2; Mem. L. Supp. Pl.'s Mot. Pursuant to Fed. R. Civ. P. 69 and CPLR 5225(b) 2, ECF No. 117-2 ("Turnover Mot."). Plaintiff seeks funds that were held in defendant's account with M&T Bank, arguing that defendant has an ownership interest in these funds and

fraudulently conveyed them to respondents. R & R 5–6; Turnover Mot. 7–16. Defendant and respondents counter that defendant served as a mere conduit or paymaster for payments among respondents and between respondents and nonparties, and therefore did not have an ownership interest in the funds that passed through its bank account. R & R 5–6; Mem. L. Opp'n Pl.'s Mot. for Turnover of Monies 5–18 ("Turnover Opp'n"), ECF No. 120-1. Plaintiff argues in rebuttal that defendant was not merely a conduit for the monies at issue in this motion. R & R 7−8.

The funds at issue can be divided into four categories[1]:

First, a series of one hundred and forty-eight deposits from non-parties, totaling $2,557,352.81, wired to defendant between 2014 and 2017. *Id.* at 8. Defendant transferred these monies to respondent dealerships in a series of transactions during the same period. *Id.* at 8–9. Respondents assert that these monies were proceeds from selling automobiles and automotive parts and have produced documentation showing that a subset of the deposits and transfers were for identical amounts. *Id.* at 9. Respondents further argue that this documentation shows that the amounts were transferred to respondents soon after they were received by defendant. *Id.*

Second, $800,000 held in defendant's bank account from May 2016 to December 2017. R & R 11–12. Respondent Planet Honda transferred $800,000 to defendant on May 20, 2016. *Id.* at 11. A month prior, respondents Plaza Honda, Plaza Toyota, Plaza Hyundai, and Acura of Brooklyn (collectively the "settlement dealerships") had entered into a settlement agreement with the New York State Office of the Attorney General (the "NYAG Settlement Agreement" or the "settlement agreement") to end the Attorney General's investigation into these respondents' marketing of

---

[1] Plaintiff's motion also sought $748,324.08 of alleged proceeds from John Rosatti's investments in nonparty Kenwood Holdings Ltd., funds that were held in defendant's bank account for one day before being transferred to Plaza Honda. R & R 12−13, ECF No. 124. Judge Scanlon found there was a material fact issue as to ownership of these funds. *Id.* at 40. Neither party objected to this finding, so I review it for clear error and find none.

3

credit-repair and identity-theft-protection services to their customers. *Id.* at 10. Under this agreement, these dealerships agreed to pay $800,000 into an account at M&T Bank for later distribution to affected consumers. *Id.* The agreement also stated that any interest earned on the $800,000 deposit belonged to the settlement dealerships. *Id.* Defendant declared the $800,000 as an asset on its 2016 tax returns. *Id.* at 11. Over the course of 2017, defendant made payments to 1,106 eligible consumers in accordance with the settlement agreement, for a total distribution of $587,927.47. *Id.* at 11–12. On December 28, 2017, defendant remitted the undistributed balance—$215,037.76—to the New York State Comptroller on behalf of the settlement dealerships. *Id.* at 12.

Third, a check for $245,000 made out by nonparty Suffolk Regional Off Track Betting Corporation ("Suffolk Betting") to defendant but deposited by respondent Planet Honda into its own bank account. *Id.* at 13–14. In 2016, defendant had negotiated to purchase land from Suffolk Betting and, as part of these negotiations, Planet Honda had paid a $245,000 security deposit on defendant's behalf. *Id.* at 13. The proposed purchase was not consummated, however, and, in 2018, Suffolk Betting's attorney refunded the $245,000. *Id.*

Fourth, $300,000 transferred from nonparty Freedom Insurance Company Ltd. ("Freedom Insurance") to defendant on September 15, 2016, and wired to respondent John Rosatti the following day. *Id.* at 14–15. Also on September 15, two nonparty reinsurance companies—of which John Rosatti is the sole owner of one and co-owner of the other—each issued a corporate resolution directing nonparty Accelerated Service International ("ASI") to loan $150,000 to defendant. *Id.* at 14. That same day, John Rosatti signed two promissory notes on behalf of defendant, in which defendant agreed to pay ASI $150,000 by September 1, 2021, for the benefit of each of the reinsurance companies, with defendant's obligations secured by the current and future reserves of those companies. *Id.* Nonparty Adam Rosatti, who worked for defendant and

4

respondent dealerships in managerial roles, R & R 6, testified in his deposition that the incoming deposits to defendant from Freedom Insurance were loan proceeds and that the reinsurance companies loaned defendant the money, Decl. Adam Sackowitz in Supp. of Turnover Mot., Ex. 1 at 159:21–161:9, 162:9–11, ECF No. 117-4 ("A. Rosatti Dep."). Adam Rosatti was unable to explain, however, why the payment came from Freedom Insurance. *Id.* 160:19–161:4; 163:12–25, 170:16–25. In a subsequent sworn declaration, Adam Rosatti averred that Freedom Insurance deposited the $300,000 into defendant's account as payments to the reinsurance companies, and that defendant transferred these funds to John Rosatti in his capacity as the owner or co-owner of the reinsurance companies. R & R 15; Decl. Bret I. Herman in Opp'n Turnover Mot. ¶ 28, ECF No. 102-2 ("Herman Decl."); Decl. Adam Rosatti in Opp'n Turnover Mot. ¶ 2, ECF No. 102-3 ("2020 Rosatti Decl.") (endorsing the contents of the Herman declaration made in the same filing). Adam Rosatti pointed to the records of the two electronic transfers: the first transfer is labelled as "Loan from John Rosatti/Adam Rosatti Reinsurance Company"; the second is labelled, "Loan from John Rosatti RE." Herman Decl. ¶ 29; *see also* Herman Decl., Ex. C, ECF No. 103-6.

## B. Procedural History

Plaintiff filed suit on August 5, 2014, seeking damages due to defendant's failure to pay rent.[2] Compl., ECF No. 1. I granted summary judgment in plaintiff's favor on February 15, 2017, entering a judgment against defendant for $2,735,929.59. *See* SJ Op.; Clerk's J. Defendant appealed. Not. Appeal, ECF No. 72. While defendant's appeal was pending, plaintiff began post-judgment collection efforts, including serving restraining notices and information subpoenas upon respondents Plaza Honda, Plaza Toyota, Plaza Hyundai, and Acura of Brooklyn. R & R 4. The United States Marshal's Service served writs of execution upon defendant and the above dealership

---

[2] Respondents were not parties to the original action. R & R 4.

respondents. *Id.* On January 16, 2019, the United States Court of Appeals for the Second Circuit affirmed my judgment in favor of plaintiff. Mandate, ECF No. 97. Defendant has failed to pay any part of plaintiff's judgment. R & R 4.

On February 13, 2020, plaintiff filed a motion to enforce judgment against respondents John Rosatti, Plaza Honda, Plaza Toyota, Plaza Hyundai, Bay Ridge Hyundai, Ltd., and Acura of Brooklyn, alleging that defendant had on multiple occasions transferred money from its bank account to respondents, or to nonparties on behalf of respondents, and that defendant should have paid these funds to plaintiff to satisfy plaintiff's judgment. *See* Mot. Enforce J., ECF Nos. 98 & 99; R & R 1–3, ECF No. 109 ("2021 R & R"). I granted this motion in part and denied it in part with leave to renew. 2021 R & R; Order Adopting 2021 R & R, ECF No. 110. In my order, I held that, *inter alia*, (1) I had personal jurisdiction over respondents; (2) plaintiff could proceed with its federal turnover application pursuant to a Rule 69(a) motion without commencing a special state court proceeding; and (3) plaintiff had not sufficiently raised or shown in its opening motion that defendant had an interest in the funds that it transferred to respondents or to nonparties on respondents' behalf. *See* 2021 R & R; Order Adopting 2021 R & R.

On June 2, 2021, plaintiff filed its renewed turnover motion seeking substantially the same relief as its prior motion, but supplementing the turnover relief sought against John Rosatti, Plaza Honda, Plaza Toyota, Plaza Hyundai, and Acura of Brooklyn, and adding respondent Plaza Kia as a party.[3] *Compare* Notice of Turnover Mot., ECF No. 117-1, *with* Mot. Enforce J., ECF Nos. 98 & 99. On February 20, 2021, Judge Scanlon issued a *sua sponte* R & R on plaintiff's motion. *See* R & R. Judge Scanlon recommended that plaintiff's motion be denied to the extent it seeks summary judgment

---

[3] In tandem with its turnover motion, plaintiff requested to dismiss Bay Ridge Hyundai as a party pursuant to Federal Rule of Civil Procedure 41(a). *See* ECF No. 118. I adopt Judge Scanlon's recommended that I grant plaintiff's request and dismiss Bay Ridge Hyundai as a party, R & R 2 n.2.

on any of its claims due to triable issues of material fact pertaining to (1) whether and, if so, to what extent defendant has an interest in the funds that plaintiff seeks to reach, and (2) whether plaintiff's rights to the funds are superior to the rights of respondents. *Id.* at 50–51; *see also id.* at 33–50. To the extent plaintiff moved in the alternative for trial on these questions, Judge Scanlon granted that motion. *Id.* at 51. Plaintiff registered its objections to the first finding of this R & R on March 14, 2022, arguing that respondents had failed to raise triable issues of fact regarding defendant's ownership interests in the funds that plaintiff seeks. *See* Pl.'s Objs. to R & R ("Pl.'s Objs."), ECF No. 127-1.

## DISCUSSION

### I. Standard of Review

I may designate a magistrate judge to hear and determine certain motions pending before me and to submit to me proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within fourteen days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.* Upon *de novo* review of those portions of the record to which objections were made, I may affirm or reject the recommendations. *Id.* As to those portions of the report and recommendation to which no objections are addressed, I must review for clear error the factual or legal conclusions of the magistrate judge.[4] Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment; *accord Jarvis v. N. Am. Globex Fund, L.P.*, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011).

In a motion to enforce a federal money judgment, the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the

---

[4] Courts in this circuit disagree on what to do about objections that reiterate arguments already made to the magistrate judge. *See Kang v. Perri*, No. 20-CV-746 (MKB), 2021 WL 4487876, at *5 (E.D.N.Y. Sept. 30, 2021) (collecting cases discussing whether clear error review is appropriate for reiterated arguments). Out of an abundance of caution, I will review plaintiff's objections *de novo*, even if they reiterate arguments previously adjudicated by Judge Scanlon.

procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). This motion therefore follows the turnover proceeding provided in New York's Civil Practice Law and Rules Section 5225(b), a statutory provision that, *inter alia*, authorizes a judgment creditor's turnover proceedings "against a garnishee or a transferee[,]" *Aaron v. Mattikow*, 225 F.R.D. 407, 412 (E.D.N.Y. 2004), where the judgment creditor claims an entitlement or superior right to the money, N.Y. C.P.L.R. § 5225(b). Because there is no provision for such a special proceeding under the Federal Rules of Civil Procedure, "a party seeking a money judgment against a non-party garnishee may proceed by motion" under Rule 69(a) and "need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469–70 (2d Cir. 2018).

To obtain a turnover order, the judgment creditor must show that: (1) "the judgment debtor 'has an interest' in the property the creditor seeks to reach"; and (2) either "the judgment debtor is 'entitled to the possession of such property'" or "'the judgment creditor's rights to the property are superior' to those of the party" currently possessing the property. *Beauvais v. Allegiance Secs., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991) (quoting N.Y. C.P.L.R. § 5225(b)). "Only after both steps of the analysis are demonstrated may the trial court order the transferee to turn over the property to the judgment creditor . . . ." *Beauvais*, 942 F.2d at 840–41.[5]

---

[5] Plaintiff brings its claims under New York's Debtor and Creditor Law Sections 273, 273-a, 274, 275, and 276. *See* ECF No. 117. While case law makes clear that plaintiff must prove its Section 276 claim by clear and convincing evidence, *see United States v. McCombs*, 30 F.3d 310, 328 (2d Cir. 1994); *U.S. Bancorp Equip. Fin., Inc. v. Rubashkin*, 950 N.Y.S.2d 767, 770 (N.Y. App. Div. 2012), courts are divided as to the appropriate standard of proof for claims brought under Sections 273, 273-a, and 275. Several federal courts have held that a preponderance standard governs claims under these sections, while at least two intermediate appellate courts in New York State have applied a clear and convincing evidence standard. *Cortes v. Juquila Mexican Cuisine Corp.*, No. 17-CV-3942 (RER), 2022 WL 970726, at *7 (E.D.N.Y. Mar. 31, 2022) (collecting cases); *Piccarreto v. Mura*, No. 51 Misc. 3d 1230(A), 2016 WL 3201863, at *4 (N.Y. Sup. Ct. 2016), *aff'd*, 67 N.Y.S.3d 887 (N.Y. App. Div. 2018) (same); *see also Rubashkin*, 950 N.Y.S.2d at 700; *EMA*

A Rule 69(a) turnover proceeding pursuant to N.Y. C.P.L.R. § 5225(b) is treated as a motion for summary judgment. *See Gonzalez v. City of N.Y.*, 8 N.Y.S.3d 290, 291 (N.Y. App. Div. 2015) ("It is settled that a special proceeding is subject to the same standards and rules of decision as apply on a motion for summary judgment . . . ." (citations omitted)); *Port of N.Y. Auth. v. 62 Cortlandt St. Realty Co.*, 219 N.E.2d 797, 799 (N.Y. 1966) (holding that standards of summary judgment apply to special proceedings). "[A] court is authorized to make a summary determination upon the pleadings, papers and admissions to the extent that no triable issues of fact are raised." *Centerpointe Corp. Park P'ship 350 v. MONY*, 946 N.Y.S.2d 354, 355 (N.Y. App. Div. 2012) (citations and internal quotations omitted). A court must, however, "conduct a trial on disputed issues of fact on adverse claims." *CSX Transp.*, 879 F.3d at 473 (citation omitted). In determining whether a trial is required, the court "view[s] all facts in the light most favorable to the non-moving party," *Cordius Trust v. Kummerfeld*, No. 99-CV-3200 (DLC), 2007 WL 2435156, at *5 (S.D.N.Y. Aug. 29, 2007), as its role "is to determine if bona fide issues of fact exist[], and not to resolve issues of credibility," *Fernbach, LLC v. Calleo*, No. 13878/2010 (PGF), 2011 WL 2308599, at *1 (N.Y. Sup. Ct. May 24, 2011) (denying summary judgment due to fact issues raised about "whether the transfers identified by the plaintiff were legitimate transfers, or a ruse to fraudulently prevent the plaintiff from satisfying its judgment"). "[T]he existence of a disputed issue of material fact

---

*Financial, LLC v. Joey N.Y. Inc.*, No. 17-CV-9706 (VSB), 2022 WL 292920, at *8–9 (S.D.N.Y. Feb. 1, 2022). The federal courts differ regarding the appropriate standard for Section 274 claims, *see, e.g.*, *EMA Financial,* 2022 WL 292920, at *9; *Ocean Ships, Inc. v. Stiles*, No. 00-CV-5469 (RCC), 2004 WL 1878660, at *5 (S.D.N.Y. 2004), and New York state courts have not weighed in. In the absence of definitive guidance from the New York Court of Appeals, courts have recently applied the higher clear and convincing standard to evaluate Section 273 and 273-a claims. *See Cortes*, 2022 WL 970726 at *7; *Piccarreto*, 2016 WL 3201863, at *4; *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 406 (S.D.N.Y. 2015), *aff'd*, 716 F. App'x 23 (2d Cir. 2017). Out of an abundance of caution, I do the same here for all of plaintiff's claims in concluding that Judge Scanlon's determinations are correct. I note, however, that I would reach the same conclusions under either standard of proof.

precludes a determination of the dispute based on the submission of the parties alone." *Aluminum Co. of Am. v. Moskovitz*, No. 88-CV-2616 (RJW), 1991 WL 177246, at *2 (S.D.N.Y. Sept. 5, 1991). Therefore, "summary disposition sought by [the judgment creditor] is warranted only if the entire record would inevitably lead a rational trier of fact to find in [its] favor." *Nashewat v. Salem*, 365 F. Supp. 2d 508, 525 (S.D.N.Y. 2005) (citation omitted), *aff'd*, 194 F. App'x 24 (2d Cir. 2006).

## II. Applicable Legal Standard

Under New York law, a party's holding funds in its bank account establishes a rebuttable presumption of ownership. *See Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara* ("*Pertamina I*"), 313 F.3d 70, 86 (2d Cir. 2002) ("When a party holds funds in a bank account, possession is established, and the presumption of ownership follows."). Once the opposing party supplies evidence rebutting this presumption, however, the presumption disappears. *See id.*; *see also Pariso v. Towse*, 45 F.2d 962, 964 (2d Cir. 1930) (L. Hand, J.) ("[T]he office of a presumption must disappear when the opposite side puts in proof, and the party charged with the burden of proof must fail, if he goes no further, or cannot use his adversary's evidence as support of the affirmative."). "Instead, the parties must face off on an even playing field at trial." R & R 21.

As Judge Scanlon details in her R & R, relevant methods of rebutting the presumption of ownership include proffering evidence supporting that respondents owned the funds, R & R 22–23, or evidence supporting that the defendant held the property for respondents in the manner of a trustee, *id.* at 24–26. *See also In re Suntech Power Holdings Co.*, 520 B.R. 399, 411 (Bankr. S.D.N.Y. 2014) ("The presumption of ownership may be rebutted by evidence that another [entity] actually owns the property, either by showing that [it] effectively exercises control over the property or that the ostensible owner holds the property for [its] benefit." (citing *Pertamina I*, 313 F.3d at 86)). Because the question here is whether to grant summary relief in plaintiff's favor or proceed to trial on the

10

ownership issue, nonmovants (defendant and respondents) have a burden only of *production*, not of persuasion. *See Katona v. Low*, 641 N.Y.S.2d 62, 63 (N.Y. App. Div. 1996) ("A prima facie showing shifts the burden to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material questions of fact[.]" (internal citation omitted))

### III. Application

After *de novo* review of the record, I find that, for the four categories of funds at issue, defendant and respondents have proffered sufficient evidence for a factfinder to reasonably conclude that defendant acted as a conduit or paymaster for respondents. Because defendant and respondents have raised triable issues of fact regarding defendant's ownership of the disputed monies, they have sufficiently rebutted the presumption of ownership to defeat plaintiff's motion at this stage.

#### A. Purported sale profits

Judge Scanlon found that defendant and respondents proffered sufficient evidence to create a triable issue of fact as to whether defendant owned the $2,557,352.81 deposited into defendant's bank account and then transferred to respondent dealerships. R & R 34–36. The evidence on which Judge Scanlon relied were (1) deposition testimony that the deposits at issue were the proceeds respondents had earned selling vehicles and automobile parts to nonparties; (2) retail certificates demonstrating the same for a subset of the transactions; and (3) bank and check record evidence establishing that the incoming deposits and outgoing transfers were for equivalent value and were close in time. *Id.* at 35. Judge Scanlon concluded that "[a] factfinder could reasonably collectively credit this evidence to find that defendant received the purchase monies as [r]espondent [d]ealerships' paymaster and did not have any ownership interest in them." *Id.* at 35. Judge Scanlon added that a factfinder might find that defendant's years-long arrangement with multiple respondent dealerships implied a promise to forward the funds due to respondent dealerships as the deposits from nonparties were made, therefore

11

supporting that defendant did not have an interest in the funds. *Id.*

Plaintiff objects only to the final part of Judge Scanlon's conclusion: that defendant's and respondent dealerships' course of conduct might support a finding that an implied contract existed whereby defendant was responsible for forwarding funds due to the respondent dealerships.[6] Pl.'s Obj. 3–4. Plaintiff argues that an implied contract may not be found on the facts here because there is no evidence that respondents provided defendant with any consideration in exchange for defendant's services. *Id.*

After *de novo* review, I adopt Judge Scanlon's conclusion, for the reasons stated in her R & R, that the deposition testimony and documentary evidence together could be sufficient for a factfinder to reasonably conclude that defendant acted as a "mere conduit" for money flowing from respondents' customers to respondents. *See* R & R 35. Because I need not find a contract implied in fact to reach this conclusion, plaintiff's objections do not disturb my finding. Accordingly, I adopt Judge Scanlon's further conclusion that defendant and respondents raised a triable issue of fact as to whether defendant had an ownership interest in respondent dealerships' alleged sales proceeds.

### B. NYAG settlement funds

Judge Scanlon found that although defendant's possession in its bank account of $800,000 that defendant distributed on behalf of the settlement dealerships potentially supported a presumption of ownership, defendant and respondents proffered sufficient rebuttal evidence to raise a triable issue of fact "regarding whether and to what extent the [settlement dealerships]

---

[6] Plaintiff frames its objection as one affecting the entirety of the ownership interest analysis. *Compare* Pl.'s Obj. 3–6 (addressing the implied-in-fact-contract issue as part of section titled "Defendant and Respondents Failed to Raise Triable Issues of Fact as to Defendant's Ownership Interest in the Disputed Funds") *with id.* at 7–17 (analyzing specific conveyances at issue). To the contrary, Judge Scanlon's point about facts supporting an implied agreement falls in a subsection specifically addressing the monies that allegedly were respondent dealerships' sales proceeds. *See* R & R 34–35.

controlled and owned these funds or whether and to what extent [d]efendant held them on behalf of [the settlement dealerships] in the manner of a trustee." R & R 36; *see also id.* at 36–39. Plaintiff objects to this finding on two grounds. First, that defendant is estopped from denying ownership of the $800,000 because it declared the sum as an asset on its 2016 tax returns. Pl.'s Obj. 14–16. Second, that respondents did not present evidence sufficient to overcome the presumption of defendant's ownership of the funds in its account because defendant's loaning of $200,000 to respondents Plaza Hyundai and Plaza Kia was inappropriate for an entity acting in the manner of a trustee.[7] *Id.* at 16−17. Defendant and respondents counter that (1) tax estoppel only binds the tax filer (defendant) and thus has no bearing on respondents' rights to the funds, Resp. to Pl.'s Obj. to R & R 14 ("Resp. to Obj."), ECF No. 129-1; (2) as to defendant's interest in the funds, tax estoppel is only one factor of many in an ownership determination, *id.* at 11–13; and (3) the settlement agreement and defendant and respondents' course of conduct make clear that the funds belonged to respondents and respondents controlled the funds' movements, *see id.* at 9–10.

Upon *de novo* review, I find that there exists a triable issue of fact as to whether defendant had an ownership interest in the funds it held and distributed for the settlement dealerships. I adopt Judge Scanlon's detailed analysis and conclusion that (1) in the nonmovants' favor, there is significant testimonial and documentary evidence that defendant distributed the $800,000 in accordance with the settling dealerships' obligations under the NYAG Settlement Agreement, which may support a factfinder's inference that defendant held the money for the settling

---

[7] Plaintiff also argues that defendant's ownership interest in the funds is further supported by defendant's earning interest income on the funds while they were in its account. Pl.'s Obj. 14–15. This contention, however, is unsupported by any evidence and is contradicted by defendant and respondents' proffering of the settlement agreement with the New York State Attorney General, which contains a provision that any interest earned on the funds belonged to the settling dealerships, Sackowitz Decl., Ex. 23 ¶ 39, ECF No. 117-26 ("NYAG Settlement Agreement").

13

dealerships in the manner of a trustee or paymaster, *see* R & R 36–38; and (2) in movant plaintiff's favor, a factfinder might find that defendant's reporting the funds as an asset on its tax return indicated an ownership interest and that defendant's short-term loans to two of the settling dealerships support the inference that defendant "exercised some control or dominion suggestive of an ownership interest" over at least that $200,000 portion, *see id.* at 38–39; R & R 11–12. The above evidence creates a material issue of fact that must be resolved by a factfinder.

### C. Suffolk Betting[8]

Judge Scanlon found that there was a triable issue of material fact as to whether respondent Plaza Honda or defendant owned $245,000 sent by check from Suffolk Betting to defendant but deposited in Plaza Honda's account. R & R 40–41. Plaintiff first objects to this conclusion on the grounds that Judge Scanlon relied on inapposite authority. Plaintiff also argues that because defendant was a party to the contract for sale and Plaza Honda loaned the money to defendant to make the down payment, defendant gained an interest in the funds as soon as the check issued. Pl.'s Obj. 11–12. Defendant and respondents counter that plaintiff's allegations are conclusory because a contract for purchase of the property was never fulfilled and defendant never held the funds in its bank account or transferred them.[9] Resp. to Obj. 14−15.

After *de novo* review, I agree with Judge Scanlon's conclusion that there is a triable issue

---

[8] Plaintiff's other objection to this portion of the Report and Recommendation is to Judge Scanlon's refusal to apply federal admiralty cases to this dispute. Pl.'s Obj. 4–6. Plaintiff argues that, given the absence of any controlling authority on similar facts, these cases should have been considered. *Id.* at 4−5. Contrary to plaintiff's characterization, the reason Judge Scanlon declined to find the admiralty cases controlling was because in those cases, the parties' various responsibilities and risks were clearly defined, while in this case, there are material fact issues as to the real character of the relationship between defendant and the respondents. *See* R & R 39 n.23.

[9] The parties dispute whether a contract between defendant and Suffolk Betting was ever executed. *See* Pl.'s Obj. 11–12; Resp. to Pl.'s Obj. to R & R 14, ECF No. 129-1. I need not rule on the existence of the contract, however, to resolve whether there is a triable issue of fact as to the ownership of the deposit. Rather, I will assume the contract's existence for purposes of my analysis.

of fact as to whether the $245,000 was owned by defendant or respondent Plaza Honda given (1) the lack of a presumption of defendant's ownership where the funds were never deposited in defendant's account and (2) the evidence proffered by defendant and respondents that "the check refunded . . . Plaza Honda's payment of the partial security deposit for an ultimately unconsummated real estate transaction." R & R 40–41. Plaintiff has cited no legal authority for its argument that defendant's name on the contract for sale conclusively establishes defendant's ownership interest in the deposit. *See* Pl.'s Obj. 12. I have found no legal authority in support of this argument in either Judge Scanlon's R & R or my independent research. I therefore adopt the section of the R & R as it pertains to the $245,000.

### D. Alleged loan proceeds

Judge Scanlon found that triable issues exist regarding whether defendant has an ownership interest in the $300,000 transferred to defendant's bank account from Freedom Insurance on September 15, 2016, and transferred to John Rosatti on September 16. R & R 14−15, 43. In so concluding, Judge Scanlon highlighted that, despite the promissory notes appearing to document loans from the reinsurance companies to defendant, no evidence had been proffered to support that the reinsurance companies, the payors of the notes, ever transferred any money to defendant; the promissory notes included unusual provisions stating that the reinsurance companies'—not defendant's—assets guaranteed the loans, permitting a factfinder to infer that defendant "did not incur any indebtedness"; and that, because the funds were only "momentar[ily]" in defendant's account, defendant "obtained no discernible use or benefit from its pass through of the money," which a factfinder could find consistent with defendant's argument that it had no ownership interest in the money. *See id.*

Plaintiff objects to this finding, arguing that the evidence conclusively supports the

15

inference that defendant had an ownership interest in the funds. *See* Pl.'s Obj. 7–11. Specifically, plaintiff argues (1) that Judge Scanlon improperly relied on evidence that contradicted Adam Rosatti's deposition testimony; (2) that the way in which the loans were secured does not matter when, by the terms of the promissory notes, defendant was the obligor and was bound by the notes' terms; and (3) that the length of time the money was in the account has no bearing on whether defendant has an ownership interest in the funds. *Id.* As a result, plaintiff asserts, there exists no triable issue of fact as to defendant's alleged ownership of the $300,000.

Upon *de novo* review, I find that triable issues of fact remain as to defendant's alleged ownership interest in the $300,000. As discussed above, *see supra* Discussion I, the core question on a motion for summary relief is whether the evidence in its entirety would inevitably compel a factfinder to grant judgment to the plaintiff. Such a conclusion is not inevitably compelled here. Plaintiff proffers that Adam Rosatti's deposition testimony proves that the $300,000 was in fact a loan from the reinsurance companies to defendant and therefore this testimony conclusively establishes defendant's ownership interest in the $300,000. Pl.'s Obj. 7–9; *see also* R & R at 42. Defendant and respondents appear to argue, to the contrary, that the $300,000 was paying *back* a loan from the reinsurance companies to defendant.[10] *See* Herman Decl. ¶ 28; *see also* R &R at 42–

---

[10] Plaintiff argues that the declaration submitted by Adam Rosatti in opposition to plaintiff's Turnover Motion contradicts his prior testimony and thus should not be considered by the court under the "sham issue of fact" doctrine, Pl.'s Obj. 10, which prohibits a party or a nonparty witness with a close relationship to a party "from defeating summary judgment simply by submitting an affidavit that contradicts [their] previous sworn testimony," *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 205 (2d Cir. 2014) (citation and internal quotation marks omitted); *see also Walker v. Carter*, 210 F. Supp. 3d 487, 502−03 (S.D.N.Y. 2016). The doctrine applies where the subsequent affidavit "inescapably and unequivocally" contradicts the witness's testimony "without explanation." *Moll,* 760 F.3d at 205−06. An affidavit that merely provides more color on an issue before the court may properly be considered. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) (holding that when subsequent sworn testimony "amplifies or explains, but does not merely contradict" prior testimony, a party may show that a triable issue of fact exists); *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) (noting that the doctrine "does not apply where the later sworn assertion addresses

43. The characterization of the transfers as related to loans from the reinsurance companies, *see supra* Background, could support either narrative. Furthermore, although the corporate resolutions and promissory notes support a loan being approved on the day of the transfer, the facts that the promissory notes were collateralized with reinsurance company assets and that the funds came from Freedom Insurance, not the reinsurance companies, cast doubt as to the nature and purpose of the transfers. Finally, while Adam Rosatti's testimony better supports plaintiff's theory, it does not conclusively foreclose the theory proffered by defendant and respondents. Viewing this evidence in total, I cannot conclude that a factfinder would undoubtedly find in favor of plaintiff as to defendant's ownership interest in the $300,000. This question of defendant's alleged ownership interest is a disputed issue of fact that can only be resolved by a factfinder authorized to make findings on credibility.

\* \* \*

Since plaintiff raised no objections to Judge Scanlon's second conclusion—that triable issues of fact exist as to whether plaintiff's rights to the funds are superior to those of respondent's rights, *see* R & R 44–50—I have reviewed the remainder of the R & R for clear error on the face of the record. Finding no clear error, I adopt the remainder of the R & R in full.

## CONCLUSION

For the foregoing reasons, I adopt Judge Scanlon's correctly and meticulously reasoned R & R in its entirety as the opinion of the Court, pursuant to 28 U.S.C. § 636(b)(1). Plaintiff's

---

an issue that . . . was not thoroughly or clearly[] explored in the deposition"). Construing the facts in nonmovants' favor, Adam Rosatti's testimony confirmed that the transfers were part of a loan transaction between defendant and the reinsurance companies, *see* A. Rosatti Dep. 159:21–161:9, and his subsequent affidavit merely provided more color on the issue of the nature and purpose of the transfer, *see* Herman Decl. pp. 9–11; 2020 Rosatti Decl. ¶ 2. Adam Rosatti's declaration therefore does not contradict his prior testimony, so may properly be considered.

motion pursuant to Rule 69 and Section 5225(b) for summary relief is denied. Plaintiff's alternative motion, to the extent it seeks a hearing on the disputed fact issues pertaining to (1) whether and, if so, to what extent defendant has an interest in the funds that plaintiff seeks to reach, and (2) whether plaintiff's rights to the funds are superior to those of respondents' rights, is granted.

SO ORDERED.

                                                                               /s/
                                                          Allyne R. Ross
                                                          United States District Judge

Dated:       May 19, 2022
               Brooklyn, New York